Jacob A. Walker (SBN 271217)
**BLOCK & LEVITON LLP**
400 Concar Drive
San Mateo, CA 94402
(650) 781-0025 phone
jake@blockleviton.com

Corey D. Holzer (*pro hac vice* application forthcoming)
**HOLZER & HOLZER, LLC**
211 Perimeter Center Pkwy NE, Suite 1010
Atlanta, GA 30346
(770) 392-0090 phone
cholzer@holzerlaw.com

*Co-Counsel to Movant Carter Family Investors
and Proposed Lead Co-Counsel*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re ORIGIN MATERIALS, INC. SECURITIES LITIGATION<br><br>_____<br>This Document Relates to:<br><br>     ALL ACTIONS. | Master File No. 2:23-cv-01816-WBS-JDP<br><br>CLASS ACTION<br><br>**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF CARTER FAMILY INVESTORS FOR APPOINTMENT AS LEAD PLAINTIFF AND IN RESPONSE TO COMPETING MOTIONS**<br><br>Date:        December 11, 2023<br>Time:        1:30 p.m.<br>Courtroom:5<br>Judge:      Hon. William B. Shubb |

MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR APPT. AS LEAD
PLAINTIFF AND APPROVAL OF LEAD COUNSEL
No. 2:23-CV-01816-WBS-JDP

1

**INTRODUCTION**

On October 24, 2023, the Carter Family Investors timely moved for appointment as Lead Plaintiff under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), and for approval of Block & Leviton LLP and Holzer & Holzer LLC as lead counsel. *See* ECF No. 14. Four other movants also sought appointment as Lead Plaintiff: (1) Nicholas Agapis, *see* ECF No. 13; (2) FNY Partners Fund LP and Peter Di Murro ("FNY and Di Murro"), *see* ECF No. 17; (3) Todd Frega, *see* ECF No. 20; and (4) Steven Park, *see* ECF No. 21. Agapis subsequently stated his non-opposition to the competing motions. *See* ECF No. 24.

The PSLRA charges the Court with appointing as Lead Plaintiff the movant who (1) has the largest financial interest in the case and (2) satisfies the adequacy and typicality requirements of Federal Rule of Civil Procedure 23. Even a plaintiff who meets these criteria is unsuitable for Lead Plaintiff status if it is subject to unique defenses or cannot otherwise adequately represent the class.

Here, the Carter Family Investors reported the third-largest losses behind FNY and Di Murro and Todd Frega. Yet reported financial interest is merely where the Court's analysis starts, and it is at the second and third hurdles of the PSLRA—the Rule 23 factors and the evaluation of unique defenses—where these two

movants stumble. Accordingly, the Court should find that the Carter Family Investors are the most adequate plaintiff under the PSRLA and appoint them Lead Plaintiff.

First, FNY and Di Murro are transparently unrelated investors thrown together by counsel to aggregate their losses. While separate plaintiffs can move for Lead Plaintiff as a group, strangers like FNY and Di Murro must show that they can competently manage the case and oversee counsel on behalf of the class. They must also demonstrate *how* they came together as a group, other than the efforts of their lawyers to create the largest loss. FNY and Di Murro flunk that test. Beyond their participation in a single conference call to confer over "general strategy" and vague promises to convene similar discussions again, they have presented the Court with no plan to use their group structure to advance the class's interests. They provide no explanation as to how a construction executive in Ontario, Canada came to work with an investment fund in New York. Further, FNY is a flawed candidate for Lead Plaintiff because its recent settlement for unethical commodities trading practices calls into question its ability to assume fiduciary responsibilities. The Court should therefore find FNY and Di Murro inadequate to represent the class.

Second, Frega is atypical of the class and subject to unique defenses because he is a day trader. Frega's PSLRA certification

Memorandum in Further Support of Motion for Appt. as Lead Plaintiff and Approval of Lead Counsel No. 2:23-cv-01816-wbs-jdp

3

shows that throughout the Class Period, he flipped hundreds of thousands of Origin shares for a profit on the same day that he purchased them. This pattern was not a one-off occurrence, but Frega's regular trading practice. The Court should disqualify Frega because he is subject to two unique defenses: (1) he relied on short-term fluctuations in Origin's stock price, not the integrity of information in the marketplace, in making purchasing decisions; and (2) most of his claimed damages are not recoverable because he retained only a fraction of his shares once the fraud was revealed.

The Carter Family Investors are the movants with the largest financial interest who are adequate, typical, and immune from any unique defenses. Accordingly, the Carter Family Investors request that the Court appoint them Lead Plaintiff.

## ARGUMENT

The PSLRA provides that a movant is presumed the "most adequate plaintiff" if it possesses "the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted upon proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of

MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR APPT. AS LEAD
PLAINTIFF AND APPROVAL OF LEAD COUNSEL
NO. 2:23-CV-01816-WBS-JDP

4

the class" or "is subject to unique defenses." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Neither the PSLRA nor the Ninth Circuit prescribe a method for calculating financial interest, and the Court "may select accounting methods that are both rational and consistently applied." *In re Cavanaugh*, 306 F.3d 726, 730 n.4 (9th Cir. 2002). Many courts compare the competing financial stakes by examining the *Lax-Olsten* factors: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period." *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998) (citing *Lax v. First Merchants Acceptance Corp.*, No. 97-cv-2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)). Others rely on the number of shares each movant retained as of the last day of the class period, reasoning that this method "focus[es] on losses caused when stock purchased at artificially inflated prices decreases in value due to the disclosure of the fraud." *Mulligan v. Impax Labs., Inc.*, No. 13-cv-01037, 2013 WL 3354420, at *6 (N.D. Cal. July 2, 2013).

In order to show that it satisfies the Rule 23 requirements at the lead plaintiff stage, a presumptive lead plaintiff "need only make a 'preliminary showing' of typicality and adequacy."

*Martinelli v. Marrone Bio Innovations, Inc.*, No. 14-cv-02055, 2015 WL 631464, at *3 (E.D. Cal. Feb. 13, 2015). The typicality requirement "mandates that the presumptive lead plaintiff's claim arise from the same event or course of conduct giving rise to the claims of other class members and be based on the same legal theory." *Id.* A movant's adequacy dependes on "(1) whether the representative and counsel have conflicts of interest with other class members and (2) whether the representative and counsel will prosecute the action vigorously on behalf of the class." *Montag v. Volkswagon AG*, No. 21-cv-03678, 2021 WL 3930607, at *3 (C.D. Cal. July 21, 2021).

FNY and Di Murro on the one hand and Frega on the other hand have reported greater financial interests than the Carter Family Investors.[1] Both movants, however, are deeply flawed candidates for Lead Plaintiff whose appointment would jeopardize the class's potential recovery. The Carter Family Investors have a significant financial interest in the case and readily satisfy Rule 23's requirements. Accordingly, they should be appointed Lead Plaintiff.

---

[1] The other remaining movant, Steven Park, reported losses that were a fraction of the Carter Family Investors'.

MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR APPT. AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL
NO. 2:23-CV-01816-WBS-JDP

6

## I.    FNY and Di Murro are a Sham Group Fabricated by Counsel with Collective and Individual Adequacy Problems

The PSLRA's rebuttable presumption empowers courts to appoint as Lead Plaintiff the movant "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). Courts thus scrutinize the adequacy of plaintiffs who move as a group despite lacking a pre-litigation relationship because their unfamiliarity "may indicate that members may not work together well to vigorously prosecute the litigation or they might not be able to control counsel." *In re Mersho*, 6 F.4th 891, 901 (9th Cir. 2021); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001) ("If the court determines that the way in which a group seeking to become lead plaintiff was formed or the manner in which it is constituted would preclude it from fulfilling the tasks assigned to a lead plaintiff, the court should disqualify that movant on the grounds that it will not fairly and adequately represent the interests of the class."). A group of unrelated plaintiffs cannot satisfy the PSLRA and Rule 23's adequacy requirement "where the group does not sufficiently demonstrate that it can adequately monitor counsel and make important decisions

MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR APPT. AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL No. 2:23-cv-01816-WBS-JDP

7

together." *In re Cloudera, Inc. Sec. Litig.*, No. 19-cv-03221, 2019 WL 6842021, at *6 (N.D. Cal. Dec. 16, 2019).[2]

*Cloudera* is instructive. In that case, the court rejected a group comprised of two institutional investors that had the largest financial interest in the case after finding that "the only connection that the two funds have to each other is their counsel." 2019 WL 6842021, at *7. The court described the group's declaration as "conclusory" and having "little or no substance," because it failed to provide "information about how it would jointly manage the case or resolve disagreements" beyond describing a single conference call to discuss the funds' initial strategy. *Id.* Further, the court faulted the group for "provid[ing] no detail whatsoever about any decisionmaking process." *Id.* The court accordingly found that the group failed to show it would be an adequate class representative under Rule 23.

---

[2] *See also In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 835-36 (N.D. Cal. 2019) ("nothing in the two joint declarations submitted by the group demonstrates that it is the group members, and not the lawyers, who are driving their lead plaintiff application . . . . To permit aggregation and lead plaintiff status for such a group undercuts the goal of having the plaintiffs and not the lawyers call the shots in securities class actions."); *Crihfield v. CytRx Corp.*, No. 16-cv-05519, 2016 WL 10587938, at *4 (C.D. Cal. Oct. 26, 2016) (rejecting group of unrelated investors where the record did not "contain any credible explanation for the group's creation"); *Eichenholtz v. Verifone Holdings, Inc.*, No. 07-cv-06140, 2008 WL 3925289, at *8 (N.D. Cal. Aug. 22, 2008) ("ignoring the basis of the group formation and appointing a group of unrelated investors undercuts the primary purpose of the PSLRA: to eliminate lawyer-driven litigation.").

MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR APPT. AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL
NO. 2:23-CV-01816-WBS-JDP

8

FNY and Di Murro bear all the hallmarks of an aritificial group manufactured by their counsel. Their joint declaration is stunningly silent on *how and why* these two investors met each other and decided to work together, failing to identify any relationship between them. According to the joint declaration, FNY is an institutional investor based in New York while Di Murro is an individual investor residing in Ontario, Canada. *See* Dkt. 18-4 ¶¶ 2-3. There is no explanation for how an individual investor from Ontario, Canada, who is in the construction business, knew of an investment fund in New York that sought to be Lead Plaintiff in this action. Tellingly, they note that the two law firms they propose as lead counsel, Entwistle & Cappucci LLP and Robbins Geller Rudman & Dowd LLP, have worked together in the past. *See id.* ¶ 6. This relationship—the only preexisting connection identified in the joint declaration—strongly supports that it was the law firms who agreed to have their clients work together to create the largest loss, not the clients themselves, which is antithetical to the goals of the PSLRA.

Worse, FNY and Di Murro have not explained how they will jointly manage the case to advance the class's interests. As in *Cloudera*, they tout their participation in a conference call where they discussed such vague topics as "our joint leadership, decision-making, and oversight of this litigation, including the

MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR APPT. AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL
NO. 2:23-CV-01816-WBS-JDP

9

general strategy for joint prosecution of the case, our responsibilities as proposed lead plaintiff, our oversight of counsel, our commitment to act in the class's best interests, and the lead plaintiff motion process." *Id.* ¶ 7. They add equally flimsy promises that they will "convene calls," "attend in-person meetings," and/or "confer between ourselves and with counsel as often and as regularly as necessary to ensure responsible oversight and direction of counsel." *Id.* ¶ 8. These conclusory assertions mask the absence of any detail regarding how the two plaintiffs will jointly make decisions or resolve disagreements. *See Cloudera*, 2019 WL 6842021, at *7; *see also Issacs v. Musk*, No. 18-cv-04865, 2018 WL 6182753, at *3 (N.D. Cal. Nov. 27, 2018) (rejecting movant group where "the members participated in only one joint call prior to filing the motion for appointment" and "the decisionmaking structure does not appear to be robust"). FNY and Di Murro's own submissions prove that they cannot adequately represent the class.[3]

---

[3] FNY's losses are also overstated. It purports to use the last-in, first-out methodology to calculate losses from its trades in both common stock and call options, but this method includes losses that FNY will never be able to recover. To pick one example of many, FNY claims $1,520 in losses from $5.00 call options that expired out of the money on April 21, 2023, before the Class Period ended. Origin Materials will only be liable for losses plaintiffs sustained "when the facts 'bec[a]me generally known'"—that is, at the close of the Class Period. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 392 (9th Cir. 2010) (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 344-45 (2005)). Thus, FNY and Di Murro's

MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR APPT. AS LEAD
PLAINTIFF AND APPROVAL OF LEAD COUNSEL
NO. 2:23-CV-01816-WBS-JDP

10

FNY and Di Murro are also inadequate because FNY is unqualified to serve in a position of trust. "On more than one occasion courts have found that an individual is an inadequate lead plaintiff due to unrelated misconduct which implicates the individual's ability to serve as a fiduciary." *In re Surebeam Corp. Sec. Litig.*, No. 03-cv-01721, 2004 WL 5159061, at *7 (S.D. Cal. Jan. 5, 2004) (collecting cases). A government investigation or enforcement action over misconduct that calls a movant's honesty into question is disqualifying. *See In re Network Assocs., Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1029 (N.D. Cal. 1999).

FNY's noncompliance with commodities trading rules precludes it from representing investors in a securities class action. FNY and its employee recently paid $585,000 total (including a $450,000 fine to FNY) to settle charges brought by the Commodity Futures Trading Commission ("CFTC") that it placed bids in futures contracts with the intent to cancel them before execution, a disruptive trading practice known as "spoofing." CFTC ORDERS NEW YORK FIRM AND ITS TRADER TO PAY $585,000 FOR SPOOFING, Commodity Futures Trading Commission (Sept. 28, 2020),

---

inclusion of losses on options that expired before the end of the Class Period is a case where "the LIFO net loss formula accounts for losses that may not be recoverable in the action itself" and "inflate[s] a party's calculated loss value beyond the actual financial stake the party has in the action." *Mehedi v. View, Inc.*, No. 21-cv-06374, 2022 WL 377406, at *5 (N.D. Cal. Feb. 8, 2022).

MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR APPT. AS LEAD
PLAINTIFF AND APPROVAL OF LEAD COUNSEL
NO. 2:23-CV-01816-WBS-JDP

11

https://www.cftc.gov/PressRoom/PressReleases/8259-20. The Court should decline to entrust the class's recovery to an entity that was recently subject to CFTC enforcement.

## II. Frega is Atypical and Subject to Unique Defenses Because of His Pervasive Day Trading

In the 63 days between June 8, 2023 and August 9, 2023, Frega executed 549 trades in Origin stock. *See* ECF No. 20-4. This incredible volume—representing almost 9 trades per day—meets the criteria for day trading, defined as "a trading strategy where an individual buys and sells (or sells and buys) the same security in a margin account on the same day in an attempt to profit from small movements in the price of the security." Day Trading, FINRA, https://www.finra.org/investors/investing/investment-products/stocks/day-trading (last visited Nov. 2, 2023).

Day traders are subject to unique defenses that undercut the reliance element of a securities fraud claim. In securities class actions, a plaintiff must prove that it relied on the alleged misrepresentations or omissions that it alleges caused its injury. *See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 157 (2008). Courts within this Circuit recognize that day trading renders a movant for Lead Plaintiff "vulnerab[le] to a defense that they were trading in response to information other than the alleged misstatements and omissions made." *Hurst v.*

Memorandum in Further Support of Motion for Appt. as Lead Plaintiff and Approval of Lead Counsel
No. 2:23-cv-01816-WBS-JDP

12

*Enphase Energy, Inc.*, No. 20-cv-04036, 2020 WL 7025085, at *8 (N.D. Cal. Nov. 30, 2020). Day traders rely on daily market volatility in making purchasing decisions, which "belies any true reliance on company reports or even on the integrity of the stock price itself." *Reinschmidt v. Zillow, Inc.*, No. 12-cv-02084, at *4 (W.D. Wash. Mar. 14, 2013) (quotation marks omitted); *see also Applestein v. Medivation Inc.*, No. 10-cv-00998, 2010 WL 3749406, at *3 (N.D. Cal. Sept. 20, 2010) (finding absence of reliance renders day traders susceptible to the unique defense that "they would have purchased the stock at issue regardless of the misstatement/omission") (quotation marks omitted); *Eichenholtz*, 2008 WL 3925289, at *10-11 (refusing to appoint a shareholder as Lead Plaintiff "due to the vulnerability created by the unique day-trader defense").

The volume of Frega's day trading is staggering, as shown by his certification, ECF No. 20-4:

- On June 20, 2023, Frega executed 17 purchases of 14,000 Origin shares at prices ranging from $4.16-$4.37 per share. The same day, Frega executed 14 sales of all 14,000 shares (plus an additional 250 shares) at prices of $4.20-$4.54 per share.

- While June 20, 2023 appears extreme, it was a routine day for Frega. The next day, he purchased and then sold

MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR APPT. AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL
NO. 2:23-CV-01816-WBS-JDP

13

6,000 Origin shares. On June 22, 2023, he flipped 18,000 shares. He purchased 12,000 and sold 11,200 shares on June 23, 2023. He exhibited similar activity throughout the Class Period.

- Frega almost always sold at a daily profit, however paltry. On July 27, 2023, for example, Frega made 10 purchases of 14,000 total shares at either $4.31 or $4.32 per share. He then made 10 sales of 13,941 of those shares at prices ranging from $4.31 to $4.37 per share.

Frega is also vulnerable to unique defenses because he "sold the lion's share of [his] class period [Origin] stock acquisitions prior to" the end of the Class Period. *Hurst*, 2020 WL 7025085, at *8. Although Frega purchased 346,500 shares during the Class Period, he only retained 84,950 of those shares by the time the truth was revealed to the marketplace. Frega will be unable to recover *any* damages for the more than 75% of his shares that he sold before August 9, 2023. *See Dura,* 544 U.S. at 342 (2005) ("if, say, the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."). *Dura* teaches that ordinary market forces like "changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events" explain losses that, like Frega's, are not attributable to

MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR APPT. AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL
No. 2:23-CV-01816-WBS-JDP

14

the disclosure of the fraud. *Id.* at 343. Frega is thus open to the unique defense that he cannot recover for his losses.

## III.   The Carter Family Investors are the Most Adequate Plaintiff

Here, the Carter Family Investors expended $226,482.78 purchasing 53,562 net shares of Origin Materials common stock, yielding $196.003.07 in losses on a LIFO basis. *See* ECF No. 14 at 10. Their group structure differs from FNY and Di Murro's: they oversee three accounts belonging to a married couple and their family trust, with Thomas Carter possessing authority to manage each account and assuming responsibility over the litigation. *See* ECF No. 15-3 ¶¶ 3-6. The Carter Family Investors traded solely in Origin Materials common stock and maintained their holdings throughout the Class Period. *See* ECF No. 15-4. Thus, the Carter Family Investors claim a substantial financial interest in the relief sought by the class, satisfy the Rule 23 requirements, and are not subject to unique defenses.

November 7, 2023                          Respectfully submitted,

                                          **BLOCK & LEVITON LLP**

                                          /s/ Jacob A. Walker
                                          Jacob A. Walker (SBN 271217)
                                          400 Concar Drive
                                          San Mateo, CA 94402
                                          (650) 781-0025 phone
                                          jake@blockleviton.com

                                          **HOLZER & HOLZER, LLC**

MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR APPT. AS LEAD                    15
PLAINTIFF AND APPROVAL OF LEAD COUNSEL
NO. 2:23-CV-01816-WBS-JDP

Corey D. Holzer (*pro hac vice* application forthcoming)
211 Perimeter Center Pkwy NE, Suite 1010
Atlanta, GA 30346
(770) 392-0090 phone
cholzer@holzerlaw.com

*Co-Counsel to Movant Carter Family Investors and Proposed Co-Lead Counsel*

MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR APPT. AS LEAD
PLAINTIFF AND APPROVAL OF LEAD COUNSEL
NO. 2:23-CV-01816-WBS-JDP

16

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 7, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system. I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

/s/ Jacob A. Walker
Jacob A. Walker

MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR APPT. AS LEAD
PLAINTIFF AND APPROVAL OF LEAD COUNSEL
NO. 2:23-CV-01816-WBS-JDP

17