**BRAGAR EAGEL & SQUIRE, P.C.**
Marion C. Passmore (SBN #228474)
passmore@bespc.com
580 California Street, Suite 1200
San Francisco, CA 94104
(415) 568-2124 (phone)
(212) 486-0462 (fax)

*Local Counsel for Todd Frega and Proposed Liaison*
*Counsel for the Proposed Class*

[Additional Counsel on Signature Block]

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE ORIGIN MATERIALS, INC. SECURITIES LITIGATION<br><br>——————————————————<br><br>This Document Relates To:<br>ALL ACTIONS. | Master File No. 2:23-cv-01816-WBS-JDP<br><br><u>CLASS ACTION</u><br><br>**MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF TODD FREGA FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF HIS CHOICE OF LEAD COUNSEL AND IN OPPOSITION TO ALL COMPETING MOTIONS**<br><br>Judge:  William B. Shubb<br>Date:   December 11, 2023<br>Time    1:30 P.M<br>Crtrm:  5 |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ....................................................................................................................... 6

I.    THE COURT SHOULD APPOINT FREGA AS LEAD PLAINTIFF BECAUSE HE HAS THE LARGEST FINANCIAL INTEREST IN THE ACTION OF ANY QUALIFIED MOVANT AND READILY SATISFIES RULE 23 .................................. 6

    A.    Frega Is the Presumptive Lead Plaintiff Because He Has the Largest Financial Interest of Any Qualified Movant ............................................................... 6

    B.    Frega Readily Satisfies the *Prima Facie* Rule 23 Requirements ........................... 7

    C.    There Is No Proof to Rebut the Strong Presumption in Favor of Frega ................. 8

II.   THE COMPETING MOTIONS MUST BE DENIED ........................................................ 8

    A.    The FNY Group Is Not A Qualified Movant Because It Has Not Satisfied Rule 23's Typicality and Adequacy Requirements ........................................................... 8

        1.    The FNY Group Is Atypical And Inadequate Because FNY Has Been Repeatedly Censured and Fined For Fraudulent Conduct – Including Relating to Section 10(b), The Very Statute It Seeks to Prosecute Here .... 9

        2.    The FNY Group Is Also Inadequate Under Rule 23 Because It Was Formed At The Last Minute By Its Lawyers, Lacks A Decision-Making Mechanism, And Runs Afoul of The PSLRA .........................................133

CONCLUSION ................................................................................................................ 19

i

# TABLE OF AUTHORITIES

*Page(s)*

Cases

*Ali v. Intel Corp.*,
No. 18-CV-00507-YGR, 2018 WL 2412111 (N.D. Cal. May 29, 2018)...................................14

*Arciaga v. Barrett Bus. Servs., Inc.*,
No. C14-5884 BHS, 2015 WL 791768 (W.D. Wash. Feb. 25, 2015)......................................15

*Chupa v. Armstrong Flooring, Inc.*,
No. 2:19-CV-09840-CAS (MRWx), 2020 WL 1032420 (C.D. Cal. Mar. 2, 2020)....................9

*Crihfield v. CytRx Corp.*,
No. CV 16-05519 SJO (SKx), 2016 WL 10587938 (C.D. Cal. Oct. 26, 2016) .................14, 15

*Fialkov v. Celladon Corp.*,
No. 15cv1458 AJB (DHB), 2015 WL 11658717 (S.D. Cal. Dec. 9, 2015) .............................15

*Frias v. Dendreon*,
835 F. Supp. 2d 1067 (W.D. Wash. 2011) ..............................................................................15

*Haideri v. Jumei Int'l Holding Ltd.*,
No. 20-CV-02751-EMC, 2020 WL 5291872 (N.D. Cal. Sept. 4, 2020)..................................15

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ....................................................................................................8

*In re Cloudera, Inc. Sec. Litig.*,
No. 19-CV-03221-LHK, 2019 WL 6842021 (N.D. Cal. Dec. 16, 2019).................................15

*In re Level 3 Commc'ns, Inc. Sec. Litig.*,
No. 09-cv-00200-PAB-CBS, 2009 WL 10684924 (D. Colo. May 4, 2009) .............................7

*In re Mersho*,
6 F.4th 891 (9th Cir. 2021) ..................................................................................................1, 13

*In re Milestone Sci. Sec. Litig.*,
183 F.R.D. 404 (D.N.J. 1998).................................................................................................15

*In re Netflix, Inc., Sec. Litig.*,
Nos. 12-0225 SC, 12-1030 LHK, 2012 WL 1496171 (N.D. Cal. Apr. 27, 2012)..............10, 11

ii

*In re Network Assocs., Inc. Sec. Litig.*,
   76 F. Supp. 2d 1017 (N.D. Cal.1999) .......................................................................................9

*In re Proxima Corp. Sec. Litig.*,
   No. 93-1139-IEG(LSP), 1994 WL 374306 (S.D. Cal. May 3, 1994) .........................................9

*In re Snap Inc. Sec. Litig.*,
   No. 2:17-cv-03679-SVW-AGR, 2019 WL 2223800 (C.D. Cal. Apr. 1, 2019) .........................10

*In re Surebeam Corporation Sec. Litig.*,
   No. 03 CV 1721JM(POR), 2004 WL 5159061 (S.D. Cal. Jan. 5, 2004) ..................................10

*In re XM Satellite Radio Holdings Sec. Litig.*,
   237 F.R.D. 13 (D.D.C. 2016) ...................................................................................................15

*Inchen Huang v. Depomed, Inc.*,
   289 F. Supp. 3d 1050 (N.D. Cal. 2017) ...................................................................................10

*Isaacs v. Musk*,
   No. 18-CV-04865-EMC, 2018 WL 6182753 (N.D. Cal. Nov. 27, 2018) ................................15

*Kinney v. Capstone Turbine Corp.*,
   No. CV 15-8914 DMG (RAOx), 2016 WL 5341948 (C.D. Cal. Feb. 29, 2016) ........................7

*Koffsmon v. Green Dot Corp.*,
   No. CV 19-10701 DDP (Ex), 2021 WL 3473975 (C.D. Cal. Aug. 6, 2021) ............................13

*Lako v. Loandepot, Inc.*,
   No. 8:21-cv-01449-JLS-JDE, 2022 WL 1314463 (C.D. Cal. May 2, 2022) ............................13

*Lifestyle Invs., LLC v. Amicus Therapeutics, Inc.*,
   No. 3:15-cv-7350 (FLW) (DEA), 2016 WL 3032684 (D.N.J. May 26, 2016) .........................15

*Markette v. XOMA Corp.*,
   No. 15-cv-03425-HSG, 2016 WL 2902286 (N.D. Cal. May 13, 2016) ...................................14

*Newman v. Eagle Bldg. Techs.*,
   209 F.R.D. 499 (S.D. Fla. 2002) ..............................................................................................10

*Pino v. Cardone Cap., LLC*,
   No. 2:20-cv-08499-JFW (KSx), 2020 WL 7585839 (C.D. Cal. Dec. 18, 2020) .............2, 10, 12

*Sneed v. AcelRx Pharms, Inc.*,
   No. 21-CV-04353-BLF, 2021 WL 5964596 (N.D. Cal. Dec. 16, 2021) ....................................9

iii

*Tsirekidze v. Syntax-Brillian Corp.*,
  No. CV-7-2204-PHX-FJM, 2008 WL 942273 (D. Ariz. Apr. 7, 2008) ....................................7

*Villare v. ABIOMED, Inc.*,
  No. 19 Civ. 7319 (ER), 2020 WL 3497285 (S.D.N.Y. June 29, 2020)................................9, 10

*Xianglin Shi v. Sina Corp.*,
  No. 05 Civ. 2154 (NRB), 2005 WL 1561438 (S.D.N.Y. July 1, 2005) ....................................10


*Statutes*

15 U.S.C. §78u-4(a)(3)(B)(iii)(II) .........................................................................................8

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) .........................................................................................6

*Rules*

Fed. R. Civ. P. 23 ...................................................................................................passim

*Regulations*

17 C.F.R. § 242.105 ...............................................................................................................11

*Other Authorities*

*In re Alta Mesa Resources, Inc. Securities Litigation*,
  4:19-cv-00957 (S.D. Tex.) ...........................................................................................4, 17

*In re Dynagas LNG Partners LP Securities Litigation*,
  1:19-cv-04512 (S.D.N.Y.) .............................................................................................4, 17

*In re Silver Lake Group, L.L.C. Securities Litigation*,
  No. 4:20-CV-02341-JSW (C.D. Cal.) ...........................................................................passim

iv

Movant Todd Frega ("Frega") respectfully submits this memorandum of law in further support of his motion for appointment as lead plaintiff and approval of his choice of lead counsel and in opposition to all competing motions.[1]

**PRELIMINARY STATEMENT**

On October 24, 2023, five movants timely filed motions for appointment as Lead Plaintiff. A review of those motions demonstrates that Frega has the largest financial interest of any qualified movant before the Court. Frega's financial interest exceeds $275,000, which ensures he will vigorously represent the proposed Class. In addition, Frega has also made the requisite *prima facie* showing of adequacy and typicality under Fed. R. Civ. P. 23 ("Rule 23"). *See infra* at 7. Frega lives in Woodstock, Georgia, has been investing for over 20 years, and is semi-retired from the ministry. *Id*. Frega has no conflicts with the proposed Class, and chose Bernstein Liebhard, an experienced law firm in securities class actions, as proposed Lead Counsel for the proposed Class. *Id*. Accordingly, under the PSLRA, there is a "strong" presumption that Frega should be appointed the Lead Plaintiff here. Once the PSLRA's strong presumption attaches, only "proof" of inadequacy can rebut it. No such proof exists here to rebut the presumption in Frega's favor. Thus, Frega should be appointed Lead Plaintiff in this action.

One other movant, the FNY Group, purports to have a larger financial interest than Frega. However, the FNY Group cannot satisfy its *prima facie* Rule 23 requirements and is not a qualified movant that this Court can even seriously consider. *See infra* at 8-18. In a misguided attempt to

---

[1] Competing motions were timely filed by (i) FNY Partners Fund LP ("FNY") and Peter Di Murro ("Di Murro", collectively, the "FNY Group"); (ii) Thomas Carter, Louise Carter, and the Carter Family Trust (the "Carter Group"); (iii) Nicholas Agapis; and (iv) Steven Park. Agapis and Park both filed notices of non-opposition to competing motions. *See* ECF Nos. 24, 31. "Mot." refers to Frega's opening motion. *See* ECF No. 20.

unduly capitalize on the Ninth Circuit's holding in *In re Mersho*, 6 F.4th 891 (9th Cir. 2021) – which found that unrelated groups can, under limited and appropriate circumstances, be appointed as lead plaintiff – three different law firms joined forces here at the eleventh hour to cobble together the FNY Group. This hastily formed, lawyer-driven grouping of an unrelated and geographically dispersed individual and fund is precisely the type of group that the PSLRA was designed to eliminate and that must be rejected by the Court.[2]

As a threshold matter, FNY, the group member claiming the larger losses, has fundamental Rule 23 impediments that its counsel were well aware of, but conveniently failed to disclose to the Court. Specifically, FNY has repeatedly been fined and censured for fraudulent and disruptive securities trading, and thus is likely to be subject to unique defenses that would seriously prejudice the proposed Class if the FNY Group is appointed Lead Plaintiff. Moreover, the mere fact that the FNY Group is likely to face these unique defenses alone is grounds to disqualify the FNY Group and for the Court to excise this inevitable liability to the proposed Class before it is too late. *See, e.g.*, *Pino v. Cardone Cap., LLC*, No. 2:20-cv-08499-JFW (KSx), 2020 WL 7585839, at *6 (C.D. Cal. Dec. 18, 2020) ("the probability that Desai will face this defense alone justifies denying his motion for appointment as co-lead plaintiff").

In 2015, an FNY affiliate, First New York Securities LLC ("FNY LLC") was sanctioned nearly $1 million for fraudulent short selling activity in violation of Rule 105 – which, like the

---

[2] As detailed herein, the FNY Group cannot meet its *prima facie* Rule 23 requirements because it has undisclosed conflicts with the proposed Class, is atypical of the proposed Class, and because it is subject to unique defenses that will seriously prejudice the proposed Class. However, even if the Court somehow finds that the FNY Group has met its *prima facie* Rule 23 requirements, which it would be very hard-pressed to do, the FNY Group's motion should still be denied because Frega presents the Court with abundant proof to rebut any presumption that the FNY Group satisfies Rule 23. Thus, Frega should still be appointed Lead Plaintiff.

2

claims here, is promulgated under Section 10(b) of the Exchange Act. *See* Passmore Decl. Exhibit A (FINRA Press Release).[3] FINRA's then-Executive Vice President of Market Regulation, Thomas Gira, stated that "Rule 105 [] M is vital to ensuring the integrity and fairness of the offering process" and "Rule 105 violations, ***particularly recidivist violations as is the case with First New York***, will be aggressively pursued by FINRA." *See id*. (FINRA had previously sanctioned FNY LLC for the same conduct in 2008, *see id*.).[4] Even more recently, on September 28, 2020, the Commodity Futures Trading Commission ("CFTC") fined FNY $450,000 for engaging in "multiple instances of the disruptive trading practice known as 'spoofing'" (*i.e.*, bidding or offering with the intent to cancel the bid or offer before execution) involving various futures contracts. *See* Passmore Decl. Exhibit C (2023 Form ADV) at 41. An FNY trader was also separately fined $135,000 for his role in the wrongdoing. *See id*. Given that Plaintiffs here allege securities fraud and the Lead Plaintiff's securities trading will inevitably be an issue at class certification, including to secure the key presumption of reliance, the unique defenses FNY is subject to render it profoundly inadequate and atypical of other Class members. It is doubtful that Di Murro, who joined with FNY at the last minute with a different law firm, is aware of FNY's misconduct. If he is not, then he did not meaningfully vet his co-movant and should not be a

---

[3] "Passmore Decl." refers to the Declaration of Marion Passmore in Support of the Memorandum of Law in Further Support of Motion of Todd Frega for Appointment as Lead Plaintiff and Approval of His Choice of Counsel and in Opposition to All Competing Motions, filed herewith. All Exhibit references herein are to the Passmore Decl.

[4] Also, in September 2006, the National Association of Securities Dealers ("NASD") (the predecessor to FINRA) charged FNY and its then-President Michael Friedman with violating NASD Rules by failing to adequately supervise FNY's traders, rendering FNY unable to detect, *inter alia*, "violations of Section 10(b)". *See* Passmore Decl. Exhibit B (2020 Form ADV) at 40. Friedman was fined $100,000. *See id*.

fiduciary for the proposed Class. If he is aware of FNY's misconduct and was willing to proceed anyway, then that is far worse.

While FNY Group's motion trumpets that FNY has been appointed as a lead plaintiff in two other actions, this Court should take no comfort from those appointments, because neither of the courts in those cases had the opportunity to address FNY's past fines and censures for fraud-related conduct. FNY filed unopposed stipulations in both cases to serve as co-lead plaintiff with another movant. *See In re Dynagas LNG Partners LP Securities Litigation*, 1:19-cv-04512 (S.D.N.Y. June 11, 2019) (Dkt. No. 41) (attached as Passmore Decl. Exhibit D); *In re Alta Mesa Resources, Inc. Securities Litigation*, 4:19-cv-00957 (S.D. Tex. Jan. 14, 2020) (Dkt. No. 54) (attached as Passmore Decl. Exhibit E). Ironically, in *Alta Mesa,* one of FNY's proposed co-lead counsel here, Robbins Geller, attacked FNY for being a member of an unrelated lawyer-driven group very much like the FNY Group before this Court here. *See* Passmore Decl. Exhibit F hereto (*Alta Mesa*, Dkt. No. 13 at 8-9) ("The First New York Group failed to make any showing in its motion as to why its group members sought to be appointed together or why they should be considered together… [the group] is thus [] improper [] under the PSLRA"). This should leave little doubt in the Court's mind that this grouping is purely lawyer-driven and opportunistic.

FNY's past fines and censures were also brought up against the fund in *Silver Lake*, but the court there likewise did not address those issues.  The *Silver Lake* court rejected FNY's motion for an even more fundamental reason: FNY (which had the third largest loss) belatedly joined up with another movant after initial motions were filed to try and beat out the movant with the largest loss.  The *Silver Lake* court viewed FNY's machination as the epitome of lawyer-driven litigation and criticized it as such.  *See* Passmore Decl. Exhibit G hereto, *Silver Lake,* No. 4:20-cv-02341, Dkt. No. 92 at 4 ("[t]he Court declines to encourage such plaintiff groups assembled 'for the

4

obvious purpose of creating a large enough grouping of investors to qualify as lead plaintiff'"). Thus, it appears that FNY has repeatedly been used (and is willing to be used) as a pawn by its counsel at the lead plaintiff stage.  The Court is tasked to appoint a fiduciary for the proposed Class, not for lawyers, and thus should not countenance the lawyer-driven gamesmanship that are being played here by the FNY Group.

The FNY Group's motion only further highlights the group's glaring Rule 23 impediments. For example, the FNY Group's boilerplate joint declaration (the "Declaration")  was signed at the eleventh hour on the day the motion was due (and each group member had only just signed their PSLRA certifications with different law firms that day and the day before, respectively, *see* ECF Nos. 18-4 and 18-2); the Declaration ambiguously claims that the group members "spoke" – but does not identify how, or when they "spoke", and it could only have been at the very last minute at best, leaving little meaningful opportunity for the movants to vet one another (as evidenced by Di Murro's willingness to group with FNY despite FNY's misconduct); the Declaration does not explain how the members, represented by three different law firms and from different countries, found one another, or why they even grouped together; the Declaration gives lip-service to joint "decision-making" but does not even describe how that would work or, critically, how the two-member group would handle a deadlock; and the Declaration's claim that FNY and Di Murro's "complementary" investments "including stock and options" supports their grouping makes no sense whatsoever here as FNY alone purchased stock and options. Thus, there was no reason to join FNY with Di Murro other than to increase financial interest – and their counsel's chances of being appointed. In sum, this is precisely the type of group the PSLRA eschews and that must be rejected.

5

For all these reasons, Frega's motion for appointment as Lead Plaintiff and approval of Lead and Liaison Counsel should be granted and all competing motions should be denied.

## ARGUMENT

## I.  THE COURT SHOULD APPOINT FREGA AS LEAD PLAINTIFF

Under the PSLRA, a "strong" presumption in favor of being appointed Lead Plaintiff goes to the movant who suffered the largest financial interest and satisfies Fed. R. Civ. P. 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Here, that movant is Frega because he has the largest financial interest of qualified movants and readily satisfies the *prima facie* Rule 23 requirements, entitling him to status as the presumptive lead plaintiff.  In addition, no proof exists to rebut that presumption. While one other movant (the FNY Group) claims to have a larger financial interest, the FNY Group is not the presumptive lead plaintiff because it has not, and cannot, meet the *prima facie* Rule 23 requirements. *See infra* at 8-18.

### A.    Frega Is the Presumptive Lead Plaintiff Because He Has the Largest Financial Interest of Any Qualified Movant

Frega has a financial interest of $275,912, which is the largest financial interest of any qualified movant before the Court:

| MOVANT | FINANCIAL INTEREST |
| --- | --- |
| Todd Frega | ($275,912) |
| The Carter Group | ($196,003) |
| ~~Nicholas Agapis~~ | ~~($112,579)~~ |
| ~~Steven Park~~ | ~~($57,236)~~ |
| ~~FNY~~ ~~Peter Di Murro~~ ~~FNY Group~~ | ~~($521,721)~~ ~~($243,389)~~ ~~($765,110)~~ |

6

Only one other movant, the FNY Group, claims to have a larger financial interest than Frega, but the FNY Group is a textbook example of an inadequate and atypical movant as it cannot satisfy the *prima facie* Rule 23 requirements. *See infra* at 8-18. Thus, the FNY Group must be disqualified.[5]

**B.      Frega Readily Satisfies the *Prima Facie* Rule 23 Requirements**

In addition to having the largest financial interest of any qualified movant, Frega has made the requisite *prima facie* showing of typicality and adequacy under Rule 23.

Frega is typical of, and has no conflicts of interest with, other Class members because he bought Origin securities during the Class Period and was harmed by the same alleged misstatements and omissions as other Class members.  Frega's claims are also typical of the Class in that he suffered the same injuries as a result of the same, or substantially the same, course of conduct by the named defendants, and bases his claims on the same, or substantially the same, legal theories as the Class. *See* Mot. At 5.

Frega also readily meets the PSLRA's *prima facie* adequacy requirements.  Frega provided background information about himself in his opening brief, including that he lives in Georgia, has invested in the securities markets for over twenty years, and is semi-retired from the ministry. *See*

---

[5] Because FNY is inadequate, the FNY Group as a whole is inadequate. *See Tsirekidze v. Syntax-Brillian Corp.*, No. CV-7-2204-PHX-FJM, 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008) ("[t]he Farrukh Group moved for lead plaintiff as a group and will be evaluated as such"); *Kinney v. Capstone Turbine Corp.*, No. CV 15-8914 DMG (RAOx), 2016 WL 5341948, at *3 n.3 (C.D. Cal. Feb. 29, 2016) (court can only consider the group not the individual member of the group); *In re Level 3 Commc'ns, Inc. Sec. Litig.*, No. 09-cv-00200-PAB-CBS, 2009 WL 10684924, at *5 (D. Colo. May 4, 2009) (court would not look at group members individually where the group "did not request that any of its constituents be appointed as lead plaintiff individually in the event the Court declined to appoint the group"). Here, the FNY Group members did not even request that they be independently considered if necessary. *See* ECF No. 18-4. Regardless, even if the Court disaggregated and looked at Di Murro alone (which it should not do), Frega has a larger interest than Di Murro.

*id.* at 1. Frega has also proposed qualified lead counsel. *See id.* at 6. Thus, Frega satisfies the *prima facie* Rule 23 requirements and, thus, is entitled to the PSLRA's "strong" presumption of being the most adequate plaintiff to represent the proposed Class. *See id.*

### C.    There is No Proof to Rebut the Strong Presumption in Favor of Frega

The only way for competing movants to rebut the PSLRA's "strong" presumption in favor of appointing Frega as Lead Plaintiff is to present actual "proof", not mere speculation, that Frega somehow does not satisfy Rule 23. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). There is no proof of any Rule 23 impediment against Frega here. Moreover, the lead plaintiff process is not a "beauty contest" – the qualified movant with the largest financial interest (here, Frega) is the most adequate plaintiff, period. *See In re Cavanaugh*, 306 F.3d 726, 729-34 (9th Cir. 2002) (once a court determines which plaintiff has the largest stake, the court must appoint that plaintiff as lead unless it finds that he does not satisfy the typicality or adequacy requirements).

### II.  THE COMPETING MOTIONS MUST BE DENIED

As discussed above, Frega has the largest financial interest of any qualified movant before the Court, he handily satisfies his *prima facie* Rule 23 requirements, and there is no proof to rebut the strong presumption in his favor. Thus, Frega should be appointed Lead Plaintiff. All other movants either have not met Rule 23's *prima facie* typicality and adequacy requirements or have a smaller financial interest.

### A.    The FNY Group Is Not A Qualified Movant Because It Has Not Satisfied Rule 23's Typicality and Adequacy Requirements

The FNY Group must not be appointed here because it cannot satisfy its Rule 23 requirements. FNY has been repeatedly fined and censured for misconduct relating to financial fraud – the same misconduct it asks to prosecute here. Moreover, the FNY Group is an inadequate

lawyer-driven group that was hastily stitched together by three opportunistic law firms, and that otherwise provided the Court with woefully inadequate information to establish its adequacy and typicality under Rule 23.

**1.**    **The FNY Group Is Atypical And Inadequate Because FNY Has Been Repeatedly Censured and Fined For Fraudulent Conduct – Including Relating to Section 10(b), The Very Statute It Seeks to Prosecute Here**

The FNY Group has not satisfied Rule 23's typicality and adequacy requirements and, thus, is not qualified to serve as Lead Plaintiff here.  For starters, FNY, one of the group's two unrelated members, has been repeatedly fined and censured for alleged misconduct, including relating to Section 10(b).  Significantly, FNY's counsel was aware of this misconduct but did not disclose it to the Court.

Courts routinely find proposed lead plaintiffs inadequate when they have been censured for allegedly dishonest acts – particularly when the conduct is undisclosed and relates to the statute under which they seek to prosecute on behalf of a class. *See*, *e.g.*, *Sneed v. AcelRx Pharms*, *Inc.*, No. 21-CV-04353-BLF, 2021 WL 5964596, at *4 (N.D. Cal. Dec. 16, 2021) (denying motion to appoint lead plaintiff where movant had a past of financial misconduct that he "did not disclose [] in his own motion"). Here, the FNY Group did not disclose its repeated fines and censures. *See also Chupa v. Armstrong Flooring, Inc.*, No. 2:19-CV-09840-CAS (MRWx), 2020 WL 1032420, at *3 (C.D. Cal. Mar. 2, 2020) (explaining that courts will deny a lead plaintiff motion when prior misconduct is "related to the claims they seek to prosecute on behalf of the proposed class" but appointing as lead plaintiff movant with a single disclosed and unrelated infraction that had taken place 20 years prior); *In re Proxima Corp. Sec. Litig.*, No. 93-1139-IEG(LSP), 1994 WL 374306, at *17-18 (S.D. Cal. May 3, 1994) (lead plaintiff movant "unfit to serve as an adequate representative" where movant "committed fraud and now seeks to prosecute it"); *In re Network*

9

MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF TODD FREGA
FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF HIS CHOICE
OF LEAD COUNSEL AND IN OPPOSITION TO ALL COMPETING MOTIONS
Case No. 2:23-cv-01816-WBS-JDP

*Assocs., Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1029 (N.D. Cal.1999) (rejecting movant because two of its sister entities were under criminal investigation and the court did not want an institution under such a "cloud" to occupy a fiduciary role for other class members); *Villare v. ABIOMED, Inc.*, No. 19 Civ. 7319 (ER), 2020 WL 3497285, at *7 (S.D.N.Y. June 29, 2020) (movant's "fraud conviction ten years ago remains extremely concerning for an individual seeking to serve as a fiduciary for absent class members asserting they are the victims of a fraudulent scheme").[6]

In *In re Surebeam Corporation Securities Litigation*, No. 03 CV 1721JM(POR), 2004 WL 5159061, at *7 (S.D. Cal. Jan. 5, 2004), the court found that a lead plaintiff movant was "incurably tainted" by his alleged securities industry misconduct, including unauthorized trading in client accounts and the use of unsuitable investments, which caused his NASD membership to be terminated. *See id*. Significantly, the court there held that "[w]ithout comment or consideration of Mr. Brown's guilt or innocence as to the [] charges, this court finds that there is at least a potential that Jamerica will be subject to unique defenses and will not [] adequately protect the interests of the class." *Id*. Thus, the *Surebeam* court held that even if the movant was innocent, the specter of unique defenses warranted rejecting him as lead plaintiff. Many other courts in this Circuit and elsewhere have made similar findings.[7]

_____

[6] *See also Xianglin Shi v. Sina Corp.*, No. 05 Civ. 2154(NRB), 2005 WL 1561438, at *4-5 (S.D.N.Y. July 1, 2005) (rejecting lead plaintiff group where one member pled guilty to providing false information to a financial institution 10 years earlier); *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 504-05 (S.D. Fla. 2002) (two public citations for violation of the SEC's and NASD's rules rendered a proposed lead plaintiff inadequate given concerns about possible defenses).

[7] *See*, *e.g.*, *In re Netflix, Inc., Sec. Litig.*, Nos. 12-0225 SC, 12-1030 LHK, 2012 WL 1496171, at *5 (N.D. Cal. Apr. 27, 2012) (declining to appoint lead plaintiff due to "substantial likelihood that a unique defense could be raised against that plaintiff"); *Pino*, 2020 WL 7585839, at *6 ("at this stage, the Court need not decide the merits of this defense.... Instead, the probability that Desai will face this defense alone justifies denying his motion for appointment as co-lead plaintiff") (citing *Netflix*, 2012 WL 1496171, at *5); *see also In re Snap Inc. Sec. Litig.*, No. 2:17-cv-03679-

10

Here, FNY is undeniably, and radically, atypical of other Class members because it has been censured and fined numerous times – including for conduct relating to Section 10(b) – the very statute FNY seeks to prosecute here. On September 14, 2006, the NASD charged FNY and Friedman with violating NASD Rules by "failing "to provide for adequate and reasonable supervision of the activities of…the firm's trading department," such that FNY and Friedman were unable "***to detect violations of Section 10(b) of the Securities Exchange Act of 1934, SEC Rule 10b-5***, 17(A)(1) and 17(A)(3) of the Securities Act of 1933 by its registered representatives." *See* Ex. B at 40. Friedman was fined $100,000.00. *See id*. In addition, in 1999, FNY and Friedman "voluntarily resigned their associate memberships in" the American Stock Exchange, Inc. after being jointly and severally fined $25,000 for, *inter alia*, "continuing to disregard the exchange's directive to register and qualify FNY Corp's securities traders…." *See id*. at 42.

An FNY affiliate, FNY LLC, has more recent violations relating to Section 10(b).  In 2015, FNY LLC was sanctioned nearly one million dollars for repeatedly violating Rule 105 of Regulation M – which is promulgated under Section 10(b) – for fraudulent short selling in connection with fourteen public offerings.[8] *See* Passmore Decl. Ex. A.  The FNY Group's

---

SVW-AGR, 2019 WL 2223800, at \*2 (C.D. Cal. Apr. 1, 2019) ("[s]everal potential problems regarding the NMSIC's typicality and adequacy have been raised by the other movants. It is possible that Defendants would not ultimately succeed in asserting any of these arguments. However, it seems highly likely that the arguments would play a significant role at trial, and that the NMSIC would have to devote class resources to defending itself. [Thus,] NMSIC does not satisfy the Rule 23 requirements of adequacy and typicality"); *Inchen Huang v. Depomed, Inc.*, 289 F. Supp. 3d 1050, 1055 (N.D. Cal. 2017) (unique defense does not have to be "prove[n] [] at this stage[,] but merely 'show a degree of likelihood that a unique defense might play a significant role at trial'") (quoting *Netflix*, 2012 WL 1496171, at \*5).

[8] Rule 105 of Regulation M under the Securities Exchange Act of 1934 generally prohibits buying securities in secondary offerings when the purchaser sold short the security that is the subject of the offering during a specific restricted period – typically five business days – before the secondary offering is priced. *See* 17 C.F.R. § 242.105.

11

MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF TODD FREGA
FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF HIS CHOICE
OF LEAD COUNSEL AND IN OPPOSITION TO ALL COMPETING MOTIONS
Case No. 2:23-cv-01816-WBS-JDP

proposed co-lead counsel here is well aware of this "nearly $1 million sanction" as they noted it in *Alta Mesa*. *See* Passmore Decl. Ex. F, Dkt. 26 at 4 n.6. FNY LLC was also prohibited from participating in secondary offerings for six months. *See* Passmore Decl. Ex. A. Because FINRA had previously sanctioned FNY LLC for the same conduct in 2008 (*see id.*), FINRA's Thomas Gira stated that "Rule 105 of Regulation M [was] vital to ensuring the integrity and fairness of the offering process" and that "Rule 105 violations, ***particularly recidivist violations as is the case with First New York***, will be aggressively pursued by FINRA." *See id*.

FNY was fined yet again for misconduct even more recently. On September 28, 2020, the CFTC fined FNY $450,000 for spoofing (bidding or offering with the intent to cancel the bid or offer before execution) involving futures contracts. *See* Passmore Decl. Ex. C at 41. The FNY trader was fined $135,000. *See id*. Notably, this fine occurred while Shawn Fischman – who signed FNY's certification here – was FNY's General Counsel and Chief Compliance Officer. *See* Passmore Decl. Exhibit H (Shawn Fischman's LinkedIn page).

The repeated fines and censures against FNY relating to the securities laws render it atypical of other Class members, inadequate, and unfit to serve in a representative capacity in a case alleging violations of securities laws. At the very least, FNY will have to face unique defenses at class certification – potentially jeopardizing the case for the proposed Class. *See Pino*, 2020 WL 7585839, at *6 ("the Court need not decide the merits of this defense....the probability that Desai will face this defense alone justifies denying his [lead plaintiff] motion"). The Court should not appoint an unrelated group with such vulnerabilities to serve in a representative capacity.

Accordingly, the motion of the FNY Group should be denied.

2.      **The FNY Group's Motion Should Also Be Denied For Other Rule 23 Impediments, Including That It Was Opportunistically Formed At The Last Minute By Three Law Firms, Lacks A Decision-Making Mechanism, And Runs Afoul of The PSLRA**

The FNY Group is also inadequate under Rule 23 because it (a) is a lawyer-made construct thrown together at the eleventh hour to concoct the largest financial interest, (b) lacks a decision-making mechanism, (c) provides no explanation for how its group members found one another or why they decided to come together as a group, and (d) fails to provide a colorable explanation for why a group is necessary for the successful prosecution of this case, or why three law firms are needed to represent them.

While the Ninth Circuit held in *Mersho* that proposed lead plaintiff groups lacking a pre-existing relationship can be adequate in some circumstances, particularly when their members have demonstrated they can work together well to vigorously prosecute the litigation and control counsel, that is not an open invitation for any group of unrelated investors to join their losses in an attempt to become lead plaintiff. *Id.*, 6 F.4th at 901. Likewise, while the PSLRA generally states that institutional investors are good examples of lead plaintiffs who will lead counsel, FNY is not what the PSLRA contemplated because FNY is apparently willing to do whatever its opportunistic counsel tells it to, including grouping up with anyone and everyone – even after initial motions are filed as in *Silver Lake*. *See* Passmore Decl. Ex. G.

The recent post-*Mersho* case of *Lako v. Loandepot, Inc.*, No. 8:21-cv-01449-JLS-JDE, 2022 WL 1314463 (C.D. Cal. May 2, 2022) is instructive. There, the court rejected a group of two individual investors who lacked a pre-litigation relationship because they failed to make a *prima facie* showing of typicality and adequacy and thus was not presumptive lead plaintiff:

> [The] LDI Group provided sparse information regarding the individual members of the group, recited only boilerplate assurances that its members would work together to

13

oversee the litigation, and did not provide any information regarding whether the members had a pre-litigation relationship.

*Id.* *See also Koffsmon v. Green Dot Corp.*, No. CV 19-10701 DDP (Ex), 2021 WL 3473975, at *3 (C.D. Cal. Aug. 6, 2021), *reconsideration denied*, No. CV 19-10701 DDP (EX), 2022 WL 170636 (C.D. Cal. Jan. 19, 2022) (post-*Mersho* case declining to appoint group that lacked pre-litigation relationship). These cases show that even post-*Mersho*, courts carefully scrutinize proposed lead plaintiff groups, as well as any declarations they submit.

The FNY Group's conclusory and boilerplate Declaration all but broadcasts the group's inadequacy. First, the group's members only signed the barebones Declaration the day the motion was due (and only signed their PSLRA certifications that day and the day before, respectively, with different law firms, *see* ECF Nos. 18-4, 18-2).[9]  *See Markette v. XOMA Corp.*, No. 15-cv-03425-HSG, 2016 WL 2902286, at *9 (N.D. Cal. May 13, 2016) (rejecting "barebones declaration" as insufficient to support appointment of lead plaintiff group).

Second, the FNY Group ambiguously claims that its members "spoke" – but the Declaration does not identify who spoke with who, what the means of communication was, or when the communication occurred – and it could only have been at the last minute on the day the motion was due, leaving little if any time for them to meaningfully consider their supposed grouping or for Di Murro to vet FNY.[10]

---

[9] The certifications of FNY and Di Murro are in markedly different formats, strongly suggesting that two different firms drafted the certifications.  *See* ECF No. 18-2.

[10] Indeed, the obvious rush of the FNY Group's motion may have left Di Murro unable to do so. It is unclear if Di Murro knows of FNY's past fines and censures. If Di Murro does know and is nevertheless willing to join FNY in a group, his lack of explanation on that issue would undermine his adequacy. If Di Murro does not know, that shows Di Murro did not adequately vet FNY, also undermining Di Murro's adequacy and heightening FNY's failure to disclose its past fines and censures in its opening papers.

14

Third, the FNY Group fails to explain in the Declaration how its members, represented by different law firms, living in different countries, found one another, or why they grouped together. This further shows the FNY Group members were cobbled together by counsel. *See Ali v. Intel Corp.*, No. 18-CV-00507-YGR, 2018 WL 2412111, at *3 n.8 (N.D. Cal. May 29, 2018) ("Also troubling is the declaration's failure to describe how Tavares and Ali, who reside in New York City and London [] became 'aware of each other,' [suggesting] each was recruited by counsel"); *Crihfield v. CytRx Corp.*, No. CV 16-05519 SJO (SKx), 2016 WL 10587938, at *4 (C.D. Cal. Oct. 26, 2016) ("[p]erhaps the most troubling aspect of the Joint Declaration, however, is its failure to describe how the six members …who reside in Michigan, Illinois, California, Massachusetts, and Vancouver [] came to know of each others' existence, strengthening the inference that each was recruited by counsel"). The FNY Group also does not explain why it needs three law firms to represent it or the proposed Class here.[11]

Fourth, the Declaration says nothing meaningful about how the group will effectively prosecute this action. The Declaration states that the members purportedly discussed "decision-making" (*see* ECF No. 18-4), but glaringly omits any decision-making mechanism in the event of a disagreement between the two group members. The absence of such a mechanism renders the FNY Group inadequate. *See In re Cloudera, Inc. Sec. Litig.*, No. 19-CV-03221-LHK, 2019 WL 6842021, at *7 (N.D. Cal. Dec. 16, 2019) (rejecting two-member institutional group where

---

[11] *See Crihfield*, 2016 WL 10587938, at *4 (rejecting group with no apparent relationship between members and no explanation as to need of multiple law firms); *In re XM Satellite Radio Holdings Sec. Litig.*, 237 F.R.D. 13, 20 n.4 (D.D.C. 2016) (citing cases that raise concern that "multiplicity of counsel could impede the progress of the litigation, complicate discovery and communication among the parties, and increase the potential for conflict among the plaintiff class"); *In re Milestone Sci. Sec. Litig.*, 183 F.R.D. 404, 418 (D.N.J. 1998) ("potential for duplicative services and [] increase in [] fees works against [approving] multiple lead counsel").

15

declaration "provided no detail whatsoever about any decisionmaking process"); *Isaacs v. Musk*, No. 18-CV-04865-EMC, 2018 WL 6182753, at *3 (N.D. Cal. Nov. 27, 2018) (rejecting group where "the decisionmaking structure [in declaration] does not appear to be robust"); *Haideri v. Jumei Int'l Holding Ltd.*, No. 20-CV-02751-EMC, 2020 WL 5291872, at *5 (N.D. Cal. Sept. 4, 2020) (declining to appoint group where decision-making structure was not in original declaration and "appears to have been devised only after inquiry and prodding by the Court").

Indeed, the lack of a decision-making mechanism in a two-member group is particularly concerning because you cannot have a democracy of two. *See, e.g.*, *Lifestyle Invs., LLC v. Amicus Therapeutics, Inc.*, No. 3:15-cv-7350 (FLW) (DEA), 2016 WL 3032684, at *6 (D.N.J. May 26, 2016) (rejecting four-member group where it had "not indicated how they will proceed in the event that their decision-makers become deadlocked by an even split in their voting"); *Frias v. Dendreon*, 835 F. Supp. 2d 1067, 1071 (W.D. Wash. 2011) (denying motion to appoint group as lead plaintiff because group's proposed decision-making mechanism was flawed where it could result in a deadlock); *Arciaga v. Barrett Bus. Servs., Inc.*, No. C14-5884 BHS, 2015 WL 791768, at *3 (W.D. Wash. Feb. 25, 2015) (denying motion to appoint group of two with no pre-litigation relationship as lead plaintiff where group did not disclose its decision-making mechanism). *Cf. Fialkov v. Celladon Corp.*, No. 15cv1458 AJB (DHB), 2015 WL 11658717, at *4 (S.D. Cal. Dec. 9, 2015) ("appointment of an individual as lead plaintiff alleviates any concerns regarding cohesiveness and group decision making").

Finally, to make matters worse, the only reason the FNY Group provides for its grouping makes no sense. The Declaration claims that "the complementary nature of our [Origin] investments [] (including stock and options)" will benefit the proposed Class. *See* ECF No. 18-4

16

at 7.  But FNY alone purchased both stock and options (*see* ECF No. 17 at 6), so there was no reason to add Di Murro to the group other than to increase its financial interest.[12]

Significantly, as the Court should here, a court in this Circuit has already rejected a lead plaintiff motion of FNY where FNY, like here, was part of an improper, lawyer-driven group. *See* Passmore Decl. Ex. G (FNY's motion for appointment as part of an unrelated group "violates the spirit of the PSLRA by encouraging lawyer-driven litigation based on artificially created groups…. [FNY's group] appears to have little in common and may present conflicts in communication and management of the case … The Court declines to encourage such plaintiff groups assembled for the obvious purpose of creating a large enough grouping of investors to qualify as lead plaintiff").

Moreover, FNY's own proposed co-lead counsel, Robbins Geller, has criticized FNY for cobbling together an unrelated and lawyer-driven group. *See* Passmore Decl., Ex. F.  In *Alta Mesa*, before FNY and the other movants stipulated to serve as co-lead plaintiffs and a proposed class representative (*see* Passmore Decl. Ex. E), FNY's current proposed co-lead counsel opposed FNY's motion to be appointed with an unrelated individual investor – which, ironically, is precisely what they advocate here for FNY:

[The FNY Group] is an improper lawyer-driven amalgamation with no pre-existing relationship among the First New York Entities and Burbach…

The First New York Group is a disparate group of movants that apparently were brought together by counsel for the purpose of satisfying the PSLRA's largest financial interest requirement.

The First New York Group failed to make any showing in its motion as to why its group members sought to be appointed together or why they should be considered together.[13]

---

[12] To the extent that the FNY Group seeks to belatedly cure all of the deficiencies with its motion and Declaration, that will only confirm that the group was rushed together by their counsel at the last second.

[13] *See* Passmore Decl. Ex. F at 7-8. While the FNY Group notes that FNY has experience as serving as a lead plaintiff in *Alta Mesa*, a case it states is slated for a May 2024 trial, an imminent trial only

17

While FNY Group notes that FNY has been appointed as a Lead Plaintiff in two other actions, neither of those courts addressed FNY's past fines and censures for fraud-related conduct since FNY filed unopposed stipulations in both cases to serve as co-lead plaintiff with another movant. *See* Passmore Decl. Exs. D, E.  FNY's past fines and censures were brought up against it in *Silver Lake*,[14] but that court did not have to address those issues because it rejected FNY for a more basic reason – FNY joined forces with another movant ***after it filed its motion*** in a brazen attempt to concoct the largest financial interest. The *Silver Lake* court viewed this as classic lawyer-driven litigation and criticized it as such.  *See* Passmore Decl. Ex. G. at 4 ("the resulting group—which consists of five plaintiffs and three lead counsel firms—appears to have little in common and may present conflicts in communication and management of the case….  The Court declines to encourage such plaintiff groups assembled 'for the obvious purpose of creating a large enough grouping of investors to qualify as lead plaintiff' and disregards the FNY and Walleye Groups' amended request'").

Accordingly, the FNY Group is inadequate and atypical of other Class members and should not be appointed as Lead Plaintiff.[15]

---

shows that FNY – in addition to its many fatal Rule 23 impediments – likely lacks the time to monitor this case if appointed.

[14] The lead plaintiff briefing in *Silver Lake* and *Alta Mesa* also occurred before FNY's recent September 2020 fines.

[15] The remaining movant, the Carter Group ($196,003) has a much lower financial interest than Frega and, thus, its motion should also be denied.

18

MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF TODD FREGA
FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF HIS CHOICE
OF LEAD COUNSEL AND IN OPPOSITION TO ALL COMPETING MOTIONS
Case No. 2:23-cv-01816-WBS-JDP

**CONCLUSION**

For the foregoing reasons and those given in his opening motion, Frega respectfully requests that this Court: (1) appoint him as Lead Plaintiff; and (2) approve his selection of Bernstein Liebhard as Lead Counsel and Bragar Eagel as Liaison Counsel for the proposed Class.

Dated: November 7, 2023                    Respectfully submitted,

                                           **BRAGAR EAGEL & SQUIRE, P.C.**

                                           /s/ Marion C. Passmore
                                           Marion C. Passmore (SBN #228474)
                                           580 California Street, Suite 1200
                                           San Francisco, CA 94104
                                           (415) 568-2124 (phone)
                                           (212) 486-0462 (fax)
                                           passmore@bespc.com

                                           Local Counsel for Todd Frega and
                                           Proposed Liaison Counsel for the Proposed
                                           Class

                                           **BERNSTEIN LIEBHARD LLP**
                                           Laurence J. Hasson
                                           Joseph R. Seidman, Jr.
                                           Jeffrey McEachern
                                           10 East 40th Street
                                           New York, NY  10016
                                           (212) 779-1414 (phone)
                                           (212) 779-3218 (fax)
                                           lhasson@bernlieb.com
                                           seidman@bernlieb.com
                                           mceachern@bernlieb.com

                                           Counsel for Todd Frega and Proposed
                                           Lead Counsel for the Proposed Class

19

**PROOF OF SERVICE**

I HEREBY CERTIFY that, on November 7, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered users. I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 7, 2023.

*/s/ Marion C. Passmore*
Marion C. Passmore