**EXHIBIT F**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CAMELOT EVENT DRIVEN FUND, A SERIES OF FRANK FUNDS TRUST, Individually and on Behalf of All Others Similarly Situated, | § § § § | Civil Action No. 4:19-cv-00957 |
| | § | CLASS ACTION |
| Plaintiff, | § § | |
| vs. | § § § | |
| ALTA MESA RESOURCES, INC. f/k/a SILVER RUN ACQUISITION CORPORATION II, et al., | § § § § § | |
| Defendants. | § § § | |
| FNY PARTNERS FUND LP and FNY MANAGED ACCOUNTS, LLC, Individually and on Behalf of All Others Similarly Situated, | § § § § | Civil Action No. 4:19-cv-01027 |
| | § | CLASS ACTION |
| Plaintiffs, | § § § | |
| vs. | § § | |
| ALTA MESA RESOURCES, INC. f/k/a SILVER RUN ACQUISITION CORPORATION II, et al., | § § § § § | |
| Defendants. | § § § | |

**PLUMBERS AND PIPEFITTERS NATIONAL PENSION FUND'S MEMORANDUM OF
LAW IN OPPOSITION TO COMPETING LEAD PLAINTIFFS MOTIONS**

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ..................................................................................................................1

II.  ARGUMENT........................................................................................................................3

    A.  The Pension Fund Is Entitled to the "Most Adequate Plaintiff"
        Presumption for the Proxy Claims..............................................................................3

        1.  The Pension Fund Has the Largest Financial Interest in the Proxy
             Claims ..............................................................................................................3

        2.  The Pension Fund Is Typical and Adequate to Represent the Class............5

    B.  The First New York Group Is Subject to Unique Defenses....................................6

III.  CONCLUSION...................................................................................................................12

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Camp v. Qualcomm Inc.*,
No. 18-cv-1208-AJB-BLM, 2019 WL 277360
(S.D. Cal. Jan. 22, 2019).................................................................................................8

*Carr v. Analogic Corp.*,
No. 18-cv-11301-ADB, 2018 WL 4932858
(D. Mass. Oct. 10, 2018)...............................................................................................3

*Galmi v. Teva Pharms. Indus. Ltd.*,
302 F. Supp. 3d 485 (D. Conn. 2017)...........................................................................9

*In re BP, PLC Sec. Litig.*,
758 F. Supp. 2d 428 (S.D. Tex. 2010) ..........................................................................5

*In re Cardinal Health, Inc. Sec. Litig.*,
226 F.R.D. 298 (S.D. Ohio 2005) .............................................................................7, 12

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)...........................................................................................8

*In re Herley Indus. Inc. Sec. Litig.*,
No. Civ.A. 06-2596, 2009 WL 3169888
(E.D. Pa. Sept. 30, 2009) .............................................................................................10

*In re Outerwall Inc., Stockholder Litig.*,
No. C16-1275JLR, 2017 WL 881382
(W.D. Wash. Mar. 6, 2017) ...........................................................................................3

*In re Peregrine Sys., Inc. Sec. Litig.*,
No. 02 cv 870-J(RBB), 2002 WL 32769239
(S.D. Cal. Oct. 11, 2002) ...............................................................................................5

*In re Telxon Corp. Sec. Litig.*,
67 F.Supp. 2d 803 (N.D. Ohio 1999)............................................................................7

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
535 F. Supp. 2d 249 (D.N.H. 2007)..............................................................................6

*In re Waste Mgmt., Inc. Sec. Litig.*,
128 F. Supp. 2d 401 (S.D. Tex. 2000) ..........................................................................8

**Page**

*Lintz v. Agria Corp.*,
No. 08 Civ. 3536 (WHP), 2008 WL 5191087
(S.D.N.Y. Dec. 3, 2008)...........................................................................................................5

*Luna v. Marvell Tech. Grp., Ltd.*,
No. C 15-05447 WHA, 2017 WL 4865559
(N.D. Cal. Oct. 27, 2017)........................................................................................................6

*Northstar Fin. Advisors, Inc. v. Schwab Invs.*,
609 F. Supp. 2d 938 (N.D. Cal. 2009), *rev'd on other grounds*, 615 F.3d 1106
(9th Cir. 2010).......................................................................................................................11

*Plumbers & Pipefitters, Nat. Pension Fund v. Burns*,
967 F. Supp. 2d 1143 (N.D. Ohio 2013)..................................................................................6

*Ross v. Abercrombie & Fitch Co.*,
No. 2:05-cv-819, 2007 WL 895073
(S.D. Ohio Mar. 22, 2007) ......................................................................................................9

*Seamans v. Aid Auto Stores, Inc.*,
No. 98-cv-7395(DRH), 2000 WL 33769023
(E.D.N.Y. Feb. 15, 2000).......................................................................................................11

*Steamfitters Local 449 Pension Fund v. Cent. European Distribution Corp.*,
No. Civ.A. 11-6247, 2012 WL 3638629
(D.N.J. Aug. 22, 2012)...........................................................................................................10

*Takata v. Riot Blockchain, Inc.*,
No. 18-2293 (FLW) (TJB), 2018 WL 5801379
(D.N.J. Nov. 6, 2018)..............................................................................................................8

*Tice v. Novastar Fin., Inc.*,
No. 04-0330-cv-2-OLD, 2004 WL 1895180
(W.D. Mo. Aug. 23, 2004)......................................................................................................11

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
549 F.3d 100 (2d Cir. 2008)................................................................................................9, 10

*Wallace v. IntraLinks*,
302 F.R.D. 310 (S.D.N.Y. 2014) .............................................................................................6

**Page**

*Weisz v. Calpine Corp.*,
 No. 4:02-cv-1200, 2002 WL 32818827
 (N.D. Cal. Aug. 19, 2002)................................................................................................10

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
 §77k.......................................................................................................................................5
 §78c(a)(38)..........................................................................................................................11
 §78j .......................................................................................................................................2
 §78j(b).............................................................................................................................4, 5, 7
 §78n.......................................................................................................................... *passim*
 §78t(a) ................................................................................................................................1, 3
 §78u–4(a)(3)(b)(iii)(I)............................................................................................................8
 §78u-4(a)(3)(B)(i) ................................................................................................................3
 §78u-4(a)(3)(B)(iii)(I)........................................................................................................1, 3
 §78u-4(a)(3)(B)(iii)(I)(cc)...................................................................................................5
 §78u-4(a)(3)(B)(iii)(II) ......................................................................................................2, 6

PSLRA ...................................................................................................................... *passim*

Federal Rules of Civil Procedure
 Rule 23 ..................................................................................................................... *passim*

**LEGISLATIVE HISTORY**
 H.R. Conf. Rep. No. 104–369, at 34 (1995), reprinted in 1995 U.S.C.C.A.N.
 730, 733.................................................................................................................................5

iv

## I.   INTRODUCTION

Three movants seek appointment as lead plaintiff pursuant to the PSLRA in the above-captioned Related Actions[1]: (1) the Pension Fund; (2) FNY Partners Fund LP, FNY Managed Accounts, LLC (together, with FNY Partners Fund LP, the "First New York Entities") and Paul J. Burbach, Jr. ("Burbach") (collectively, the self-proclaimed "First New York Group"); and (3) Camelot Event Driven Fund, A Series of Frank Funds Trust ("Camelot").

The PSLRA mandates that the presumptive lead plaintiff in a securities class action is the movant with the largest financial interest that also meets the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). Of the three competing movants, the Pension Fund possesses by far the largest financial interest in the Proxy Claims (which arise under §§14(a) and 20(a) of the 1934 Act) – the only claims for which it is seeking to be appointed lead plaintiff. A plaintiff's financial interest in a §14(a) claim – which focuses solely on the truth or falsity of statements made in the proxy materials for a merger – is measured by the number of shares held on the record date to vote on the merger. Because the Pension Fund held 105,000 shares as of the record date for the Acquisition, its financial interest in the Proxy Claims is more than double that of any other movant:

| MOVANT | SHARES HELD |
|---|---:|
| The Pension Fund | 105,000 |
| First New York Group | 40,000 |
| Camelot | 22,800 |

ECF Nos. 8-3 at Ex. A, 9 at 6, 11 at 8.

While the Pension Fund commenced the Original Class Action in the Southern District of New York asserting only the Proxy Claims, both Camelot and the First New York Group filed

---

[1]     All capitalized defined terms have the same meaning as stated in the Pension Fund's opening memorandum of law. *See* ECF No. 9.

follow-on complaints asserting both the Proxy Claims asserted in the Original Class Action *plus* fraud claims under §10 of the 1934 Act (perhaps in an attempt to manufacture a larger financial interest after seeing the complaint filed by the Pension Fund).  As the respective claims are brought on behalf of different classes and will require different pleadings, proof and other considerations, it is crucial that both sets of claims be pursued by their proper lead plaintiffs.  With respect to the Proxy Claims, the Pension Fund clearly has the largest financial interest and is thus entitled to the lead plaintiff presumption for these claims.

Additionally, as a preferred institutional investor with prior experience successfully serving as lead plaintiff in PSLRA cases across the nation, the Pension Fund readily satisfies the Rule 23 requirements.  As such, the Pension Fund is the presumptive lead plaintiff for the Proxy Claims. While the presumption is rebuttable, the PSLRA expressly provides the presumption may be rebutted "only upon proof" that the presumptively most adequate plaintiff (i) "will not fairly and adequately protect the interests of the class" or (ii) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. §78u-4(a)(3)(B)(iii)(II).  Such proof is not present here.

Because the First New York Group and Camelot cannot prove that the Pension Fund is either inadequate or subject to unique defenses, they cannot rebut the presumption, and their motions cannot be considered by the Court with respect to the Proxy Claims.  Consequently, and because the Pension Fund is the presumptive lead plaintiff, the First New York Group and Camelot's motions should be denied.[2]

---

[2]     Even if the Court were to consider the First New York Group's motion as to the Proxy Claims despite its significantly smaller financial interest, it is otherwise subject to unique defenses that render it incapable of adequately representing the class, as discussed below. *See infra* §II.B.

## II. ARGUMENT

The Court must appoint as lead plaintiff the class member or members most capable of adequately representing the interests of class members. *See* 15 U.S.C. §78u-4(a)(3)(B)(i). A plaintiff is presumed to be the most adequate if he: (1) either filed the complaint or made a timely motion to be appointed lead plaintiff; (2) has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Fed.R.Civ.P. 23. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)).

### A. The Pension Fund Is Entitled to the "Most Adequate Plaintiff" Presumption for the Proxy Claims

#### 1. The Pension Fund Has the Largest Financial Interest in the Proxy Claims

The movants' respective financial interests in the Proxy Claims are measured by the number of shares held on the record date for the shareholder vote, as the number of shares held provides an approximation of a plaintiff's stake in the overall damage caused by the false statements that procured the shareholder vote. *See Carr v. Analogic Corp.*, No. 18-cv-11301-ADB, 2018 WL 4932858, at *2 (D. Mass. Oct. 10, 2018) (when claims arise under §§14(a) and 20(a), "courts have focused primarily on determining which movant held the most shares . . . Accordingly, Mr. Buttny owned the most shares of Analogic on the record date to vote on the Merger and therefore has the largest financial interest").[3]

Here, as evidenced by its PSLRA certification, the Pension Fund held 105,000 shares of Silver Run II Class A common stock as of January 22, 2018, the record date to vote on the

---

[3]  *See also In re Outerwall Inc., Stockholder Litig.*, No. C16-1275JLR, 2017 WL 881382, at *4 (W.D. Wash. Mar. 6, 2017) (concluding that movant who held the most shares of common stock at the time of the tender offer had the largest financial interest for §14 claims); Declaration of Jason A. Richardson in Support of Plumbers and Pipefitters National Pension Fund's Memorandum of Law in Opposition to Competing Lead Plaintiff Motions ("Richardson Opp. Decl."), Exs. A-C (orders appointing lead plaintiffs in §14 cases and assessing financial interest based on shares held).

Acquisition.  *See* ECF No. 9-3.  Members of the movant group with the next largest amount held just a fraction of that amount – 31,000 shares by FNY Partners Fund LP and 9,000 shares by Burbach. The First New York Group's other member, FNY Managed Accounts, LLC, does not purport to have held any shares.  Meanwhile, although Camelot failed to assert any §14(a) financial interest at all, from its certification it appears that Camelot held only 22,800 shares as of the record date.  Thus, the Pension Fund unequivocally has the largest financial interest in this action.

The First New York Group tries to fault the Pension Fund because it "only disclosed its holdings as of the January 22, 2018 Record Date, which is insufficient to determine that plaintiff's financial interest during the entire Class Period."  ECF No. 11 at 9, n. 7.  But there is no "class period" associated with the Proxy Claims.  The putative class defined in the Original Class Action and for the Proxy Claims here include only holders of record of Silver Run II Class A common stock as of January 22, 2018, the record date to vote on the Acquisition.  While the Pension Fund is seeking to represent this same class nationally, and thus has also moved to be appointed lead plaintiff for the Proxy Claims in the Original Class Action, the claims added in the Texas Actions are brought for a different class – *i.e*., a class of ***purchasers*** asserting claims under §10(b).

The §10(b) ***fraud*** claims, on the other hand, are brought for another class and will require substantially different pleadings and proof from the ***non-fraud*** proxy claims under §14(a) at issue here.  For example, while the Proxy Claims focus solely on the false and misleading statements in the proxy materials for Silver Run II's merger with Alta Mesa and Kingfisher, the §10(b) class period alleged in the follow-on Related Actions runs for a nearly ***two-year period*** beginning in March 2017, five months before the Acquisition was even announced and eleven months before the shareholder record date.  In addition, the elements of liability, the measure of damages, the available defenses, the appropriate defendants, the requisite level of pleading specificity, and so on – all will

require separate considerations. Thus, it is imperative that each claim be pursued by its proper lead plaintiff. *See In re Peregrine Sys., Inc. Sec. Litig.*, No. 02 cv 870-J(RBB), 2002 WL 32769239, at *11-*12 (S.D. Cal. Oct. 11, 2002) (appointing "co-lead plaintiffs, one to lead litigation with respect to the section 11 plaintiffs and another to lead litigation with respect to the section 10(b) plaintiffs"); *see also generally*, *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428 (S.D. Tex. 2010) (appointing two lead plaintiffs for different claims).[4]

### 2. The Pension Fund Is Typical and Adequate to Represent the Class

Because the Pension Fund possesses the greatest financial interest in the Proxy Claims, the next question is whether it "otherwise satisfies the requirements of Rule 23." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). At this stage, the Rule 23 determination is limited to typicality and adequacy. *Lintz v. Agria Corp.*, No. 08 Civ. 3536 (WHP), 2008 WL 5191087, at *2 (S.D.N.Y. Dec. 3, 2008). There is no question that the Pension Fund is adequate and typical of the putative class here. *See* ECF No. 9 at 6-7. As an institutional investor with a significant financial incentive to diligently monitor and direct the litigation, the Pension Fund is the paradigmatic candidate Congress contemplated when it enacted the PSLRA. *See BP*, 758 F. Supp. 2d at 439 ("the PSLRA expresses a strong preference for institutional investors to serve as lead plaintiffs"); *see* H.R. Conf. Rep. No. 104–369, at 34 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 733 ("The Conference Committee seeks to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring courts to presume that the member of the purported class with the largest financial stake in the relief sought is the 'most adequate plaintiff.'"). Indeed, the Pension Fund has already demonstrated its

---

[4] *See also*, *e.g*., Richardson Opp. Decl. Ex. D, February 22, 2019 Scheduling Conference and Motion Hearing Before the Hon. Alfred H. Bennett in *Miriam Edwards, et al., v. McDermott International, Inc., et al*., No. 4:18-cv-4330 (S.D. Tex.) at 11-12 (indicating intention to appoint separate lead plaintiffs for §§10(b) and 14(a) claims).

commitment to protect the class's interests by developing and filing the initial complaint in the Original Class Action.  Moreover, the Pension Fund has not only successfully served as a PSLRA lead plaintiff and recovered billions of dollars for investors while doing so, but it has also undergone the more rigorous Rule 23 analysis and been certified as a class representative in several cases.  *See, e.g., Luna v. Marvell Tech. Grp., Ltd.*, No. C 15-05447 WHA, 2017 WL 4865559, at \*9 (N.D. Cal. Oct. 27, 2017); *Wallace v. IntraLinks*, 302 F.R.D. 310, 319 (S.D.N.Y. 2014); *Plumbers & Pipefitters, Nat. Pension Fund v. Burns*, 967 F. Supp. 2d 1143, 1147, 1147-48 (N.D. Ohio 2013); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 252 n.1, 261 (D.N.H. 2007).

To rebut the presumption in favor of the Pension Fund's appointment as lead plaintiff for the Proxy Claims, the PSLRA requires the other movants to submit "proof" that the Pension Fund "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses."  15 U.S.C. §78u-4(a)(3)(B)(iii)(II).   None exists.   Because competing movants cannot rebut the presumption that the Pension Fund is the most adequate plaintiff for the Proxy Claims, the First New York Group and Camelot's motions should be denied to the extent they seek appointment on behalf of the class of holders of Silver Run II Class A common stock as of the record date of the Acquisition.

### B.      The First New York Group Is Subject to Unique Defenses

Even if this Court were to consider the First New York Group's motion to the extent it seeks to be appointed as lead plaintiff for the Proxy Claims despite its significantly smaller financial interest, the group itself is subject to several unique defenses that would render it inadequate, atypical and otherwise unfit to represent the class's interests.   Indeed, there are at least four impediments to the First New York Group's service as lead plaintiff in this case separate and apart from the fact that it is not the movant with the largest financial interest in the relief sought by the class: (1) it seeks appointment solely on behalf of a class of *purchasers* of Silver Run II securities

- 6 -

during the class period for the §10(b) fraud claim and ***not holders*** of Silver Run II Class A common stock for the Proxy Claims; (2) it is an improper lawyer-driven amalgamation with no pre-existing relationship among the First New York Entities and Burbach; (3) the First New York Entities appear to be investment managers which have failed to demonstrate that they possess standing to sue on behalf of their underlying clients who suffered losses here; and (4) the First New York Entities are atypical because of their extensive trading activity in Silver Run II securities.  Indeed, at least one court has already found that the First New York Entities "***would be susceptible to unique defenses, and thus [] not an adequate Lead Plaintiff***" due to their complex corporate structure and status as a private investing firm, among other issues.  *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 310-11 (S.D. Ohio 2005).

*First*, the First New York Group seeks appointment as lead plaintiff specifically "on behalf of a class consisting of all purchasers of [Silver Run II] securities during the period March 24, 2017 through February 25, 2019." *See* ECF No. 11 at 1.  ***The First New York Group has not moved to be appointed as lead plaintiff on behalf of holders of record of Silver Run II Class A common stock as of the record date to vote on the Acquisition***.  Thus, the First New York Group has missed the opportunity to seek appointment as lead plaintiff for the §14(a) claim.  *See In re Telxon Corp. Sec. Litig.*, 67 F.Supp. 2d 803, 818 (N.D. Ohio 1999) ("The plain language of the statute precludes consideration of a financial loss asserted for the first time in a complaint, or any other pleading, for that matter, filed after the sixty (60) day window has closed.").  Thus, at best, by its own motion it can seek appointment only as lead plaintiff for the §10(b) claims asserted in the Related Actions and not for the Proxy Claims.

*Second*, the First New York Group is a disparate group of movants that apparently were brought together by counsel for the purpose of satisfying the PSLRA's largest financial interest

requirement.  While the PSLRA allows a "group of persons" to be appointed as lead plaintiff in certain circumstances, 15 U.S.C. §78u–4(a)(3)(b)(iii)(I), courts look skeptically at whether the grouping operates to circumvent the purposes of the PSLRA.  *See*, *e.g.*, *In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 413 (S.D. Tex. 2000) (adopting "the strictest approach" for lead plaintiff groupings, "requiring at maximum a small group . . . *and* a pre-litigation relationship based on *more than* their losing investment" in order to avoid "manipulation and manufacturing" of groups of "unrelated investors by attorneys") (emphasis added).  Importantly, a movant's "failure" to "include any facts in their moving brief detailing the relationship between the plaintiffs that comprise the group" "could, by itself, be a basis for denying lead plaintiff status."  *Takata v. Riot Blockchain, Inc.*, No. 18-2293 (FLW) (TJB), 2018 WL 5801379, at *5 (D.N.J. Nov. 6, 2018); *Camp v. Qualcomm Inc.*, No. 18-cv-1208-AJB-BLM, 2019 WL 277360, at *3 (S.D. Cal. Jan. 22, 2019) ("Singh failed to include any basic details about himself, including where he lives or who he is specifically in his motion."); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001) ("If the court determines that the way in which a group seeking to become lead plaintiff was formed or the manner in which it is constituted would preclude it from fulfilling the tasks assigned to a lead plaintiff, the court should disqualify that movant on the grounds that it will not fairly and adequately represent the interests of the class.").

The First New York Group failed to make any showing in its motion as to why its group members sought to be appointed together or why they should be considered together.  Indeed, while the First New York Group purports to have "established its ongoing commitment to zealously and efficiently represent the interests of the Class as members of a cohesive Lead Plaintiff group," it submits no evidence suggesting this is in fact true.  ECF No. 11 at 12.  It did not submit a joint declaration detailing the group's cohesiveness.  It failed to submit any evidence, or even argue, that

Burbach and the First New York Entities had any preexisting relationship.  Rather, it merely contends in its memorandum that the group "determined to jointly seek appointment as Lead Plaintiff" and held a "telephonic meeting . . . concerning . . . the manner in which the group members plan on working together and making joint decisions."  *Id*.  Such conclusory statements are not ***evidence*** of a group's cohesiveness.  *See*, *e.g.*, *Ross v. Abercrombie & Fitch Co*., No. 2:05-cv-819, 2007 WL 895073, *4 (S.D. Ohio Mar. 22, 2007) (denying motion for reconsideration of decision declining to appoint lead plaintiff movant group, pointing to "lack of evidence" where "[t]here was no 'joint affidavit or declaration from the group members concerning their cohesiveness, any mechanism for making decisions, or any explanation of why *the four individuals*, only two of whom had any prior relationship, had been selected and would intend to proceed as a lead plaintiff.'") (emphasis in original).  On the record, the "evidence" suggests that "proposed class counsel chose the entities comprising the proposed lead plaintiff group," thus creating a "likelihood that the attorneys, not the clients, will control the action."  *Galmi v. Teva Pharms. Indus. Ltd*., 302 F. Supp. 3d 485, 494 (D. Conn. 2017).  The First New York Group is thus an improper group under the PSLRA.

*Third*, the First New York Entities appear to be, or their Certifications were signed by, investment managers which have failed to demonstrate they have standing to sue on behalf of their clients. *See W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 108, 111 (2d Cir. 2008) (investment advisor did not meet Article III's injury-in-fact standing requirement where the clients did not transfer ownership of their stock to the plaintiff).  The First New York Entities appear to be brokerage and investment entities that invest on behalf of their clients.  The certifications submitted by the entities are signed by the General Counsel and Chief Compliance Officer of FNY Investment Advisors, LLC, as investment advisor to the First New York Entities.

*See* ECF Nos. 11-3, 11-4.  As a result, these entities will be subject to a challenge that they face a fundamental (and disabling) standing problem because the real party in interest with an injury in fact – their clients – did not execute the certifications and did not seek appointment as lead plaintiff.  *See Huff*, 549 F.3d at 108, 111 (holding that plaintiff did not meet Article III's injury-in-fact requirement where the plaintiff, an investment advisor, had authority to make investment decisions and to litigate on its investor clients' behalf but the clients had never transferred ownership of stock to the plaintiff).

To have Article III standing, a plaintiff must adequately establish, among other things, "'an injury in fact (*i.e.*, a concrete and particularized invasion of a legally protected interest).'" *Steamfitters Local 449 Pension Fund v. Cent. European Distribution Corp.*, No. Civ.A. 11-6247 (JBS/KMW), 2012 WL 3638629, at *9 (D.N.J. Aug. 22, 2012).  Indeed, courts recognize that "the minimum requirement for an injury-in-fact is that the plaintiff have legal title to, or a proprietary interest in, the claim." *Huff*, 549 F.3d at 108.  Importantly, merely possessing investment authority, or even attorney-in-fact status, will not suffice for standing to pursue a claim.  *Id*.

Because standing is a threshold issue, courts regularly consider whether a movant possesses standing to sue at the lead plaintiff stage of the proceedings.  *See In re Herley Indus. Inc. Sec. Litig.*, No. Civ.A. 06-2596, 2009 WL 3169888, at *5 (E.D. Pa. Sept. 30, 2009) (finding *Huff* persuasive and applying its reasoning at the lead plaintiff stage).  To that end, courts have rejected investment advisors like the First New York Entities that have failed to provide any proof of their standing to serve as a lead plaintiff.  *See Weisz v. Calpine Corp.*, No. 4:02-cv-1200, 2002 WL 32818827, at *5-*6 (N.D. Cal. Aug. 19, 2002) (investment advisor "which merely makes investments on its individual clients' behalf" could not be appointed lead plaintiff because it had not demonstrated that it had "complete discretion and control over its clients' accounts and that it has the authority to

- 10 -

litigate this action."); *Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 609 F. Supp. 2d 938, 942 (N.D. Cal. 2009) ("Under *Huff*, which this Court finds persuasive, [the plaintiff] cannot bring claims on behalf of its clients simply by virtue of its status as an investment advisor."), *rev'd on other grounds*, 615 F.3d 1106 (9th Cir. 2010). Here, because the First New York Entities are not the real parties in interest with standing to serve as lead plaintiff, the First New York Group is subject to a unique defense which renders it incapable of adequately representing the class.

*Fourth*, the atypical trading and complex corporate structure of the First New York Entities subjects them to disqualifying defenses. By virtue of their significant trading volume during the Class Period, the First New York Entities appear to have operated much like a market maker, subjecting them to a unique defense that renders them atypical of the class. Market makers buy and sell stock regularly in hopes of earning a small profit on each trade by capturing the difference between the bid and ask prices. *See* 15 U.S.C. §78c(a)(38). Because they do not trade on the basis of information – whether true or false – disseminated into the marketplace, market makers are subject to a reliance defense. *See Tice v. Novastar Fin., Inc.*, No. 04-0330-cv-2-OLD, 2004 WL 1895180, at *5 (W.D. Mo. Aug. 23, 2004) (holding a market maker atypical because it was potentially subject to unique defenses regarding its reliance); *Seamans v. Aid Auto Stores, Inc.*, No. 98-cv-7395(DRH), 2000 WL 33769023, at *4 (E.D.N.Y. Feb. 15, 2000) (holding that a market maker could not be lead plaintiff because reliance and materiality are unique defenses for a market maker).

Here, the First New York Entities' trading activity suggests they are subject to this precise defense. The First New York Entities' certifications show that they made well over 1,200 trades in Silver Run II stock between March 2017 and February 2019. *See* ECF Nos 11-3, 11-4. This type of high-volume trading is antithetical to the trading activity of a plaintiff relying on misinformation in

the marketplace. Moreover, the First New York Entities' complex corporate structure, size and status as a private investing firm, rather than a pension fund, confirms that the putative class "may not be best served by these additional complications." *In re Cardinal Health*, 226 F.R.D. at 310-11 (denying lead plaintiff motion because "First New York would be susceptible to unique defenses, and thus is not an adequate Lead Plaintiff"). Indeed, as noted above, the individual who signed the First New York Entities' PSLRA certifications signed as a representative of FNY Investment Advisors, LLC, which is the investment advisor to the First New York Entities. FNY Investment Advisors, LLC and the entities it controls are not "investors" in any true sense of the word; rather, they are an amalgamation of 125 traders that cannot, individually or collectively, satisfy the adequacy and typicality requirements of Rule 23.[5] For these reasons, the First New York Group is an inappropriate lead plaintiff in this action.

## III. CONCLUSION

The Pension Fund meets each of the PSLRA's requirements for appointment as lead plaintiff. As such, the Pension Fund respectfully requests that the Court appoint it as Lead Plaintiff and approve its selection of Lead Counsel.

DATED: April 22, 2019

McDOWELL HETHERINGTON LLP
JASON A. RICHARDSON
Texas Bar No. 24056206
Southern District No. 827917

*/s/ Jason A. Richardson*
JASON A. RICHARDSON

---

[5] *See* Richardson Opp. Decl. Ex. E, March 28, 2019 FNY Investment Advisers, LLC Uniform Application for Investment Adviser Registration and Report by Exempt Reporting Advisers (identifying the corporate structure, number of employees and separately, "advisory" employees, of FNY Investment Advisors, LLC as of March 28, 2019).

1001 Fannin Street, Suite 2700
Houston, TX  77002
Telephone:  (713) 337-8872
Facsimile:   (713) 337-8862
E-Mail:  Jason.Richardson@mhllp.com

*Liaison Counsel*

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN*
ROBERT M. ROTHMAN*
DAVID A. ROSENFELD*
VINCENT M. SERRA*
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  (631) 367-7100
Facsimile:   (631) 367-1173
E-Mail:  srudman@rgrdlaw.com
E-Mail:  rrothman@rgrdlaw.com
E-Mail:  drosenfeld@rgrdlaw.com
E-Mail:  vserra@rgrdlaw.com

*[Proposed] Lead Counsel for*
*[Proposed] Lead Plaintiff*

O'DONOGHUE & O'DONOGHUE LLP
LOUIS P. MALONE*
5301 Wisconsin Avenue, N.W., Suite 800
Washington, DC  20015
Telephone:  202/362-0041
202/362-2640 (fax)

*Additional Counsel for [Proposed] Lead Plaintiff*

*\*Application for admission pro hac vice
forthcoming*

- 13 -

<u>CERTIFICATE OF SERVICE</u>

I, Jason A. Richardson, hereby certify that on April 22, 2019, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.


                                       */s/ Jason A. Richardson*
                                       JASON A. RICHARDSON

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CAMELOT EVENT DRIVEN FUND, A SERIES OF FRANK FUNDS TRUST, Individually and on Behalf of All Others Similarly Situated, | § § § § | Civil Action No. 4:19-cv-00957 |
| | § | CLASS ACTION |
| Plaintiff, | § § | |
| vs. | § § § | |
| ALTA MESA RESOURCES, INC. f/k/a SILVER RUN ACQUISITION CORPORATION II, et al., | § § § § § § | |
| Defendants. | § § § | |
| FNY PARTNERS FUND LP and FNY MANAGED ACCOUNTS, LLC, Individually and on Behalf of All Others Similarly Situated, | § § § § | Civil Action No. 4:19-cv-01027 |
| | § | CLASS ACTION |
| Plaintiffs, | § § § | |
| vs. | § § | |
| ALTA MESA RESOURCES, INC. f/k/a SILVER RUN ACQUISITION CORPORATION II, et al., | § § § § § | |
| Defendants. | § § § | |

**PLUMBERS AND PIPEFITTERS NATIONAL PENSION FUND'S REPLY IN
FURTHER SUPPORT OF ITS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF**

Earlier today, the Honorable Louis L. Stanton, the judge in the Original Class Action, appointed the Pension Fund as lead plaintiff for the Proxy Claims (which arise under Sections 14(a) and 20(a) of the 1934 Act)[1] and approved its selection of counsel as lead counsel. *See* Ex. A, attached hereto.  In doing so, Judge Stanton rejected all of the First New York Group and Camelot's arguments seeking to rebut the presumption that the Pension Fund is the presumptive lead plaintiff.  *Id.*  Judge Stanton also did so knowing that these Related Actions were pending, that the Pension Fund was seeking the same relief here and that the Original Class Action may be transferred here.

Thus, the Pension Fund – which has already been appointed as lead plaintiff for the Proxy Claims in one of the three filed cases – should respectfully be appointed lead plaintiff for the Proxy Claims in all three cases.  Indeed, it is quite apparent that the First New York Group and Camelot only commenced the Related Actions to add fraud claims under Section 10(b) once they realized they lacked the largest financial interest based on the number of shares held on the record date for the shareholder vote (which is the undisputed metric used for calculating financial interest in the Proxy Claims – the only claims asserted in the Pension Fund's complaint).  By doing so, they afforded themselves a chance to claim a larger financial interest using the financial interest metric for calculating claims under Section 10(b), the claims they added to their complaints.  Their manipulative actions should not be allowed to undermine the good faith actions of the Pension Fund.

Moreover, while the First New York Group acknowledges that shares held as of the record date is the appropriate metric to measure financial interest for the Proxy Claims at issue here (and not class period losses), *see, e.g.*, ECF No. 11 at 8, ***it never sought to represent the***

---

[1]  The Proxy Claims were first brought by the Pension Fund in the Original Class Action (with no other claims asserted).

***Proxy Claims class in the first instance***. *See id.* at 1 (seeking appointment as lead plaintiff "on behalf of a class consisting of all purchasers of [Silver Run II] securities during the period March 24, 2017 through February 25, 2019."). The Court should not entertain the First New York Group's untimely backdoor attempt to seek to represent class members with Proxy Claims here when it: (i) failed to file a proper motion by the PSLRA deadline; (ii) has not asserted the largest financial interest; and (iii) has not rebutted the Pension Fund's presumption as the most adequate plaintiff.

As the lead plaintiff appointed by Judge Stanton in the Original Class Action, the Pension Fund intends to pursue the same Proxy Claims asserted in the Related Actions – the claims that it developed and brought in the Original Class Action. It does not seek appointment for the Section 10(b) ***fraud*** claims that were added in the Related Actions. As discussed above and in its opposition memorandum, the Pension Fund submitted a certification listing all transactions reflecting the number of shares it held on the record date for the shareholder vote, which is the undisputed metric for assessing financial interest for Section 14(a) claims. The Pension Fund thus satisfied its obligation under the PSLRA. It would be illogical for the Pension Fund to identify class period purchases when there is no "class period" associated with the Proxy Claims and it is only seeking to represent holders of record of Silver Run II Class A common stock as of the record date to vote on the Acquisition. Thus, the Pension Fund's certification is complete for those transactions that are relevant to the relief it is seeking.[2] Moreover, it is "unsettled" whether a candidate for lead plaintiff is "even required to submit such a certificate" in the first instance

---

[2] The additional "concerns" raised by Camelot regarding arguments that Defendants ***may*** raise at class certification about the Pension Fund's certification ring hollow; as the Pension Fund is not seeking to represent investors who purchased shares during the Class Period and who allege fraud claims, those transactions do not belong on its certification. Thus, the Pension Fund's certification is accurate for the claims it is pursuing and Defendants would have no valid arguments to challenge the Pension Fund's certification.

given that the text of the PSLRA limits the certification requirement to those filing complaints. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co*., 229 F.R.D. 395, 407, n.18 (S.D.N.Y. 2004) (citing cases); *see also* 15 U.S.C. §78u–4(a)(2)(A) ("sworn certification" must be "filed with the complaint"). In a last-ditch effort to undermine the Pension Fund's adequacy to serve as a lead plaintiff, the First New York Group argues that the Pension Fund failed to disclose three cases in which "affiliated entities have sought to serve as a representative party." ECF No. 14 at 16.[3] But the Court in the Original Class Action has already rejected these arguments, as there is no requirement in the PSLRA or the caselaw for a certification to include information about entities other than the actual movant. *See* Ex. A at 5-6.[4] The Court here should likewise refrain from entertaining such baseless attacks.

Further, as recommended by Judge Stanton, the Pension Fund intends to confer with Defendants regarding the desirability and merits of transfer and consolidation of the Related Actions and the Original Class Action. *See id.* at 6. This will allow the Pension Fund to pursue the Proxy Claims for which it has been appointed lead plaintiff most efficiently.[5]

---

[3]  Curiously, the First New York Group does not argue that the Pension Fund was required to disclose the alleged affiliates' financial interest in the litigation, which would also be required if the Pension Fund was required to disclose the cases in which the entities sought to serve as representative parties.

[4]  *See also Labul v. XPO Logistics, Inc*., No. 3:18-cv-2062 (VLB), 2019 WL 1450271, at *8 (D. Conn. Apr. 2, 2019) (rejecting similar arguments and noting that "**each Pension Fund is a singular entity, a multiemployer pension plan, with no parent and no subsidiaries, and no affiliation with the Teamsters** . . . [and] their boards of trustees[] operate as fiduciaries . . . [who] **are obligated to act in the interest of the fund participants and beneficiaries** . . . and would violate that obligation . . . if they acted in the interest of . . . the Teamsters).

[5]  The First New York Group's citation to *In re Bank of America Corporation Securities, Derivative & ERISA Litigation*, 258 F.R.D. 260 (S.D.N.Y. 2009), for the notion that the Court should appoint a movant as lead plaintiff that has the largest loss for the Section 10(b) claim despite a competing movant holding more shares on the record date is distinguishable. In *Bank of America*, the competing movant held only slightly more shares on a percentage basis than the appointed movant. Here, with over 105,000 shares held on the record date, the Pension Fund held over ***two-and-a-half times*** as many shares than that of the First New York Group.

Finally, despite raising several issues as to the First New York Group's adequacy and typicality in the Pension Fund's opposition memorandum filed two weeks ago in the Original Class Action, the First New York Group's filing last week in the Related Actions has not made any showing to alleviate these concerns. In fact, its responsive memorandum further validated many of them. For example, the First New York Group's silence as to any relationship between the First New York Entities and Burbach only solidifies the absence of any pre-existing relationship between the group members, which can be fatal to a lead plaintiff group's adequacy. Likewise, the group's complex corporate structure has only been further complicated with the group's identification of *yet a fourth affiliated entity* – First New York Securities LLC – that the First New York Group points to in an effort to bolster the First New York Entities' lead plaintiff experience. *See* ECF No. 14 at 14. And, as previously held in *In re Cardinal Health*, 226 F.R.D. 298, 310-11 (S.D. Ohio 2005), the First New York Group's complex corporate structure and private investment firm status make it "susceptible to unique defenses."[6]

Accordingly, the competing motions should be denied and Pension Fund's motion should be granted.

Moreover, the cases the First New York Group cites to argue against the appointment of a separate lead plaintiff for the Proxy Claims are inapposite, especially since the Pension Fund has already been appointed to pursue those claims. For example, *In re Bank of America Corporation Securities, Derivative & ERISA Litigation*, No. 10 Civ. 275 (PKC), 2011 WL 4538428, at *2 (S.D.N.Y. Sept. 29, 2011), is unrevealing as it dealt with Judge Castel's refusal to allow a plaintiff to pursue certain follow-on claims as a class action after those claims were dismissed in a consolidated action. Similarly, in *Hevesi v. Citigroup Inc*., 366 F.3d 70, 82 (2d Cir. 2004), the Court faced completely unrelated circumstances – namely, a group of underwriters' petition for interlocutory appeal asking the Court to "adopt a *per se* rule that a class may not be certified where a lead plaintiff does not have standing to bring every available claim and none of the named plaintiffs who have standing to bring the additional claims has been vetted under the PSLRA."

[6] The Pension Fund notes that the First New York Group may be subject to further unique defenses given it has apparently been sanctioned over 10 times for over 20 instances of financial fraud, including, *e.g*., a nearly $1 million sanction by FINRA in 2015 for fraudulent short selling activity in advance of fourteen public securities offerings. *See* ECF No. 12 at 8-10.

DATED: April 29, 2019

McDOWELL HETHERINGTON LLP
JASON A. RICHARDSON
Texas Bar No. 24056206
Southern District No. 827917

                    */s/ Jason A. Richardson*
          JASON A. RICHARDSON

1001 Fannin Street, Suite 2700
Houston, TX 77002
Telephone: 713/337-8872
713/337-8862 (fax)
E-Mail: Jason.Richardson@mhllp.com

*Liaison Counsel*

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN*
ROBERT M. ROTHMAN*
DAVID A. ROSENFELD (admitted *pro hac vice*)
VINCENT M. SERRA (admitted *pro hac vice*)
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
E-Mail: srudman@rgrdlaw.com
E-Mail: rrothman@rgrdlaw.com
E-Mail: drosenfeld@rgrdlaw.com
E-Mail: vserra@rgrdlaw.com

*[Proposed] Lead Counsel for*
*[Proposed] Lead Plaintiff*

O'DONOGHUE & O'DONOGHUE LLP
LOUIS P. MALONE*
5301 Wisconsin Avenue, N.W., Suite 800
Washington, DC 20015
Telephone: 202/362-0041
202/362-2640 (fax)

*Additional Counsel for [Proposed] Lead Plaintiff*

*\*Application for admission pro hac vice*
*forthcoming*

- 5 -

CERTIFICATE OF SERVICE

I, Jason A. Richardson, hereby certify that on April 29, 2019, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

*/s/ Jason A. Richardson*
JASON A. RICHARDSON