**BRAGAR EAGEL & SQUIRE, P.C.**
Marion C. Passmore (SBN #228474)
passmore@bespc.com
580 California Street, Suite 1200
San Francisco, CA 94104
(415) 568-2124 (phone)
(212) 214-0506 (fax)

*Local Counsel for Todd Frega and*
*Proposed Liaison Counsel for the*
*Proposed Class*

[Additional Counsel on Signature Block]

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE ORIGIN MATERIALS, INC. SECURITIES LITIGATION _____ This Document Relates To: ALL ACTIONS. | Master File No. 2:23-cv-01816-WBS-JDP <u>CLASS ACTION</u> **REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF TODD FREGA FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF HIS CHOICE OF LEAD COUNSEL AND IN OPPOSITION TO ALL COMPETING MOTIONS** Judge:  William B. Shubb Date:  December 11, 2023 Time  1:30 P.M Crtrm:  5 |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT.............................................1

ARGUMENT.........................................................5

I.    FREGA IS ENTITLED TO THE PSLRA'S "STRONG" PRESUMPTION
      OF BEING LEAD PLAINTIFF....................................5

II.   THE COMPETING MOVANTS HAVE NOT PRESENTED THE NECESSARY
      "PROOF" TO REBUT FREGA'S PRESUMPTIVE STATUS...............5

      A.    FREGA IS NOT A DAY TRADER AND HIS ORIGIN TRADING
            DOES NOT RENDER HIM ATYPICAL OF OTHER CLASS
            MEMBERS............................................. 6

      B.    FREGA IS ALSO NOT ATYPICAL UNDER *DURA*............. 12

III. THE COMPETING MOTIONS MUST BE DENIED......................12

CONCLUSION......................................................15

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF TODD FREGA FOR APPOINTMENT AS LEAD
PLAINTIFF AND APPROVAL OF HIS CHOICE OF LEAD COUNSEL AND IN OPPOSITION TO ALL COMPETING MOTIONS
Case No. 2:23-cv-01816-WBS-JDP

## TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Applestein v. Medivation Inc.*,
  No. C 10-00998 MHP,
  2010 WL 3749406 (N.D. Cal. Sept. 20, 2010) .................. 11

*Chauhan v. Intercept Pharms.*,
  No. 21-cv-00036, 2021 WL 235890 (S.D.N.Y. Jan. 25, 2021) ..... 8

*Dura Pharmaceuticals Inc. v. Broudo*,
  544 U.S. 336 (2005) ...................................... passim

*Eichenholtz v. Verifone Holdings, Inc.*,
  No. C 07-06140 MHP,
  2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ................... 11

*Hurst v. Enphase Energy, Inc.*,
  No. 20-cv-04036-BLF (N.D. Cal. Aug. 17, 2020) ............... 10

*Hurst v. Enphase Energy, Inc.*,
  No. 20-cv-04036-BLF,
  2020 WL 7025085 (N.D. Cal. Nov. 30, 2020) ................... 9

*In re Alta Mesa Res., Inc. Sec. Litig.*,
  No. 4:19-cv-00957 (S.D. Tex. Jan. 24, 2022) ................. 15

*In re Snap Inc. Sec. Litig.*,
  334 F.R.D. 209 (C.D. Cal. 2019) .......................... 7, 11

*In re Zynga Sec. Litig.*,
  No. C 12-04007 JSW,
  2013 WL 257161 (N.D. Cal. Jan. 23, 2013) .................... 8

*Lopez v. Ageagle Aerial Sys., Inc.*,
  No. 2:21-CV-01810-CAS (Ex),
  2021 WL 2377343 (C.D. Cal. June 7, 2021) ................. 8, 11

*Marjanian v. Allied Nevada Gold Corp.*,
  No. 3:14-cv-0175-LRH-WGC,
  2014 WL 12769810(D. Nev. Nov. 7, 2014) ...................... 8

*Nevada v. Watkins*,
  914 F.2d 1545 (9th Cir. 1990) .............................. 15

*Reinschmidt v. Zillow, Inc.*,
  No. C12-02084-RSM,
  2013 WL 1092129 (W.D. Wash. Mar. 14, 2013) ................. 10

*Reinschmidt v. Zillow, Inc.*,
  No. C12-02084-RSM (W.D. Wash. Apr. 24, 2013) ............... 10

*Schueneman v. Arena Pharms., Inc.*,
  No. 10cv1959 BTM(BLM),
   2011 WL 3475380 (S.D. Cal. Aug. 8, 2011)................. 8, 11

*Stoopler v. Direxion Shares ETF Tr.*,
  No. 09 CIV. 8011(RJH),
  2010 WL 3199679 (S.D.N.Y. Aug. 12, 2010) .................... 8


*Statutes*

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ......................... 1, 5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ........................... 6

Rules

Fed. R. Civ. P. 23...................................... passim

Movant Todd Frega ("Frega") respectfully submits this reply memorandum of law in further support of his motion for appointment as lead plaintiff and approval of his choice of lead counsel and in opposition to all competing motions.[1]

**PRELIMINARY STATEMENT**

Frega is entitled to the PSLRA's "strong" presumption of being appointed Lead Plaintiff as he has the largest financial interest of any qualified movant before the Court and meets the *prima facie* Rule 23 requirements. Neither the FNY Group nor the Carter Group have provided any "proof" to rebut the strong presumption in Frega's favor. 15 U.S.C. 78u-4(a)(3)(B)(iii)(I)). Accordingly, Frega should be appointed as Lead Plaintiff.

The Carter Group, which has a financial interest that is 30% lower ($196,003) than Frega's ($275,912), makes two fundamentally flawed arguments in a desperate attempt to rebut the strong presumption in Frega's favor. However, neither argument comes remotely close to achieving that objective.[2]

First, the Carter Group incorrectly claims that Frega is atypical under Rule 23 because he is supposedly a day trader, but Frega was undeniably a long investor in Origin stock, not a day

---

[1] "Carter Opp." refers to the Carter Group's opposition (ECF No. 32) and "Opp." (ECF No. 34) refers to Frega's opposition. Unless noted, all definitions are from the Opp. and all emphasis is added.

[2] The FNY Group makes no arguments against Frega. *See* ECF No. 33.

trader. The Carter Group selectively cites FINRA to label Frega a day trader, conveniently omitting that FINRA, among others, recognizes that a day trader is not merely one who buys and sells the same stock on the same day, but one that typically also liquidates positions at the end of the trading day. *See* https://www.finra.org/sites/default/files/NoticeDocument/p003881.pdf ("If the customer fails to meet a day-trading margin call, no specific action to the customer account is required to be taken by the firm. There are no securities to liquidate, as there would be for an existing position, because day traders typically ***end the day flat***…"); https://www.finra.org/rules-guidance/rulebooks/finra-rules/2270 ("You should be familiar with a securities firm's [] practices [as] [u]nder certain market conditions, you may find it difficult or impossible to ***liquidate a position quickly***…").[3]  As the Carter Group's case citations show,

---

[3] *See also* https://www.investopedia.com/terms/d/daytrader.asp (a day trader's positions "***are generally closed out before the end of the day*** so that no risk is held after hours or overnight"); https://www.investorsunderground.com/what-is-day-trading/differences-from-investing/ ("Day traders focus on short-term trades ***contained in a single trading day***"); https://www.sec.gov/reportspubs/investor-publications/investorpubsdaytipshtm.html ("[d]ay traders rapidly buy and sell stocks ***throughout the day*** in the hope that their stocks will continue climbing or falling in value for the seconds to minutes they own the stock, allowing them to lock in quick profits"); The Carter Group cites https://www.finra.org/investors/investing/investment-products/stocks/day-trading#:~:text=Day%20trading%20refers%20to%20a,in%20any%20security%2C%20including%20options ("Day trading refers to a trading strategy where an individual buys and sells [] the

when courts reject lead plaintiff movants as atypical day traders, it is when they are fundamentally not long investors and invariably when they liquidate their position. *See infra* at 9-11.

Frega's trading in Origin stock clearly demonstrates that he was not a day trader. Significantly, Frega did not liquidate his position in Origin stock once during the Class Period. As shown in the five trading days that the Carter Group chose to highlight to the Court, Frega held an average of 78,000 shares – or six times as much as he traded on those days. *See* Carter Opp. at 13-14; ECF No. 20-5 at 3-5 (Frega's Loss Chart). Frega also continuously held tens of thousands of Origin shares throughout the entire Class Period. *See* ECF No. 32. It is no wonder that courts have repeatedly rejected day trader arguments against movants with trading patterns similar to Frega here. *See infra* at 7-8.[4]

Second, the Carter Group incorrectly argues that under *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 342 (2005), Frega

---

same security [] on the same day in an attempt to profit from small movements in the price of the security"). Carter Opp. at 12.

[4] The Carter Group's claim that Frega made "549 trades in Origin stock, or an average of 9 per day" is irrelevant and wrong. *See* Carter Opp. at 12. First, "trades per day" is a made-up metric that does not render an investor a day trader; repeated liquidation of a position to try and capture quick profits does. Second, instead of calculating Frega's "trades per day" using the 167-day Class Period, the Carter Group misleadingly used the 61 days between Frega's first trade and the end of the Class Period to inflate its calculation. *See id*. Frega averaged 3 – not 9 – trades per day when calculated properly. Regardless, this figure is meaningless, and Frega was not a day trader.

is supposedly "open to the unique defense that he cannot recover for his losses" because he sold 75% of his shares before the corrective disclosure. Carter Opp. at 15.[5] This argument is also wrong. While Frega sold some Origin shares before the August 9, 2023 corrective disclosure, those sales resulted in slight gains, and removing those gains would increase Frega's financial interest here to $286,467.87 under *Dura*. Thus, the Carter Group's claim that "most of [Frega's] damages are not recoverable" (Carter Opp. at 4) is inaccurate as Frega suffered all his losses after the corrective disclosure. The Carter Group has failed to present the Court with any proof to rebut the PSLRA's strong presumption in Frega's favor and Frega should be appointed Lead Plaintiff in this action.

It is well established that the Court must not conduct a beauty contest among movants once the most adequate movant is identified (here, Frega). Nevertheless, as Frega and the Carter Group have both independently explained, the FNY Group (which claims to have the largest financial interest here) cannot satisfy its Rule 23 requirements. Counsel for the FNY Group failed to disclose that FNY, one of the group's two unrelated members, is mired by a litany of censures and fines for disruptive securities

---

[5] In *Dura v. Broudo Pharm.*, the U.S. Supreme Court held that plaintiffs alleging claims under Section 10(b) can only recover for losses suffered after an alleged corrective disclosure.

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF TODD FREGA FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF HIS CHOICE OF LEAD COUNSEL AND IN OPPOSITION TO ALL COMPETING MOTIONS
Case No. 2:23-cv-01816-WBS-JDP

trading practices, including relating to Section 10(b), the fraud statute at issue here. *See* Opp. 8-12. The unrelated FNY Group is also lawyer-driven and utterly failed to demonstrate its adequacy. *See id*. 12-18. As discussed below and in the Opp., the Court should deny the FNY Group's motion.

For these reasons and those in his earlier filings, Frega's motion should be granted in its entirety, and all competing motions should be denied.

**ARGUMENT**

**I.    FREGA IS ENTITLED TO THE PSLRA'S "STRONG" PRESUMPTION OF BEING LEAD PLAINTIFF**

Under the PSLRA, a "strong" presumption in favor of being appointed Lead Plaintiff goes to the movant who suffered the largest financial interest and satisfies Fed. R. Civ. P. 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Here, as shown in Frega's opposition, that movant is Frega because he has the largest financial interest of any qualified movants and readily satisfies his *prima facie* Rule 23 requirements.[6]

**II.   NO MOVANT HAS PRESENTED THE NECESSARY "PROOF" TO REBUT FREGA'S PRESUMPTIVE STATUS**

No movant has come close to offering the required "proof" to rebut the PSLRA's strong presumption in favor of appointing Frega

---

[6] No competing movant has challenged Frega's financial interest of $275,912, which is far larger than that of the Carter Group ($196,003). The FNY Group claims a larger financial interest ($765,110), but this group falls radically short of meeting its Rule 23 requirements and therefore must be disqualified.

as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). The FNY Group makes no Rule 23 arguments against Frega whatsoever. The Carter Group, recognizing that they have a much smaller financial interest than Frega, makes two groundless arguments that fall far short of the "proof" required.

The Carter Group argues that Frega (i) should be disqualified because he is supposedly a day trader; and (ii) is supposedly subject to unique defenses because he cannot "recover any damages" for the shares he sold before August 9, 2023. Carter Opp. at 12, 14. Both arguments are wrong and fail to rebut the strong presumption in Frega's favor.

### A.    Frega Is Not A Day Trader And His Origin Trading Does Not Render Him Atypical

The Carter Group's "day trader" argument is completely bankrupt as Frega is fundamentally a long investor, not a day trader. Day traders generally buy and sell the same stock on the same day and liquidate their positions at the end of each trading session for quick profits.[7] Although Frega bought and sold some

---

[7]    *See*    https://www.finra.org/investors/investing/investment-products/stocks/day-trading#:~:text=Day%20trading%20refers%20to%20a,in%20any%20security%2C%20including%20options ("Day trading refers to a trading strategy where an individual buys and sells [] the same security in a margin account on the same day in an attempt to profit from small movements in the price of the security"); https://www.finra.org/sites/default/files/NoticeDocument/p003881.pdf ("[b]ecause day traders typically **end the day flat**…"); https://www.finra.org/rules-guidance/rulebooks/finra-rules/2270 ("You should be familiar with a securities firm's [] practices [as] [u]nder certain market conditions, you may find it

6

Origin shares on the same day, he held tens of thousands of Origin shares throughout the Class Period – never liquidating once – and suffering huge losses after the alleged fraud was revealed at the end of the Class Period. *See* ECF No. 20-5 (Frega's Loss Chart). Courts have repeatedly rejected day trader arguments against proposed lead plaintiffs and class representatives with trading pattern like Frega's.

*In re Snap Inc. Sec. Litig.*, 334 F.R.D. 209, 227 (C.D. Cal. 2019), is instructive. There, on a motion for class certification (which has a higher Rule 23 burden than a motion for lead plaintiff), the court found that "instances of frequent trading" before holding the stock "long term" did not render the lead plaintiffs inadequate. *Id*. The court also noted that the "Ninth Circuit has emphasized that generally "the defense of non-reliance is not a basis for denial of class certification" except "in extreme circumstances where the lead plaintiff's atypicality would substantially influence the course of the litigation." *Id*. Frega's trading (holding tens of thousands of Origin shares through the end of the Class Period and suffering his losses then) is anything but an "extreme" circumstance rendering him atypical. *See also*

---

difficult or impossible **to liquidate a position quickly**…"). *See also supra* 2 n. 3 (citing https://www.investopedia.com/terms/d/daytrader.asp; https://www.investorsunderground.com/what-is-day-trading/differences-from-investing; https://www.sec.gov/reportspubs/investor-publications/investorpubsdaytipshtm.html).

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF TODD FREGA FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF HIS CHOICE OF LEAD COUNSEL AND IN OPPOSITION TO ALL COMPETING MOTIONS
Case No. 2:23-cv-01816-WBS-JDP

*Chauhan v. Intercept Pharms.*, No. 21-cv-00036, 2021 WL 235890, at *6 (S.D.N.Y. Jan. 25, 2021) (appointing movant who bought and sold multiple sets of shares in a day or over a series of days "absent evidence that [he] did not rely on the integrity of the market price").

Indeed, courts require proof, not speculation,[8] that an investor did not rely on market prices. There is no such proof here whatsoever that Frega did not rely on market prices.[9]

The examples of Frega's trading that the Carter Group discusses underscore that Frega is fundamentally not a day trader. According to the Carter Group, on five trading days Frega bought

---

[8] *See* Carter Opp. at 4 (speculating that Frega "relied on short-term fluctuations in Origin's stock price" based on his trading pattern).

[9] *See*, *e.g.*, *Lopez v. Ageagle Aerial Sys., Inc.*, No. 2:21-cv-01810-CAS (Ex), 2021 WL 2377343, at *5 (C.D. Cal. June 7, 2021) (argument that a movant "is ineligible for appointment as lead plaintiff due to day trading activity unavailing [] 'absent evidence that the [movant] did not rely on the market price of the shares'")(quoting *Schueneman v. Arena Pharms., Inc.*, No. 10cv1959 BTM (BLM), 2011 WL 3475380, at *7 (S.D. Cal. Aug. 8, 2011)); *Marjanian v. Allied Nevada Gold Corp.*, No. 3:14-cv-0175-LRH-WGC, 2014 WL 12769810, at *8 (D. Nev. Nov. 7, 2014) (appointing alleged day trader because the competing movant "failed to rebut the presumption that even if [movant] is a day trader, [movant's] investments were made at least in part in reliance on [defendant's] misstatements"); *In re Zynga Inc. Sec. Litig.,* No. C 12-04007 JSW, 2013 WL 257161, at *2 (N.D. Cal. Jan. 23, 2013) (same). *Cf. Stoopler v. Direxion Shares ETF Tr.*, No. 09 CIV. 8011 RJH, 2010 WL 3199679, at *4 (S.D.N.Y. Aug. 12, 2010), as corrected (Aug. 16, 2010) (movant who day traded adequate where he also "purchased and held a large number of shares over a longer time period, and [thus] suffered the same types of losses [as other class members]").

8

and sold an average of 12,628 shares.[10] However, the Carter Group misleadingly neglects to mention that Frega also held an average of 78,735 shares on those days – ***more than six times as many as he bought and sold***:

| Date | Shares Held |
|------|-------------|
| 6/20/23: | 78,830 |
| 6/21/23: | 78,830 |
| 6/22/23: | 78,830 |
| 6/23/23: | 79,630 |
| 7/27/23: | 77,557 |

*See* ECF No. 20-5 (Frega's Loss Chart). And most importantly, Frega did not liquidate his position once during the Class Period, which is a hallmark of day trading. *See id.; supra* at 6 n. 7.

Indeed, the case law that the Carter Group relies on to supposedly support that Frega is a day trader only undermines their argument as none of the rejected movants were fundamentally long investors and, in three of their four cases, the movants completely liquidated their position. In *Hurst v. Enphase Energy, Inc.*, No. 20-cv-04036-BLF, 2020 WL 7025085, at *8 (N.D. Cal. Nov. 30, 2020), two alleged day traders were found to be atypical where one completely liquidated four times, the two together liquidated four times, and the two held only 3,000 shares or approximately 2% of their holdings through the corrective disclosure. *Id*. at *2, 3. *Cf. Hurst v. Enphase*, Case No. 20-cv-04036-BLF (N.D. Cal. Aug. 17,

---

[10] This figure is reached by averaging the 14,000, 6,000, 18,000, 11,200, and 13,941 shares Frega bought and sold on June 20, 21, 22, 23, and July 23, 2023.  *See* Carter Opp. at 13-14.

2020), Dkt. No. 18-2 at 1, 3 (attached as Exhibit A to Declaration of Marion C. Passmore filed herewith ("Passmore Reply Decl.")). In stark contrast, Frega held nearly 85,000 shares or approximately 25% of his position through the corrective disclosure. *See* ECF No. 20-5 at 6-8.

Likewise, in *Reinschmidt v. Zillow, Inc.*, No. C12-02084-RSM, 2013 WL 1092129, at \*4 (W.D. Wash. Mar. 14, 2013), the court rejected a lead plaintiff movant who had a trading pattern nothing like Frega's. The court there noted that, in addition to holding only a fraction of the shares he bought during the class period, the alleged day trader Atkinson – unlike Frega — repeatedly liquidated his position:

> [Atkinson] most often bought and liquidated shares on the same day. On eight of seventeen total active trading days, ***Atkinson bought and fully liquidated the shares purchased on that day***…. Thus, Atkinson only bought and held shares on four active days within the class period.

*Id.*, at \*4 & n.3. In contrast, Frega did not "fully liquidate[]" once – nor even come close to liquidating – and held a substantial number of shares through the end of the Class Period.[11]

The Carter Group's other case citations fare no better. *See Applestein v. Medivation Inc.*, No. C 10- 00998 MHP, 2010 WL

---

[11] The Carter Group also did not mention that the *Zillow* court subsequently approved a stipulation appointing Atkinson and other movants as lead plaintiffs. *See Reinschmidt v. Zillow*, No. 2:12-cv-02084-RSM, slip. op. at 5 (W.D. Wash. Apr. 24, 2013), Dkt. 48 (attached as Exhibit B to Passmore Reply Decl.).

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF TODD FREGA FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF HIS CHOICE OF LEAD COUNSEL AND IN OPPOSITION TO ALL COMPETING MOTIONS
Case No. 2:23-cv-01816-WBS-JDP

3749406, at *3 (N.D. Cal. Sept. 20, 2010) (movant atypical who, unlike Frega, "liquidated all of his Medivation holdings (perhaps as many as three times during the class period)"); *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 WL 3925289, at *10-11 (N.D. Cal. Aug. 22, 2008) (an "extreme example" (*Snap*, 334 F.R.D. at 227) where alleged day trader made over 5,000 trades, averaging 19 per day during the class period — a far cry from Frega's 549 trade executions and 3 per day average).

Finally, the Carter Group's claim that Frega made "549 trades in Origin stock, or an average of 9 per day" is irrelevant and mistaken. *See* Carter Opp. at 12. First, Frega's trades per day is meaningless since he was fundamentally a long Origin investor. Second, if Frega's trades per day were analyzed, the number of days in the Class Period (167) must be used as the denominator – not the Carter Group's made-up 63-day period. Applying this correct denominator, Frega only averaged 3 trades per day during the Class Period — not 9.[12]

[12] Further illustrating the irrelevance of the "trades per day" metric, courts in this circuit have repeatedly acknowledged that the total number of transactions is not indicative of day trading. *See Lopez*, 2021 WL 2377343, at *5 (large number of transactions due to movant's "broker executing a handful of block purchase and sale orders through [] smaller purchase and sale transactions"); *Schueneman*, 2011 WL 3475380, at *7 ("large number of total transactions may be due in part to Schwartz's broker executing single purchase orders through [] separate purchase transactions throughout the day"). Here too, Frega's broker executed 549 trades to fill Frega's orders, which were nearly half that number.

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF TODD FREGA FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF HIS CHOICE OF LEAD COUNSEL AND IN OPPOSITION TO ALL COMPETING MOTIONS
Case No. 2:23-cv-01816-WBS-JDP

Accordingly, the Carter Group's attempt to label Frega an atypical day trader does not bear analysis and should be rejected.

### B.    Frega Is Also Not Atypical Under *Dura*

The Carter Group also argues that Frega is atypical of other investors because "most of [his] claimed damages" were suffered before the corrective disclosure. Carter Opp. at 4. The Carter Group gets the facts fundamentally wrong: Frega suffered all his losses after the corrective disclosure. Frega's sales before the corrective disclosure resulted in a **small gain**. Removing these small pre-corrective disclosure gains under a *Dura* analysis (where investors can only recover for losses held through a corrective disclosure) **increases** Frega's financial interest to $286,467.87. It is mystifying that the Carter Group got this wrong when it noted in its brief that Frega made small gains on his pre-disclosure Class Period sales. *See* Carter Opp. at 14. Thus, the Carter Group's argument that Frega is atypical because he lost most of his money in Origin before the end of the Class Period is undeniably false. Again, the Carter Group has not come close to presenting the requisite "proof" to rebut the presumption in Frega's favor.

### III. THE COMPETING MOTIONS MUST BE DENIED

Once the PSLRA's presumption attaches and is left unrebutted, the Court must not conduct a beauty contest among the movants. Nevertheless, Frega respectfully reiterates that the motions of the other movants must be denied.

As argued in Frega's opposition memorandum, the FNY Group has not satisfied Rule 23's typicality and adequacy requirements and, thus, is not qualified to serve as Lead Plaintiff here. FNY, one of the group's two unrelated members, has been repeatedly fined and censured for alleged misconduct, including relating to Section 10(b):

- In 1999, FNY and Friedman "voluntarily resigned their associate memberships in" the American Stock Exchange, Inc. after being jointly and severally fined $25,000 for, *inter alia*, "continuing to disregard the exchange's directive to register and qualify FNY Corp's [] traders…." Opp. 11.

- On September 14, 2006, the NASD charged FNY and Friedman with violating NASD Rules by failing to provide for adequate and reasonable supervision of the firm's trading department such that FNY and Friedman were unable "to detect violations of Section 10(b) of the Securities Exchange Act of 1934, SEC Rule 10b-5." *Id*.

- In 2015, FNY LLC was sanctioned nearly one million dollars for repeatedly violating Rule 105 of Regulation M – which is promulgated under Section 10(b) – for fraudulent short selling in connection with fourteen public offerings. *Id*.

- On September 28, 2020, the CFTC fined FNY $450,000 for spoofing (bidding or offering with the intent to cancel the bid or offer before execution) involving futures contracts. The FNY trader was fined $135,000. Notably, this fine occurred while Shawn Fischman – who signed FNY's certification here – was FNY's General Counsel and Chief Compliance Officer. *Id.* at 12.

FNY's counsel was aware of this misconduct, which will inevitably raise unique defenses and burden the proposed Class, but did not disclose it to the Court. Opp. 9; *see also id.* at 12 (the FNY Group's proposed co-lead counsel Robbins Geller here was well aware of the "nearly $1 million sanction" as they noted it in

*Alta Mesa*). Courts routinely find proposed lead plaintiffs inadequate when they have been censured for allegedly dishonest acts – particularly when the conduct is undisclosed and relates to the statute under which they seek to prosecute on behalf of a class. *See id.* at 9.

The FNY Group is also inadequate under Rule 23 because it (a) is a transparently lawyer-made construct thrown together at the eleventh hour by three law firms to concoct the largest financial interest, (b) lacks a decision-making mechanism, (c) provides no explanation for how its group members found one another or why they decided to come together as a group, and (d) fails to provide a colorable explanation for why a group is necessary for the successful prosecution of this case, or why three law firms are needed to represent them. *See* Opp. 13-17.  Indeed, the FNY Group's own proposed co-lead counsel, Robbins Geller, has criticized FNY for cobbling together an unrelated and lawyer-driven group much like this one here. See *id.* at 4, 17.

The FNY Group acts as if its status as a quasi-institutional investor somehow removes its fatal Rule 23 impediments.  It does not. First, FNY is radically atypical and inadequate in light of its repeated censures and fines.  Second, FNY is not the kind of institutional investor that will lead its counsel as Congress had in mind. Rather, FNY will apparently opportunistically join any

group its counsel tells it to as it has repeatedly done – including even after it filed its initial motion alone. *See* Opp. at 13.

Finally, FNY cites its appointment as a class representative in *Alta Mesa*, but that has no bearing on FNY's fitness here as that class certification motion was unopposed. *See In re Alta Mesa Res., Inc. Sec. Litig.*, No. 4:19-cv-00957, slip op. at 1 (S.D. Tex. Jan. 24, 2022), Dkt. 241 (unopposed order certifying class in securities fraud lawsuit and appointing Lead Plaintiff FNY as Class Representative) (attached as Exhibit C to Passmore Reply Decl.).

In light of the foregoing, the FNY Group's motion should be denied. Likewise, the Carter Group's motion should be denied because it lacks a greater financial interest than Frega.

**CONCLUSION**

For the foregoing reasons and those given in his opening and opposition memoranda, Frega respectfully requests that this Court: (1) appoint him as Lead Plaintiff; and (2) approve his selection of Bernstein Liebhard as Lead Counsel and Bragar Eagel as Liaison Counsel for the proposed Class.[13]

Dated: November 17, 2023    Respectfully submitted,

**BRAGAR EAGEL & SQUIRE**, P.C.

*/s/ Marion C. Passmore*
Marion C. Passmore (SBN #228474)

---

[13] To the extent the FNY Group or the Carter Group try to salvage their motions with new arguments on reply, that should not be allowed. *See Nevada v. Watkins*, 914 F.2d 1545, 1560 (9th Cir. 1990) (parties "cannot raise a new issue for the first time in their reply briefs").

15

580 California Street, Suite 1200
San Francisco, CA 94104
(415) 568-2124 (phone)
(212) 214-0506 (fax)
passmore@bespc.com

*Local Counsel for Todd Frega and Proposed Liaison Counsel for the Proposed Class*

**BERNSTEIN LIEBHARD LLP**
Laurence J. Hasson
Joseph R. Seidman, Jr.
Jeffrey McEachern
10 East 40th Street
New York, NY  10016
(212) 779-1414 (phone)
(212) 779-3218 (fax)
lhasson@bernlieb.com
seidman@bernlieb.com
jmceachern@bernlieb.com

*Counsel for Todd Frega and Proposed Lead Counsel for the Proposed Class*

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF TODD FREGA FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF HIS CHOICE OF LEAD COUNSEL AND IN OPPOSITION TO ALL COMPETING MOTIONS
Case No. 2:23-cv-01816-WBS-JDP

**PROOF OF SERVICE**

I HEREBY CERTIFY that, on November 17, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered users. I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 17, 2023.

*/s/ Marion C. Passmore*
Marion C. Passmore