UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| In re ORIGIN MATERIALS, INC. SECURITIES LITIGATION | No. 2:23-cv-01816 WBS JDP<br><br>MEMORANDUM AND ORDER RE: MOTIONS TO APPOINT LEAD PLAINTIFF AND COUNSEL |

----oo0oo----

Unnamed plaintiffs in these consolidated putative class actions allege that defendant Origin Materials, Inc. and certain of its officers violated the Securities and Exchange Act.  Before the court are five motions to appoint a lead plaintiff and approve their selection of class counsel, filed by movants Nicholas Agapis (Docket No. 13), Carter Family Investors (Docket No. 14), FNY Partners Fund LP and Peter Di Murro ("FNY Group") (Docket No. 17), Todd Frega (Docket No. 20), and Steven Park (Docket No. 21).[1]

---

[1] Agapis and Park subsequently filed statements of non-opposition to the competing motions.  (Docket Nos. 24, 31.)  The

1

I.   Lead Plaintiff

The Private Securities Litigation Reform Act of 1995 ("PSLRA") establishes a three-step process for selecting a lead plaintiff.  "In step one, notice of the action must be posted so purported class members can move for lead plaintiff appointment." In re Mersho, 6 F.4th 891, 899 (9th Cir. 2021) (citing 15 U.S.C. § 78u-4(a)(3)(A)(i)(I)-(II)).  Upon publication of the notice, members of the putative class have 60 days to move for appointment as lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(A)(i)(II).

"In step two, the district court must determine which movant is the 'most adequate plaintiff,' which is defined as the plaintiff 'most capable of adequately representing the interests of class members.'"  Id. (quoting 15 U.S.C. § 78u-4(a)(3)(B)(i)).  "To do so, the district court must 'adopt a presumption that the most adequate plaintiff' is the movant with the largest financial interest who 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.'"  Id. (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)).  "This means the district court must identify which movant has the largest alleged losses and then determine whether that movant has made a prima facie showing of adequacy and typicality.  Once the district court has determined that the movant with the largest stake has made a prima facie showing of adequacy and typicality, that movant 'becomes the presumptively most adequate plaintiff.'"  Id. (quoting In re Cavanaugh, 306 F.3d 726, 730 (9th Cir. 2002)).  "If the movant

---

court will therefore deny their motions.  (Docket Nos. 13, 21.)

2

with the largest losses does not satisfy the Rule 23 requirements, the district court must then look to the movant with the next largest losses and repeat the inquiry.  At this step, the process is not adversarial, so the Rule 23 determination should be based on only the movant's pleadings and declarations." Id.

"At step three, the process 'turns adversarial.'" Id. (quoting Cavanaugh, 306 F.3d at 730).  "The presumption may be rebutted 'only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff . . . will not fairly and adequately protect the interests of the class; or [ ] is subject to unique defenses that render such plaintiff incapable of adequately representing the class." Id. (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb)).

A.  Step One

The required notice was published on August 25, 2023. (See Docket No. 13-2.)  The potential lead plaintiffs timely filed motions on August 24, 2023, which is sixty days from the date of publication.  (See Docket Nos. 13, 14, 17, 20, 21.)  The procedural requirements of step one have therefore been satisfied.

B.  Step Two

It is undisputed that FNY Group has the largest financial stake, with $765,110.88 in reported losses.  (See Docket No. 18-3 at 5.)  Frega reported $275,912 in losses and Carter Family Investors reported $196,003.07 in losses.  (See Docket No. 20-5 at 8; Docket No. 15-5 at 2-11.)  Agapis and Park have filed statements of non-opposition to the competing motions,

3

1    acknowledging that they lack the largest financial interest.
2    (See Docket Nos. 24, 31.)
3            Having concluded that FNY Group has the largest
4    financial stake, the court next determines whether FNY Group has
5    made a prima facie showing of typicality and adequacy.
6            Typicality requires that named plaintiffs have claims
7    "reasonably coextensive with those of absent class members," but
8    their claims do not have to be "substantially identical."  Hanlon
9    v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998)),
10   overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes, 564
11   U.S. 338 (2011).  The test for typicality "is whether other
12   members have the same or similar injury, whether the action is
13   based on conduct which is not unique to the named plaintiffs, and
14   whether other class members have been injured by the same course
15   of conduct."  Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th
16   Cir. 1992) (internal citation omitted).
17           To resolve the question of adequacy, the court must
18   consider two factors: (1) whether the named plaintiff and her
19   counsel have any conflicts of interest with other class members,
20   and (2) whether the named plaintiff and her counsel will
21   vigorously prosecute the action on behalf of the class.  In re
22   Hyundai & Kia Fuel Econ. Litig., 926 F.3d 539, 566 (9th Cir.
23   2019).
24           While the PSLRA "expressly allows a 'group of persons'
25   to move for appointment," Mersho, 6 F.4th at 899 (quoting 14
26   U.S.C. § 78u-4(a)(3)(B)(iii)(I)), a court may scrutinize a
27   plaintiff group's "cohesion" as part of the adequacy analysis at
28   step two, see id. at 901.  "Many district courts have considered

the lack of a pre-litigation relationship as part of their adequacy analysis at step two because it may indicate that members may not work together well to vigorously prosecute the litigation or they might not be able to control counsel." Id. "District courts often consider a pre-litigation relationship along with other factors such as the size of the group, how the members found their counsel, and the prosecution procedures set out in their filings." Id.

The court concludes that FNY Group has failed to establish that its members will operate cohesively in prosecuting the case. There is nothing in the record explaining how FNY Partners Fund, an investment fund based in New York, and Di Murro, an individual investor based in Ontario, Canada, became acquainted or what their relationship is. They do not even share the same counsel, instead proposing that two law firms serve as lead counsel. Their joint declaration provides bare assertions that they will "provide comprehensive, responsible, and vigorous representation of the class" and "work jointly to monitor and direct the efforts and activities of our proposed lead counsel." (Docket No. 18-4 ¶¶ 5-6). They state that they discussed their "joint leadership, decision-making, and oversight of this litigation." (Id. ¶ 7.) Yet there is no explanation of how their relationship and the relationship between the two firms will actually operate, particularly in the event of potential disagreements.

Given this dearth of information, it appears possible that vigorous prosecution of the action would be disrupted by decision-making conflicts between FNY Partners Fund and Di Murro

or between their counsel.  For those reasons, the court therefore concludes that FNY Group has not made a prima facie showing of adequacy because "it has not sufficiently justified its composition of unrelated investors with no disclosed decision-making structure."  See In re Cloudera, Inc. Sec. Litig., No. 19-cv-03221 LHK, 2019 WL 6842021, at *6 (N.D. Cal. Dec. 16, 2019) (cited with approval in Mersho, 6 F.4th at 901-02).[2]

        The court next turns to Frega, the movant with the second largest financial stake.  Frega, an individual investor, purchased Origin securities during the class period and allegedly suffered damages due to defendants' misrepresentations.  (See Docket Nos. 20-4, 20-5.)  Frega has therefore made a prima facie showing of typicality because he acted similarly and suffered a similar injury to other putative class members due to the same course of conduct by defendants.  See Hanon, 976 F.2d at 508.  Further, Frega has the same interests as other putative class members and his substantial financial interest incentivizes him to vigorously pursue the interests of the class.  Frega's selected counsel appear to be experienced in securities litigation.  (See Docket Nos. 20-6, 20-7.)  Frega's motion and supporting evidence thus indicate that there are no conflicts of interest with other class members and that he and his counsel will vigorously prosecute the action.  See Hyundai & Kia, 926 F.3d at 566.  Frega has therefore made a prima facie showing of adequacy.  Accordingly, the court concludes that Frega is the presumptive lead plaintiff.

---

[2] Because FNY Group has failed to make a prima facie showing of adequacy, the court need not consider its typicality.

  C. Step Three

  To rebut the presumption that Frega is the most adequate plaintiff, competing movant Carter Family Investors argues that Frega is atypical because he is susceptible to the day trader defense.  Investors subject to the day trader defense "are those who 'purchased stock during the period of misrepresentation but sold it before any disclosure which either partially or completely corrected the misrepresentation.'"  Hurst v. Enphase Energy, Inc., No. 20-cv-04036 BLF, 2020 WL 7025085, at *7 (N.D. Cal. Nov. 30, 2020) (quoting Wool v. Tandem Comput., Inc., 818 F.2d 1433, 1437 (9th Cir. 1987), overruled on other grounds by Holliger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990)).  "Courts have long recognized an inherent conflict between the interests of day or in-and-out traders and those of retention traders," id., because day traders "typically focus on technical price movements . . . and therefore are subject to a defense th[at] they would have purchased the stock at issue regardless of the misstatement/omission," Applestein v. Medivation Inc., No. 10-cv-00998 MHP, 2010 WL 3749406, at *3 (N.D. Cal. Sept. 20, 2010) (internal quotation marks and alteration omitted).

  Frega did exhibit trading behavior involving the purchase and sale of Origin stock within the same day.  (See Docket Nos. 20-4, 20-5.)  However, it does not appear that Frega was exclusively a day trader in the relevant sense.  Frega consistently held tens of thousands of shares throughout the class period, including after Origin's corrective disclosure.  (See id.)  After Frega's initial purchases totaling 40,000

shares, he continued to buy and sell shares throughout the class period.  (See Docket No. 20-4.)  Based on the court's calculations, his balance of shares following each sale ranged from 42,000 to 77,380.  (See id.)  As of August 9, 2023, the date of the corrective disclosure, he held more than 70,000 shares.  (See id.)  Frega only liquidated his position months following the corrective disclosure.  (See Docket No. 20-5.)

Frega's trading history indicates that he was a longer-term investor in Origin who would have relied on more than merely daily price fluctuations, and thus would not be subject to the day trader defense.  See In re Snap Inc. Sec. Litig., 334 F.R.D. 209, 228 (C.D. Cal. 2019) (plaintiffs with history of frequent trading were not atypical because they also maintained shares during class period and liquidated position only after corrective disclosure); Stoopler v. Direxion Shares ETF Tr., No. 09-cv-8011 RJH, 2010 WL 3199679, at *4 (S.D.N.Y. Aug. 12, 2010), as corrected (Aug. 16, 2010) (plaintiff who day traded was not atypical because he also "purchased and held a large number of shares over a longer time period, and [therefore] suffered the same types of losses [as other putative class members]"). Competing movants have therefore failed to offer proof that Frega is atypical.  See Hanon, 976 F.2d at 509 ("the defense of non-reliance is not a basis for" finding that a plaintiff is atypical unless "a major focus of the litigation will be on a defense unique to him").

Because the court finds that Frega is the most adequate plaintiff, the court appoints Frega as lead plaintiff in this action.

II. <u>Class Counsel</u>

"The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "Although this power is subject to court approval and is therefore not absolute, it plainly belongs to the lead plaintiff." <u>Cohen v. U.S. Dist. Court for the Northern Dist. of Cal.</u>, 586 F.3d 703, 709 (9th Cir. 2009).

The court has reviewed the resumes of Frega's selected lead counsel, New-York based firm Bernstein Liebhard LLP, and liaison counsel,[3] San Francisco-based firm Bragar Eagel & Squire, P.C., and is satisfied that the lead plaintiff has made a reasonable choice of counsel. (<u>See</u> Docket Nos. 20-6, 20-7.) Accordingly, the court will approve the lead plaintiff's selection of counsel.

IT IS THEREFORE ORDERED THAT movant Todd Frega's motion for appointment of lead plaintiff and counsel (Docket No. 20) be, and the same hereby is, GRANTED. Frega is appointed as lead plaintiff. Bernstein Liebhard LLP is appointed as lead counsel and Bragar Equal & Squire, P.C., is appointed as liaison counsel.

The competing motions for appointment of lead plaintiff and counsel (Docket Nos. 13, 14, 17, 21) are DENIED.

Dated: December 14, 2023

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[3] "Liaison counsel" is equivalent to local counsel. <u>See Lamontagne v. Tesla, Inc.</u>, No. 23-cv-00869 AMO, 2023 WL 4353146, at *3 (N.D. Cal. July 5, 2023) (quoting <u>Manual for Complex Litigation (Fourth)</u> § 10.221 (2004)) (liaison counsel serves an "administrative role" and "'will usually have offices in the same locality as the court'").

9