BORIS FELDMAN, State Bar No. 128838
boris.feldman@freshfields.com
DORU GAVRIL, State Bar No. 282309
doru.gavril@freshfields.com
CARL HUDSON, State Bar No. 317201
carl.hudson@freshfields.com
REBECCA LOCKERT, State Bar No. 348810
rebecca.lockert@freshfields.com
FRESHFIELDS BRUCKHAUS DERINGER US LLP
855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250

*Attorneys for Defendants Origin
Materials, Inc., Richard J. Riley, and
John Bissell*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

| | |
|---|---|
| In re ORIGIN MATERIALS, INC. SECURITIES LITIGATION<br><br>_____<br><br>This Document Relates To<br><br>ALL ACTIONS CONSOLIDATED FROM:<br><br>Antonio F. Soto, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>        v.<br><br>Origin Materials, Inc., Richard J. Riley, and John Bissell,<br><br>    Defendants. | Case No.: 2:23-cv-01816-WBS-JDP<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S CORRECTED AMENDED COMPLAINT**<br><br>Date:          August 5, 2024<br><br>Time:          1:30 p.m.<br><br>Location:   Courtroom 5 – 14th Floor<br><br>Judge:        Hon. William B. Shubb |

**TABLE OF CONTENTS**

Page

INTRODUCTION................................................ 1

ARGUMENT................................................... 2

   I. PLAINTIFF HAS FAILED TO PLEAD ANY MATERIAL FALSE STATEMENT... 2

     A. The Opposition Is Premised on a Nonexistent Duty to Update Origin 2's Timeline.................................... 2

     B. Plaintiff Does Not Dispute that Origin Made Progress on Origin 2...................................................... 5

     C. Plaintiff Concedes that Progress and Timeline Statements Were Forward-Looking, and Cannot Undercut the PSLRA Safe Harbor...................................................... 7

     D. Plaintiff Distorts Defendants' Statements About PX, and Ignores Information Confirming Their Accuracy................ 9

   II. PLAINTIFF'S SCIENTER ALLEGATIONS REMAIN DEFICIENT.......... 11

     A. CW1's Allegations Do Not Pass the Zucco Standards and Therefore Must Be Discounted................................ 12

       1. Plaintiff improperly raises novel allegations and misstates existing allegations............................ 12

       2. Plaintiff still does not identify any direct communication CW1 had with Mr. Riley and Mr. Bissell...... 13

       3. CW1 lacks any insight into Mr. Riley and Mr. Bissell's state of mind.................................. 14

       4. Plaintiff confuses what CW1 claims to have known with what Defendants knew....................................... 16

     B. Plaintiff Blatantly Obscures Reality by Mischaracterizing Origin's Partnerships with Avantium and PepsiCo............. 17

     C. The Absence of Insider Trading Allegations Heavily Undercuts Scienter........................................... 19

     D. Plaintiff Fails to Demonstrate that the Core Operations Doctrine Should Apply......................................... 20

     E. Holistic Review Does Not Cure Deficiencies.............. 21

   III. PLAINTIFF'S REWRITTEN ALLEGATIONS STILL DO NOT PLEAD LOSS CAUSATION.............................................. 22

     A. Plaintiff Cannot Plead with Particularity, so He Incorrectly Lowers the Pleading Standard.................... 23

     B. None of the "Corrective Disclosures" Revealed Falsity.... 23

     C. Plaintiff Misstates the Law to Salvage His Corrective Disclosures.............................................. 24

     D. The Opposition Tries to Simplify Its Loss Causation Theory by Changing and Abandoning Allegations.............. 26

CONCLUSION................................................. 27

**TABLE OF AUTHORITIES**

**Cases**                                                                                                      **Page**

*In re Aceto Corp. Secs. Litig.*,
  2021 WL 4350501 (E.D.N.Y. Mar. 16, 2021)....................... 5

*In re Alphabet, Inc. Secs. Litig.*,
  1 F.4th 687 (9th Cir. 2021).................................. 8

*In re Apple Inc., Secs. Litig.*,
  2020 WL 2857397 (N.D. Cal. June 2, 2020)....................... 8

*Berson v. Applied Signal Tech., Inc.*,
  527 F.3d 982 (9th Cir. 2008).................................. 8

*In re BioMarin Pharm. Inc. Sec. Litig.*,
  2022 WL 164299 (N.D. Cal. Jan. 6, 2022)....................... 21

*In re Blue Earth, Inc. Sec. Class Action Litig.*,
  2015 WL 12001274 (C.D. Cal. Nov. 3, 2015).................... 25

*Bos. Ret. Sys. v. Uber Techs., Inc.*,
  2020 WL 4569846 (N.D. Cal. Aug. 7, 2020)..................... 26

*Brendon v. Allegiant Travel Co.*,
  412 F. Supp. 3d 1244 (D. Nev. 2019).......................... 11

*Brody v. Transitional Hospitals Corp.*,
  280 F.3d 997, 1006 (9th Cir. 2002)............................ 8

*Brown v. Ambow Educ. Holding Ltd.*,
  2014 WL 523166 (C.D. Cal. Feb. 6, 2014)................... 1, 24

*City of Pontiac Gen. Emps. Ret. Sys. v. First Solar Inc.*,
  2023 WL 155861 (D. Ariz. Jan. 10, 2023)...................... 25

*City of Warren Police & Fire Ret. Sys. v.
  World Wrestling Ent. Inc.*,
  477 F. Supp. 3d 123 (S.D.N.Y. 2020).......................... 11

*In re Daou Sys., Inc.*,
  411 F.3d 1006 (9th Cir. 2005)................................ 23

*Diaz v. N. Dynasty Mins. Ltd.*,
  2018 WL 5099749 (C.D. Cal. Apr. 30, 2018)..................... 4

*In re Dot Hill Sys. Corp. Sec. Litig.*,
  594 F. Supp. 2d 1150 (S.D. Cal. 2008)........................ 12

*In re Downey Sec. Litig.*,
   2009 WL 2767670 (C.D. Cal. Aug. 21, 2009)..................... 19

*In re ECOtality Secs. Litig.*,
   2014 WL 4634280 (N.D. Cal. Sept. 16, 2014)..................... 7

*In re Enovix Corp. Secs. Litig.*,
   2024 WL 349269 (N.D. Cal. Jan. 30, 2024)...................... 9

*In re Facebook Inc. Sec. Litig.*,
   87 F.4th 844 (9th Cir. 2023),
   *cert. granted* No. 23-980 (June 10, 2024)..................... 8

*Fadia v. FireEye, Inc.*,
   2016 WL 6679806 (N.D. Cal. Nov. 14, 2016)..................... 14

*Ferraro Fam. Found., Inc. v. Corcept Therapeutics Inc.*,
   501 F. Supp. 3d 735 (N.D. Cal. 2020)...................... 15, 22

*In re Genius Brands Int'l, Inc. Sec. Litig.*,
   97 F.4th 1171 (9th Cir. 2024)............................. 25, 26

*Glazer Cap. Mgmt., L.P. v. Forescourt Techs., Inc.*,
   63 F.4th 747 (9th Cir. 2023)............................. 11, 16

*Grigsby v. BofI Holding, Inc.*,
   979 F.3d 1198 (9th Cir. 2020)................................. 24

*In re Intel Corp. Inc. Securities Litigation*
   2023 WL 2767779 (N.D. Cal. Mar. 31, 2023)............... 4, 5, 22

*In re Invision Technologies, Inc. Securities Litigation*
   2006 WL 538752 (N.D. Cal. Jan. 24, 2006)..................... 15

*Jui-Yang Hong v. Extreme Networks, Inc.*,
   2017 WL 1508991 (N.D. Cal. Apr. 27, 2017)..................... 8

*Karinski v. Stamps.com, Inc.*,
   2020 WL 6572660 (C.D. Cal. Nov. 9, 2020)..................... 26

*Kipling v. Flex Ltd.*,
   2020 WL 2793463 (N.D. Cal. May 29, 2020)..................... 12

*Kodiak Warehouse LLC v. Morrice*,
   2009 WL 10668446 (C.D. Cal. May 13, 2009)................. 19, 21

*Kong v. Fluidigm Corp.*,
   2021 WL 3409358 (N.D. Cal. Aug. 4, 2021)..................... 16

*Leventhal v. Chegg, Inc.*,
   2024 WL 924484 (N.D. Cal. Mar. 4, 2024)..................... 21

*Lloyd v. CVB Fin. Corp.*,
   2012 WL 12883522 (C.D. Cal. Jan. 12, 2012)................... 15

*Lloyd v. CVB Fin. Corp.*,
   811 F.3d 1200 (9th Cir. 2016)................................ 23

*Loos v. Immersion Corp.*,
   762 F.3d 880 (9th Cir. 2014)................................. 23

*Melot v. JAKKS Pac., Inc.*,
   2014 WL 12589334 (C.D. Cal. June 6, 2014).................... 20

*Metzler v. Corinthian*,
   540 F.3d 1049 (9th Cir. 2008)................................ 23

*In re Nektar Therapeutics*,
   2020 WL 3962004 (N.D. Cal. July 13, 2020)................... 20

*In re NVIDIA Corp. Sec. Litig.*,
   768 F.3d 1046 (9th Cir. 2014)................................ 20

*Oklahoma Firefighters Pension & Ret. Sys. v. IXIA*,
   50 F. Supp. 3d 1328 (C.D. Cal. 2014)...................... 21, 23

*Pardi v. Tricida, Inc.*,
   2022 WL 3018144 (N.D. Cal. July 29, 2022)................... 26

*Ronconi v. Larkin*,
   253 F.3d 423 (9th Cir. 2001)................................. 5

*Scheller v. Nutanix, Inc.*,
   450 F. Supp. 3d 1024 (N.D. Cal. 2020)................ 14, 19, 20

*Scheller v. Nutanix, Inc.*,
   2020 WL 5500422 (N.D. Cal. Sept. 11, 2020)................. 20

*Shurkin v. Golden State Vintners, Inc.*,
   2005 WL 1926620 (N.D. Cal. Aug. 10, 2005)................... 7

*Shurkin v. Golden State Vintners, Inc.*,
   303 F.App'x 431 (9th Cir. 2008).............................. 3

*Smith v. NetApp, Inc.*,
   2021 WL 1233354 (N.D. Cal. Feb. 1, 2021)................... 19

*In re Soc. Media Adolescent Addiction/Pers.*
   *Inj. Prod. Liab. Litig.*,
   2023 WL 7524912 (N.D. Cal. Nov. 14, 2023)................... 9

*In re Solarcity Corp. Sec. Litig.*,
   274 F. Supp. 3d 972 (N.D. Cal. 2017)....................... 21

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.,*
  551 U.S. 308 (2007).......................................... 12

*In re Toyota Motor Corporation Securities Litigation*
  2012 WL 3791716 (C.D. Cal. Mar. 12, 2012)..................... 15

*In re US Aggregates, Inc. Sec. Litig.,*
  235 F. Supp. 2d 1063 (N.D. Cal. 2002)........................ 10

*Weston Family P'ship LLLP v. Twitter, Inc.,*
  29 F.4th 611 (9th Cir. 2022)............................. 2, 3, 4

*Wochos v. Tesla, Inc.,*
  985 F.3d 1180 (9th Cir. 2021)................................. 6

*Zucco Partners, LLC v. Digimarc Corp.,*
  552 F. 3d 981 (9th Cir. 2008)................................ 18

**Statutes**

15 U.S.C. §§ 78u-4(b)(2)........................................ 14

15 U.S.C. § 78u-5(c)(1)(B)(i).................................... 7

15 U.S.C. § 78u-5(c)(2).......................................... 7

**Other Authorities**

Rule 9(b)...................................................... 23

Rule 10b-5(b).................................................. 27

**TABLE OF ABBREVIATIONS[1]**

| Abbreviation | Meaning |
| --- | --- |
| ¶, Amended Complaint, or Complaint | Plaintiff's Corrected Amended Complaint for Violations of the Federal Securities Laws, filed March 7, 2024 (ECF No. 61) |
| CMF | Chloromethylfurfural |
| Defendants | Defendants Origin Materials, Inc., Richard J. Riley, and John Bissel |
| Ex. | Exhibit attached to Declaration of Carl Hudson in Support of Defendants' Motion to Dismiss Plaintiff's Corrected Amended Complaint (ECF No. 69-2) |
| FDCA | Furandicarboxylic acid |
| FEL | Front-end loading |
| Mot. or Motion | Defendants' Notice of Motion and Motion to Dismiss Plaintiff's Corrected Amended Complaint for Violations of the Federal Securities Laws, filed APril 15, 2024 (ECF No. 69) |
| Opp. or Opposition | Lead Plaintiff's Opposition to Defendants' Motion to Dismiss Plaintiff's Corrected Amended Complaint, filed May 30, 2024 (ECF No. 71) |
| Origin or the Company | Origin Materials, Inc. |
| PEF | Polyethylene furanoate |
| PET | Polyethylene terephthalate |
| Plaintiff | Lead Plaintiff Todd Frega |
| PSLRA | Private Securities Litigation Reform Act of 1995 |
| R&D | Research and development |

---

[1] Herein, emphasis is added unless otherwise noted. Certain quotation marks, alteration marks, citations, and emphases have been omitted.

## INTRODUCTION

The fundamental premise of this lawsuit is flawed. When Origin became publicly traded, it had not started construction of its anticipated second plant, Origin 2. Its disclosures were thorough and ample, highlighting the key risks ahead. In particular, the Company was clear that it had retained a third-party expert firm to conduct a detailed feasibility study of Origin 2. The results were expected in summer 2023, and the Company committed to share the outcome of the study at that time. When concluded, the study showed that Origin 2 would cost more than expected to build on the original schedule. Origin promptly disclosed this information, as well as its decision to proceed with building Origin 2 in phases. The plant would also initially focus on Origin's latest product, FDCA, which was seeing faster customer adoption than initially expected. This operational uncertainty led to a stock drop.

Plaintiff tries to recoup his investment losses by turning these unexpected operational obstacles into a fraud claim. But the federal securities laws are not "an insurance policy for investors, allowing investors to recuperate losses in the stock market." *Brown v. Ambow Educ. Holding Ltd.*, 2014 WL 523166, at *9 (C.D. Cal. Feb. 6, 2014).

Plaintiff's Opposition cannot cure the Complaint's deficiencies. Plaintiff cannot plead any of the elements of his claim. First, he cannot plead falsity because Origin's statements are not contradicted by any well-pleaded factual allegations. Nor can he plead omission, because the law does not create a duty to update. Second, Plaintiff cannot plead scienter because he fails to plead with particularity the state of mind of any Defendant,

DEFENDANTS' REPLY ISO MTD                    -1-
CASE NO. 2:23-cv-01816-WBS-JDP

relying instead on generalized speculation and innuendo. Third, Plaintiff cannot connect the stock drop to the disclosure of any information that corrected a prior statement. The market simply reacted to an operational setback, not to the uncovering of a fraudulent scheme. The lawsuit should be dismissed.

ARGUMENT

## I. PLAINTIFF HAS FAILED TO PLEAD ANY MATERIAL FALSE STATEMENT

The Complaint is unable to plead the first element of its cause of action: a materially false or misleading statement. Mot. at 7-23. Plaintiff's Opposition cannot remedy this key deficiency.

The Opposition raises four arguments, each of which fails as a matter of law. First, contrary to Plaintiff's argument, the federal securities laws do not impose a duty to update. Opp. at 25. Second, the challenged statements about progress with plans for Origin 2 were true, and Plaintiff does not plead otherwise. Opp. at 22-23. Third, timelines and future plans are forward-looking and protected by the statutory safe harbor for forward-looking statements. Opp. at 26-27. And, finally, Origin's statements about its plans for producing PX are not contradicted by any of Plaintiff's allegations. Opp. at 15-20.

### A. The Opposition Is Premised on a Nonexistent Duty to Update Origin 2's Timeline

Plaintiff concedes that he "does not allege that Defendants had a duty to update" under the securities laws. Opp. at 24; *see Weston Family P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 620 (9th Cir. 2022) (rejecting argument that company "when faced with a setback . . . ha[s] a legal duty to disclose it to the investing public"). But without such a duty to update, the Opposition's theory of falsity collapses. Mot. at 8-10.

Plaintiff protests that his allegations do not amount to imposing a duty to update investors, instead arguing that he is challenging the Company's statements as misleadingly "reaffirm[ing] Origin 2's production focus and expected timeline." Opp. at 24. But the Company's statements are clearly expressions of progress and not promises of certain products or construction timelines. For example, Origin stated it "continued to make **progress** on front-end design, construction planning, and financing for Origin 2," had "made **progress** developing new products and applications that may be incorporated into the design of the plant," and that Origin 2's "[c]onstruction [was] **expected** to start by mid-2023 and the plant [wa]s **expected** to be operational mid-2025." ¶ 127; *see also* Mot. at 9. Plaintiff's challenges to these statements can only be read as requiring "continuous" disclosure of every fact related to Origin 2's timeline and progress, instead of the "periodic . . . disclosure[s]" the securities laws actually require. *Shurkin v. Golden State Vintners, Inc.*, 303 F. App'x 431, 433 (9th Cir. 2008).

The Opposition ignores on-point authorities cited in the Motion to Dismiss. Mot. at 8–9. Plaintiff tries to distinguish his allegations from the particularly instructive ruling in *Weston* by asserting that, unlike Twitter in that case, Defendants set a "specific deadline" they did not meet. Opp. at 25. But the Opposition itself concedes that Defendants did not set a specific deadline. Instead, Defendants consistently qualified Origin 2's timeline in their public statements setting forth the "**expected**" and "**scheduled**" construction and operational milestones. Opp. at 6–7, 23, 24. Requiring updates beyond these statements would impose "an obligation to offer an instantaneous update of every internal

DEFENDANTS' REPLY ISO MTD
CASE NO. 2:23-cv-01816-WBS-JDP
-3-

development," the standard the Ninth Circuit rejected in *Weston*. 29 F.4th at 620.[2]

Nor can Plaintiff avoid the holding of *In re Intel Corp. Inc. Securities Litigation*. *See* Opp. 16 n.6. In *Intel*, the court dismissed falsity allegations because the plaintiffs had not alleged "the point at which the possibility of [a change] morphed into a decisive plan." 2023 WL 2767779, at *20 (N.D. Cal. Mar. 31, 2023). The plaintiffs there alleged that "the final call" to pivot to outsourcing manufacturing *must* have occurred months prior to its announcement, "because designing chips for manufacture in external foundries would take eight to twelve months" of lead time. *Id.* at *20. But as explained *infra* in Section II, Plaintiff has failed to allege that any definitive decisions were taken until shortly before the August 2023 announcement. Instead, he speculates that the Avantium and PepsiCo contracts show that Defendants had already made "the final call" months prior. Opp. at 16-17. As in *Intel*, this attenuated inference fails.[3]

---

[2] Plaintiff's reliance on *Diaz v. N. Dynasty Mins. Ltd.* is misplaced. 2018 WL 5099749, at *5 (C.D. Cal. Apr. 30, 2018). There, the court stated that the defendant's failure to disclose "the fact that multiple other studies done after the 2011 Assessment came up with different or higher projected costs" rendered prior representations about lower capital costs misleading. *Id.* Here, Origin did not learn that its construction costs would be higher until completion of the *only* study conducted relevant to this case, FEL 2, in summer 2023, at which point it disclosed the changed circumstances to its investors. *See* Mot. at 6-7. Origin literally did what the defendant in *Dynasty* had not.

[3] Additionally, nothing Plaintiff cites affects the other holdings of *Intel* cited by Defendant. Mot. at 17. Namely, the court rejected the argument that "once a company makes a positive statement, it has an obligation to also disclose every fact that cuts against the positive news," and also affirmed that "the existence of a contingency plan does not evince an intent to execute that plan." *Intel*, 2023 WL 2767779, at *19. The court also dismissed a challenge to "statements regarding Intel's 7nm timeline" because

DEFENDANTS' REPLY ISO MTD          -4-
CASE NO. 2:23-cv-01816-WBS-JDP

Setting aside his attempts to distinguish controlling authorities, Plaintiff glosses over the logical impossibility of his theory. He does not address that his continuous disclosure regime cannot apply to the FEL 2 process *because Defendants did not know its outcome until July 2023*. Mot. at 10. Under Plaintiff's theory, Origin would have been required to disclose issues as they arose over the course of a "black box" process that Origin itself had no insight into until summer 2023——months after the challenged statements. *See* Mot. at 4, 6. Nor does Plaintiff recognize——as courts do——the reality that "[m]uch of any business consists of having problems and dealing with them." *Ronconi v. Larkin*, 253 F.3d 423, 430 (9th Cir. 2001) (cited in Mot. at 9).[4] There is no duty for companies to immediately disclose possible issues and contingency plans, even before they crystalize. Such a duty is unknown under the securities laws and cannot ground liability here.

### B. Plaintiff Does Not Dispute that Origin Made Progress on Origin 2

The Opposition never denies the accuracy of Origin's opinions that it was making progress on Origin 2. Plaintiff instead warps the Complaint's allegations and Defendants' actual statements to

they "[we]re plainly forward-looking statements of plans and objectives." *Id.* at *11. Plaintiff has waived any arguments as to those holdings' application in this case.

[4] Nor does Plaintiff address courts' cautioning about the consequences of requiring continuous disclosures. *See Weston*, 29 F. 4th at 620 (requiring continuous disclosure "would inject instability into the securities market, as stocks may wildly gyrate based on even fleeting developments") (cited in Mot. at 9); *In re Aceto Corp. Secs. Litig.*, 2021 WL 4350501, at *10 (E.D.N.Y. Mar. 16, 2021) ("Finding a continuous duty to update earnings projections every time a forecast is disclosed would likely result in a drastic reduction in the number of such projections made by companies.") (cited in Mot. at 10 n.3).

distort reality. Plaintiff argues not that Origin failed to make any progress on Origin 2, but that "Origin was making no progress on the *PX/PET* Origin 2 plant a*s originally represented.*" Opp. at 22; *see also id.* at 20-21 (same). Plaintiff heavily qualifies this statement in an attempt to avoid *Wochos v. Tesla, Inc.*, where the Ninth Circuit held that an opinion that progress——even "great progress"——was being made "would potentially be an actionable false statement only if" the Company "had been 'making no progress at all.'" 985 F.3d 1180, 1196 (9th Cir. 2021). Plaintiff's argument that Defendants "made no progress" on the plant he envisions runs into the dispositive problem that Defendants did not convey progress on a plant that would produce PX/PET. Instead, the Motion makes clear that Defendants' statements:

- Discussed general progress on Origin 2, rather than tying that progress to PX/PET production. For example, Origin represented, without reference to chemical production, that it "continue[d] to make progress on front-end design, construction planning, and financing for Origin 2." Mot. at 9 (quoting ¶ 113). There are no allegations, particularized or not, that contradict this statement.
- Consistently referenced that Origin "made progress in developing new products and applications which may be incorporated into the design of the plant, such as FDCA [and] PEF." Mot. at 17-18 (quoting ¶¶ 113, 115, 117, 127, 129). To the extent these statements reference more than progress on Origin 2 generally, they expressly reference progress made *as to FDCA and PEF*, rather than PX and PET.

It is unsurprising then, that Plaintiff does not acknowledge,

and waives response to, other cases holding that opinions, including those regarding progress, are inactionable.[5] Yet again, Plaintiff simply ignores that Origin had no insight into the result of FEL 2 until July 2023, Mot. at 6, 11-12. *See infra* 11-22.

### C. Plaintiff Concedes that Progress and Timeline Statements Were Forward-Looking, and Cannot Undercut the PSLRA Safe Harbor

Plaintiff and Defendants agree that "[t]here is no dispute that this case deals with forward-looking statements and opinions." Opp. at 2-3. Plaintiff cannot show that the PSLRA's safe harbor does not apply to these forward-looking statements. Plaintiff argues that Defendants' risk disclosures were themselves false and misleading, such that they cannot be effective cautionary language. Opp. at 13-15, 26-28. Plaintiff's framing requires the assumption that Defendants warned not of risks that simply could materialize, but that had (and that Defendants knew to have) materialized. Opp. at 14, 27, 28.[6]

This theory, however, relies on an inapplicable line of cases

[5] *See, e.g., In re ECOtality Secs. Litig.*, 2014 WL 4634280, at *9 (N.D. Cal. Sept. 16, 2014) (statements of "making progress" and "solid progress" were "inactionable under the PSLRA") (cited in Mot. at 11). Further, Plaintiff does not explain how Defendants' progress and timeline statements could have been "false . . . when the[se] opinion[s] were disseminated to the public." *Shurkin v. Golden State Vintners, Inc.*, 2005 WL 1926620, at *9 (N.D. Cal. Aug. 10, 2005) (cited in Mot. at 11).

[6] Plaintiff cannot evade the safe harbor with respect to three statements made at industry conferences. Opp. at 26 n.14. First, as Plaintiff himself notes, Opp. at 26, forward-looking statements qualify for the safe harbor where, as here, *see infra* 11-22, Plaintiff fails to plead they were made with actual knowledge of falsity. 15 U.S.C. § 78u-5(c)(1)(B)(i). Second, Plaintiff never pleads that these conference statements lacked forward-looking designations and references to cautionary language, which is an independent basis for the safe harbor's protection of oral forward-looking statements. 15 U.S.C. § 78u-5(c)(2).

(Opp. at 15) most recently reflected in *In re Alphabet, Inc. Securities Litigation*, 1 F.4th 687 (9th Cir. 2021), and *In re Facebook Inc. Securities Litigation*, 87 F.4th 844 (9th Cir. 2023), *cert. granted* No. 23-980 (June 10, 2024).[7] Plaintiff does not allege with particularity that risks ultimately warned of in disclosures——delay to Origin 2's timeline, and ultimate failure in "developing or implementing new production processes," Opp. at 14——had actually occurred. Instead, he cites CW1 as raising issues that *could* have led to delay, but does not sufficiently allege that they *had* led to delay. CW1's allegations about "fouling issues" and "unexpected chemical issues," Opp. at 7-8, "do not speak directly to the falsity of the alleged statements when made, but rather, reflect generally on difficulties experienced with the overall [project]." *Jui-Yang Hong v. Extreme Networks, Inc.*, 2017 WL 1508991, at *16 (N.D. Cal. Apr. 27, 2017). Plaintiff offers no response to this authority.

Plaintiff, then, is left with the argument that "[e]ven if

---

[7] The other cases cited by Plaintiff, Opp. at 15, to the extent they would even benefit him, do not apply, since their application depends on his assumption that warned-of risks had materialized, on facts that are not present here. *See Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987 (9th Cir. 2008) (defendants recorded millions of dollars in "backlog" deals rendered impossible to achieve by "stop-work" orders); *Alphabet*, 1 F.4th at 703 (disclosures warned of security breach that already existed and was evidenced in memo provided to Company executives). Others are simply of no help to him. In *Brody v. Transitional Hospitals Corp.*, the Ninth Circuit *affirmed* dismissal, rejecting the plaintiffs' argument as requiring a "completeness" rule that does not exist under the securities laws. 280 F.3d 997, 1006 (9th Cir. 2002). The court in *In re Apple Inc., Securities Litigation* held that the risk disclosures at issue were *not* false, based on a mismatch between what they warned of and what plaintiffs argued was undisclosed. 2020 WL 2857397, at *16 (N.D. Cal. June 2, 2020).

delays and impairments . . . had not yet materialized when the statements were made, the risks of those problems had." *In re Enovix Corp. Secs. Litig.*, 2024 WL 349269, at *14 (N.D. Cal. Jan. 30, 2024). The Court in *Enovix* recently rejected this argument as a failed "attempt to fit the *Facebook* ruling to the facts of th[at] case," *id.*, as this Court should do here.[8]

Plaintiff's final effort to challenge the safe harbor's protection of forward-looking statements is to rely entirely on his scienter arguments. Opp. at 29. Defendants' Motion refutes these arguments, Mot. at 31-32, and Section II *infra* shows that the Opposition does not overcome the issues raised in the Motion.

### D. Plaintiff Distorts Defendants' Statements About PX, and Ignores Information Confirming Their Accuracy

Plaintiff fares no better in challenging statements that PX was a "flagship product" for Origin. Opp. at 16-20.

Again, Plaintiff distorts what Defendants actually stated to create the misimpression that the "flagship" opinion statements were false. Plaintiff constructs a world where Defendants stated that PX/PET would be *Origin 2's* flagship product. But even in the terms Plaintiff quotes them, Defendants stated that PX/PET was *Origin's*——meaning the company's and not any specific plant's——flagship product. Opp. at 15-16; *see also* ¶¶ 145 (CMF "can

---

[8] Plaintiff's argument that Defendants "waived," Opp. at 13 n.4, response to his challenge to risk disclosures approaches bad faith. Defendants addressed, at length, the sufficiency and accuracy of their risk disclosures. Mot. at 13-14, 21. This Court has more than an adequate basis on which to dismiss Plaintiff's challenges to Defendants' risk disclosures. The case cited by Plaintiff regarding waiver also has no securities aspect whatsoever, and concerns the completely inapplicable context of a First Amendment argument waived in a products liability case. *In re Social Media Adolescent Addiction/Personal Injury Prod. Liab. Litig.*, 2023 WL 7524912, at *19 (N.D. Cal. Nov. 14, 2023) (cited in Opp. at 13 n.4).

go on to *our* flagship product [PX]"); 147 (PX "is kind of *our* flagship and first product").

Moreover, *even assuming Origin 2 would never make PX/PET*, it would be accurate for Origin to describe PX as the flagship product in statements made before construction began on Origin 2 and *long* before Origin 2 would be operational. The flagship product would be what the Company was currently making, rather than what its future plant *might* make. To that point, Plaintiff almost entirely ignores the existence of Origin 1, which concluded construction in June 2023 and would manufacture CMF, convertible to PX. Ex. 5 at 3; *see* Ex. 15 at 5-6 (referring to uses of CMF manufactured at Origin 1).

Plaintiff attempts to plead around other inconvenient information showing that PX/PET was Origin's focus as "pre-Class Period" information. Opp. at 19. Plaintiff specifically tries to downplay Defendants' PET partnerships with companies like Ford and LVMH Moët Hennessy Louis Vuitton as of May 2023, Mot. at 20, because they were formed before the Class Period. Despite Plaintiff's protestations, though, this context is obviously relevant to what was Origin's primary product in the full span of its existence. *See In re US Aggregates, Inc. Sec. Litig.*, 235 F. Supp. 2d 1063, 1067 n.3 (N.D. Cal. 2002) (noting "[a]ny information that sheds light on whether class period statements were false or materially misleading is relevant," and dismissing claims).

Finally, Plaintiff cannot even support his warped construction of these statements. Even if Origin had promised that Origin 2's flagship product would be PX/PET——which it did not——Plaintiff

cannot plead the falsity of that statement.[9] Plaintiff never addresses how it is possible that an opinion that PX was a flagship product could be objectively false, or subjectively disbelieved, if Defendants did not yet have the benefit of the outside engineering firm's assessment of the scope of the project. Mot. at 6.[10]

Having failed to plead any actionable misstatement or omission, Plaintiff's claims fail on this element alone.

## II. PLAINTIFF'S SCIENTER ALLEGATIONS REMAIN DEFICIENT

Plaintiff attempts to cure the defects of his scienter allegations by relying on: (1) the accounts of a single confidential witness who was far removed from the Defendants; (2) the mischaracterization of Origin's strategic partnerships; and (3) an inapplicable "core operations" theory. When each falls short, Plaintiff asks the Court to conduct a holistic review of defunct allegations. This too does not meet the PSLRA's heightened pleading

---

[9] Plaintiff's citation to Webster's Dictionary definition of "flagship" also confirms that it is a subjective label. Opp. at 18 n.8 (referring to "flagship" as "the *finest*, largest, or *most important* one of a group of things").

[10] Plaintiff's cited authority, Opp. at 18-19, also depends on the assumption that opinions were stated when known to be false, and thus, is inapplicable. *See Brendon v. Allegiant Travel Co.*, 412 F. Supp. 3d 1244, 1254-55, 1259 (D. Nev. 2019) (opinion that airline was a "safe operation" was shown false by "horror stories of Allegiant aircraft experiencing flight delays, emergency landings, aborted takeoffs, and smoke in the cabin" caused by maintenance issues Defendants knew they had not remedied); *City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*, 477 F. Supp. 3d 123, 134 (S.D.N.Y. 2020) (statements that company was "working on" a rights renewal negotiation was shown false where Defendants knew that the negotiations had been terminated); *Glazer Cap. Mgmt., L.P. v. Forescourt Techs., Inc.*, 63 F.4th 747, 770-71 (9th Cir. 2023) (pipeline opinions and measurements were shown false where they reflected deals the defendants knew to have failed). Plaintiff's rejection of Defendants' authority similarly requires that Defendants knew their statements were false. Opp. at 19 n.9.

DEFENDANTS' REPLY ISO MTD                    -11-
CASE NO. 2:23-cv-01816-WBS-JDP

standard, as Plaintiff fails to present an inference of scienter that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007); Mot. at 23.

### A. CW1's Allegations Do Not Pass the *Zucco* Standards and Therefore Must Be Discounted

#### 1. Plaintiff improperly raises novel allegations and misstates existing allegations

Recognizing the shortcomings of his confidential witness allegations, Plaintiff tries to plead new allegations in his Opposition and misstates existing ones in his Complaint.

**Novel allegations**. Rather than properly addressing the concerns that Defendants raised regarding CW1's credibility, Plaintiff now presents an unpleaded, novel allegation that characteristics of CW1 were concealed "due to fears of retaliation from Origin" and offers to provide more information "*in camera*." Opp. at 31 n. 18. "Plaintiff may not sidestep [the PSLRA's pleading] requirements by providing the necessary details to the Court *in camera*." *Kipling v. Flex Ltd.*, 2020 WL 2793463, at *15 (N.D. Cal. May 29, 2020). Courts in the Ninth Circuit have "found no precedent in the law of federal securities fraud allowing *in camera* review of details about confidential witnesses . . . instead of pleading those details within the complaint." *In re Dot Hill Sys. Corp. Sec. Litig.*, 594 F. Supp. 2d 1150, 1162 (S.D. Cal. 2008). This Court should reject Plaintiff's inappropriate suggestion of an *in camera* showing here.

**Misstatements of existing allegations**. Plaintiff also stretches his allegations further by arguing that CW1 "was well positioned to directly observe that Origin was experiencing problems with scaling of production of PX at Origin 2." Opp. at 31.

DEFENDANTS' REPLY ISO MTD                -12-
CASE NO. 2:23-cv-01816-WBS-JDP

But this is not what Plaintiff pleaded in the Complaint. Plaintiff only alleges that CW1 was a conduit for information: he was part of a team that "compil[ed]" and "rerout[ed]" information between Origin 1 and the outside engineering firm compiling FEL 2. ¶ 85. Nowhere does Plaintiff allege that CW1 himself was responsible for these tasks, nor that CW1 had any insight into the analysis of that information or any conclusions that Defendants drew from that analysis. Failing to plead CW1's role with particularity, Plaintiff attempts to conflate the role of CW1 with that of his entire team. This unpleaded theory cannot save the Complaint's deficient CW allegations.

### 2. Plaintiff still does not identify any direct communication CW1 had with Mr. Riley and Mr. Bissell

Even if CW1 was "well positioned," Opp. at 31, to be aware of alleged issues with the production of PX, which he was not, what does not change is that CW1 did not have any direct communication with either Mr. Riley or Mr. Bissell. According to the Complaint, CW1 is a non-executive, low-level employee whose interaction with Mr. Riley and Mr. Bissell was largely limited to his attendance at routine "quarterly all-hands meetings," ¶ 87, or the "weekly Friday meetings," ¶ 90. Plaintiff fails to allege that these meetings were anything but routine. As CW1 recounts, at one such meeting, many topics were discussed such as "the state of the Company, the research and development process at Origin 2, and provided an update on the plant—**such as how the plant would look**." ¶ 87. At bottom, what was discussed in the meetings was internal strategy, where Mr. Riley and Mr. Bissell were allegedly discussing factors that potentially *could* cause delays, not those that *had* or *would* cause delays. *See* Mot. at 28. But even accepting CW1's allegations,

DEFENDANTS' REPLY ISO MTD              -13-
CASE NO. 2:23-cv-01816-WBS-JDP

Plaintiff does not plead scienter with requisite particularity because CW1 does not say whether this is a delay of a week, a month, or a year. ¶ 90. CW1 also fails to supply any facts showing either individual defendant knew they were supposed to make any kind of disclosure and failed to do so.

Plaintiff feebly claims that CW1 is "not required to identify the exact date and time of every communication with the Individual Defendants," Opp. at 33, and yet fails to identify even a *single* time when CW1 actually spoke to Mr. Riley and Mr. Bissell. Indeed, CW1's accounts are similar to those of CWs in *Scheller v. Nutanix, Inc.*, where non-executive CWs "had contact with the defendants only at quarterly 'All-hands meetings,'" 450 F. Supp. 3d 1024, 1041 (N.D. Cal. 2020), and in *Fadia v. FireEye, Inc.*, where CWs "were low-level employees" whose participation was limited to "routine corporate activity—hardly indicative of scienter," 2016 WL 6679806, at *13 (N.D. Cal. Nov. 14, 2016). Those allegations were insufficient in *Scheller* and *Fadia* and fare no better here.

### 3. CW1 lacks any insight into Mr. Riley and Mr. Bissell's state of mind

Plaintiff claims that scienter can be inferred "by virtue of [Mr. Riley and Mr. Bissell's] participation in" these weekly meetings. Opp. at 32 n. 20; Mot. at 26. Not so. Instead, Plaintiff must allege with particularity facts that reveal Individual Defendants' state of mind. 15 U.S.C. §§ 78u-4(b)(2). Simply alleging monthly meetings where attendees discussed pertinent issues fails to raise a scienter inference absent any allegations regarding "what was known to the executives" or "what was discussed during [such] meetings." *Lloyd v. CVB Fin. Corp.*, 2012 WL 12883522, at *27-28 (C.D. Cal. Jan. 12, 2012). Allegations that fail to show

that CW1 "had personal knowledge of the Individual Defendants' state of mind or that they communicated with Individual Defendants" are "insufficient to create a strong inference of scienter." *Ferraro Fam. Found., Inc. v. Corcept Therapeutics Inc.*, 501 F. Supp. 3d 735, 766 (N.D. Cal. 2020).

Similarly, what CW1 learned at the R&D meetings they attended, ¶¶ 86, 88, cannot be imputed to Mr. Riley or Mr. Bissell's knowledge because Plaintiff does not plead that they were even present at these meetings. Mot. at 25, 27. This is true regardless of when these meetings took place. Plaintiff claims pre-Class Period issues are relevant to "corroborate CW1's Class Period allegations," Opp. at 32 n. 19, yet cites two irrelevant cases. *In re Toyota Motor Corporation Securities Litigation* concerned a discovery dispute, where the court was determining the scope of discovery after plaintiffs moved to compel production of documents. 2012 WL 3791716, at *4 (C.D. Cal. Mar. 12, 2012). It was specifically within this discovery context that the court held "that discovery is not limited to the class period" and ordered the defendant to produce documents dating before the class period. *Id.* Plaintiff's citation to *In re Invision Technologies, Inc. Securities Litigation* is equally inapt, given the court was considering pre-class period statements to determine falsity, not scienter, and the defendants' motion to dismiss was ultimately granted. 2006 WL 538752, at *2 n.1 (N.D. Cal. Jan. 24, 2006). Scienter is held to a higher pleading standard than falsity: Plaintiff must plead particular facts that give rise to "a *strong inference* standard of plausibility," while falsity is subject to "*reasonable inference* standard of plausibility." *Glazer*, 63 F. 4th

DEFENDANTS' REPLY ISO MTD           -15-
CASE NO. 2:23-cv-01816-WBS-JDP

at 766. The Opposition does not meet that bar.[11]

### 4. Plaintiff confuses what CW1 claims to have known with what Defendants knew

The Opposition takes liberties embellishing the allegations in the Complaint. For example, Plaintiff never pleaded that Mr. Riley and Mr. Bissell "told Origin employees" that "Origin was forced to either produce less PX at Origin 2 or pivot the plant's production to another product." Opp. at 34. Instead, CW1 claims that among other updates, such as "the research and development process at Origin 2" and "an update on the plant——such as how the plant would look," Mr. Riley and Mr. Bissell discussed "consider[ations]" as to the scaling of Origin 2. ¶ 87. CW1 never claims that Mr. Riley and Mr. Bissell stated they were "forced" into any decision, nor that any final decision was made that would change the fate of the Company. The law is clear that discussion of internal strategy is "insufficient to give rise to an inference of scienter." *Kong v. Fluidigm Corp.*, 2021 WL 3409358, at *11 (N.D. Cal. Aug. 4, 2021); Mot. at 28.

Plaintiff also claims Mr. Riley and Mr. Bissell "advis[ed] employees of their decision to no longer produce PX at Origin 2 and break the plant's construction up into two phases." Opp. at 35. What Plaintiff actually pleaded was that CW1, "based on emails with his direct manager and his attendance at weekly meetings," *learned* of this fact. ¶¶ 89-91. Plaintiff impermissibly stretches the allegations in the Complaint by claiming that "statements by Defendants were personally witnessed by CW1." Opp. at 35. But he

---

[11] To be clear, Plaintiff's attempt to plead falsity by using pre-Class Period statements falls equally short, as shown by his inconsistent position regarding statements that PX was a "flagship product" for Origin. *Supra* 10.

does not specify who spoke at these meetings or what statements, if any, Mr. Riley and Mr. Bissell made to cause CW1 to become aware of alleged issues. *See* Mot. at 25. Similarly, Plaintiff uses passive voice to state that, in December 2022, "CW1 was instructed that the Company was far off from completing FEL 2 for Origin 2." ¶ 87. Tellingly, the Complaint never specifies who was purportedly giving that instruction (much less that it was Mr. Riley or Mr. Bissell).

### B. Plaintiff Blatantly Obscures Reality by Mischaracterizing Origin's Partnerships with Avantium and PepsiCo

Plaintiff relies on nothing but unsubstantiated assumptions to claims that Origin's partnerships with Avantium and PepsiCo are proof that Defendants were aware of delays with Origin 2.

**Avantium Partnership.** Plaintiff engages in deliberate cherry-picking by mischaracterizing the terms of Origin's partnership with Avantium. Plaintiff cannot claim that it is "irrelevant," Opp. at 35 n. 23, that Origin's partnership with Avantium also included an offtake agreement in which Origin agreed to *buy* FDCA and PEF from Avantium, *see* Mot. at 29, especially when Plaintiff attempts to inaccurately paint the license agreement as indicative of Origin's commitment to *produce* only FDCA.

But beyond this mischaracterization, Plaintiff again attempts to use statements made by Avantium's CEO to impute knowledge to the Individual Defendants. Plaintiff alleges that Avantium's CEO was "well positioned to provide a credible opinion on Origin 2's timeline." Opp. at 36. However, the opinion of Avantium's CEO was based on his "own experience," ¶ 98, and does not reveal anything about what Mr. Riley and Mr. Bissell believed to be the timeline. *See* Mot. at 30. Indeed, Avantium's CEO himself expressly disclaimed any knowledge of Origin's internal processes and progress by

DEFENDANTS' REPLY ISO MTD                    -17-
CASE NO. 2:23-cv-01816-WBS-JDP

stating that "it's up to Origin to make [an] announcement regarding the timing of OM2 and of the licensed facility[.]" ¶ 98. Separately, Plaintiff argues that Origin 2 was "the only plausible plant for Origin to utilize Avantium's FDCA production technology," Opp. at 36, but completely ignores Origin's plans for Origin 3. Ex. 11 at 15. Again, Avantium's CEO stated that "it's up to Origin to make [an] announcement regarding the timing of OM2 and **of the licensed facility**[,]" indicating that Origin 2 and the "licensed facility" contemplated in the Avantium agreement were not one and the same. ¶ 98.

**PepsiCo Offtake Agreement.** Plaintiff also attempts to deflect from the facts of the PepsiCo agreement by misstating the pleadings standard and claiming that "Defendants fail to offer an alternative explanation" for that agreement. Opp. at 37, n. 24. That is not Defendants' burden. At the motion to dismiss stage, the burden is firmly placed on Plaintiff to present a theory of scienter "more cogent or compelling than an alternative innocent inference." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F. 3d 981, 999-1000 (9th Cir. 2008); *see also* Mot. at 30-31.

Notwithstanding this, Plaintiff willfully ignores all "alternative innocent inference[s]" that Defendants have presented. *Zucco*, 552 F. 3d at 1000. Even in light of the amendment to the offtake agreement, Origin continued to offer to supply PX to PepsiCo and reassured the market that Origin was building "strategic partnerships." *See* Mot. at 30-31. Plaintiff cannot regurgitate the terms of the amendment out of context and cite to a conclusory allegation in the Complaint to simply claim that the "Amendments demonstrate that Defendants knew by May 9, 2023 that

DEFENDANTS' REPLY ISO MTD                    -18-
CASE NO. 2:23-cv-01816-WBS-JDP

Origin 2 was experiencing delays, would not begin construction by mid-2023, and would not be operational by mid-2025." Opp. at 37.

### C. The Absence of Insider Trading Allegations Heavily Undercuts Scienter

As Plaintiff identified in his lone footnote addressing this topic, Defendants are not claiming that insider trading allegations are required for a finding of scienter. Opp. at 30 n. 17; Mot. at 24. What Plaintiff fails to note, as shown by well-established case law, is that the absence of "suspicious stock sales" is "probative of a lack of scienter." *Smith v. NetApp, Inc.*, 2021 WL 1233354, at *9 (N.D. Cal. Feb. 1, 2021); *see also In re Downey Sec. Litig.*, 2009 WL 2767670, at *13 (C.D. Cal. Aug. 21, 2009).

This is especially so, when Plaintiff cannot conjure up a single financial motive as to why Mr. Bissell or Mr. Riley would have engaged in fraud. In fact, Mr. Bissell and Mr. Riley together hold about 4.9 million shares of the Company, Origin, Proxy Statement(Schedule 14(a)) (March 22, 2024), exceeding Plaintiff's holding by nearly 15 times, ECF No. 20-5, so it is nonsensical to suggest that they would steal from themselves. Plaintiff's failure to allege "a tangible benefit to [Individual Defendants] at the very least supports an inference against scienter." *Kodiak Warehouse LLC v. Morrice*, 2009 WL 10668446, at *11 (C.D. Cal. May 13, 2009). This is unlike the two cases that Plaintiff touts to support his argument, in which plaintiffs presented financial motives for fraud. In *Scheller v. Nutanix, Inc.*, plaintiffs "assert[ed] that the individual defendants' bonuses were tied to the number of new customer adds," which the court agreed supported a scienter inference. 2020 WL 5500422, at *10 (N.D. Cal. Sept. 11, 2020). Plaintiff himself cites *Melot v. JAKKS Pac., Inc.*, a case in

DEFENDANTS' REPLY ISO MTD                -19-
CASE NO. 2:23-cv-01816-WBS-JDP

which the court granted the motion to dismiss because it did not find scienter even where "[d]efendants' discretionary bonuses depended on" the alleged wrongdoing because "[p]laintiff fail[ed] to allege how the alleged misstatements would help Defendants increase their compensation and maintain their jobs." 2014 WL 12589334, at *16 (C.D. Cal. June 6, 2014).

### D. Plaintiff Fails to Demonstrate that the Core Operations Doctrine Should Apply

Plaintiff also fails to show scienter by relying on the core operations doctrine. Given "Plaintiff['s] global failure to adequately allege falsity in the first place," *In re Nektar Therapeutics*, 2020 WL 3962004, at *13 (N.D. Cal. July 13, 2020), Origin 2 being "vital to Origin's financial success" and important to "Origin's commercial operation and bottom line," Opp. at 38, is insufficient to impute scienter on Mr. Riley and Mr. Bissell. *Nektar*, 2020 WL 3962004, at *13 ("simply alleging" that company's partnership "was crucial does not give rise to a strong inference of scienter"); *see also In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1063-64 (9th Cir. 2014) (rejecting plaintiffs' argument that core operations doctrine should be applied when concerning the company's "flagship" product, "absent some additional allegation of specific information conveyed to management and related to the fraud or other allegations supporting scienter"); Mot. at 31-32. Plaintiff's flimsy attempt to connect statements Mr. Bissell made on August 12, 2021 with a single CW's attendance at an all-hands meeting in December of 2022 does nothing to strengthen Plaintiff's scienter argument because CW1's accounts fail to demonstrate "contemporaneous statements that show knowledge on the part of the individual defendants." *In re Solarcity Corp. Sec. Litig.*, 274 F.

Supp. 3d 972, 1009 (N.D. Cal. 2017); Mot. at 27–28. The core operations doctrine is rarely applied, and Plaintiff has not offered any reason to do so here.

### E. Holistic Review Does Not Cure Deficiencies

Finally, Plaintiff argues that his deficient allegations are somehow rendered sufficient when lumped together. This is not so. "[A] collection of primarily vague allegations are insufficient to support a cogent inference of scienter." *Morrice*, 2009 WL 10668446, at *12. Even if "the whole is indeed greater than the sum of its parts, the facts pled do not give rise to a 'strong inference' of scienter that is as compelling as plausible innocent explanations." *Oklahoma Firefighters Pension & Ret. Sys. v. IXIA*, 50 F. Supp. 3d 1328, 1368 (C.D. Cal. 2014).[12]

Plaintiff devotes paragraphs to describing what CW1 was aware of and the issues CW1 knew regarding Origin 2, but he critically does not plead what Mr. Riley or Mr. Bissell knew. *Supra* 14-17; *see* Mot. at 28-29. Even taking everything that Plaintiff pleads as true, CW1's allegations at best "paint a picture that there were problems with [Origin 2,] and perhaps, given the importance of [Origin 2] to [the Company], that the Individual Defendants were

---

[12] The cases that Plaintiff cites to prove his point are actually indicative of the "high bar for pleading scienter at this stage." *Leventhal v. Chegg, Inc.*, 2024 WL 924484, at *8 (N.D. Cal. Mar. 4, 2024). In *BioMarin*, Defendants touted "a good relationship with the FDA" when there was "silence from the FDA," which they admitted after the Class Period and "defendants' sale of stocks help[ed] contribute to an inference of scienter." *In re BioMarin Pharm. Inc. Sec. Litig.*, 2022 WL 164299, at *13-14 (N.D. Cal. Jan. 6, 2022). In *Chegg*, plaintiffs provided testimony of at least 7 former employees, and "pres[ented] evidence of the various reports sent to Chegg by universities and faculty members about rampant cheating on the platform." *Chegg*, 2024 WL 924484, at *7-8. Lastly, in *Scheller*, CW5 met with individual defendants and at least 8 CWs testifying to similar allegations. *Scheller*, 2020 WL 5500422, at *9.

DEFENDANTS' REPLY ISO MTD          -21-
CASE NO. 2:23-cv-01816-WBS-JDP

generally aware that issues existed. The allegations go no further, though. Because the complaint is lacking allegations describing with particularity the information that Individual Defendants received, or the documents that they had access to, the Court cannot infer that any Individual Defendants knew . . . or were deliberately reckless in not realizing." *Intel*, 2023 WL 2767779, at *25; *see also Ferraro Fam.*, 501 F. Supp. 3d at 766.

Plaintiff claims that Defendants fail to provide "any viable non-fraudulent inference," Opp. at 41, but this is simply not true, as is evidenced throughout Defendants' briefs. As Mr. Bissell has explained, Origin only obtained results out of the "black box" of FEL 2 in July of 2023. Mot. at 6; *supra* 5. In reality, there was no way that Origin would have known that there would be delays given the FEL 2 process was completed by an outside engineering firm. *Supra* 11. As for the Company's partnership with Avantium, this was built on a series of agreements, with the licensing agreement being one part of the partnership. *Supra* 17-18; *see* Mot. at 29. Lastly, the PepsiCo offtake agreement provided for the production of both PX and FDCA. *Supra* 18-19; see Mot. at 30-31.

Plaintiff asks the Court to take inferential leaps in order to conjure up a theory of scienter that falls short of the PSLRA's heightened pleading standard. "Even viewed holistically," Plaintiff's theory of scienter "is not compelling on the face of the pleading." *IXIA*, 50 F. Supp. 3d at 1369.

## III. PLAINTIFF'S REWRITTEN ALLEGATIONS STILL DO NOT PLEAD LOSS CAUSATION

Plaintiff's belated attempt to rewrite his own allegations does not remedy his failure to allege loss causation. Because Plaintiff fails to plead loss causation, his claims should be

dismissed.

### A. Plaintiff Cannot Plead with Particularity, so He Incorrectly Lowers the Pleading Standard

In *Oregon Public Employees Retirement Fund v. Apollo Group Inc.*, the Ninth Circuit held, as a matter of first impression, "that Rule 9(b) applies to all elements of a securities fraud action, including loss causation." 774 F.3d 598, 605 (9th Cir. 2014). Despite this clear statement, Plaintiff misleadingly cites case law *predating* the Ninth Circuit's decision in *Apollo Group* in an attempt to persuade this Court that only "notice" pleading applies to his loss causation claims. *See* Opp. at 43 (citing *Metzler v. Corinthian*, 540 F.3d 1049, 1062 (9th Cir. 2008); *In re Daou Sys., Inc.*, 411 F.3d 1006, 1025-26 (9th Cir. 2005); and *Loos v. Immersion Corp.*, 762 F.3d 880, 887 (9th Cir. 2014)).[13] Even if this lower standard applied (which it does not), Plaintiff's claims fail to allege any corrective disclosure or revelation of falsity.

### B. None of the "Corrective Disclosures" Revealed Falsity

Plaintiff fails to plead with particularity how Origin's August 2023 announcement that Origin 2 would be delayed and would focus on FDCA production revealed any prior statement had been false. *See* Mot. at 34-35. The Opposition fails to remedy this. It cannot show how this announcement revealed a fraudulent scheme or rendered false statements about Origin's continuing progress, product development, and strategic partnerships (among other topics). *See* Mot. at 34-35. Even if the August 2023 announcement

---

[13] Plaintiff's sole post-*Apollo Group* case did not discuss whether Rule 9(b) or notice pleading applied to loss causation, but rather narrowly focused on whether mere announcement of an investigation could constitute a corrective disclosure. *See Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1209-10 (9th Cir. 2016). There is no such investigation here.

DEFENDANTS' REPLY ISO MTD                    -23-
CASE NO. 2:23-cv-01816-WBS-JDP

"had a negative effect on [Origin] stock, [it] did not have a *corrective* effect on any prior misrepresentation." *Ambow*, 2014 WL 523166, at *7. Simply alleging that Origin's stock price fell following the August 2023 announcement is not sufficient to plead securities fraud. "Indeed, any other conclusion would convert the security laws into nothing more than an insurance policy for investors, allowing investors to recuperate losses in the stock market without ever claiming that the fraudulent scheme was disclosed to the market and thus caused those losses." *Id.* at *9.

### C. Plaintiff Misstates the Law to Salvage His Corrective Disclosures

Plaintiff urges the Court to ignore that Origin had already disclosed all the purportedly-hidden information. *See* Opp. at 46–47. Plaintiff misstates the law. It is axiomatic that, "[i]n general, a disclosure is not 'corrective' if it contains information derived entirely from public filings and other publicly available sources of which the stock market was presumed to be aware." *Grigsby v. BofI Holding, Inc.*, 979 F.3d 1198, 1205 (9th Cir. 2020). "Because publicly available information in an efficient market is generally reflected in the price of a security, the disclosure of confirmatory information——or information already known by the market——will not cause a change in stock price." *Id.*

Plaintiff ignores entirely the fact that Origin disclosed in February 2023 that its "sales team shifted its focus from active marketing of PET towards higher margin products such as carbon black and advanced CMF-derived products including FDCA and PEF." Ex. 12 at 3; Mot. at 35. Similarly, Plaintiff ignores that Origin had warned from 2021 onwards that construction of Origin 2 may be delayed, Ex. 4 at 44, and told investors to expect "an update on

new product offerings and construction plans for the Origin 2 plant in mid-2023." ¶ 113; Mot. at 35-36; *see City of Pontiac Gen. Emps. Ret. Sys. v. First Solar Inc.*, 2023 WL 155861, at *5 (D. Ariz. Jan. 10, 2023) (information "cannot constitute a corrective disclosure" where the company "previously disclosed that very information on [a prior] earnings call").[14]

Plaintiff's quibble that Origin did not re-file the original PepsiCo agreement with the SEC alongside its amendment is similarly irrelevant. Opp. at 46-47. Origin publicly filed both the original and amended agreements with the SEC, where they are easily accessible by any investor. Mot. at 36. In an efficient market, such as Plaintiff alleges here, ¶ 226, that publicly available information would have been known to the market and incorporated into the stock price. *See In re Blue Earth, Inc. Sec. Class Action Litig.*, 2015 WL 12001274, at *2 (C.D. Cal. Nov. 3, 2015). Plaintiff does not allege that the amendment was a corrective disclosure or challenge the materiality of any alleged misstatements, so each of his cases is inapposite.[15] But even if it was a corrective disclosure, an SEC filing could hardly be described as "so hidden that the market cannot access or understand it and react accordingly." *Genius Brands*, 97 F.4th at 1186.

---

[14] Plaintiff's complaint that Origin did not re-file the original PepsiCo agreement is irrelevant. Opp. at 46-47. Plaintiff does not argue that Origin was required to re-file that agreement alongside its amendment.

[15] *See In re Genius Brands Int'l, Inc. Sec. Litig.*, 97 F.4th 1171 (9th Cir. 2024) (dismissing allegation that a "handful of" mentions of a TV show among "hundreds of listings" on a third-party website was a corrective disclosure); *Karinski v. Stamps.com, Inc.*, 2020 WL 6572660, at *7 (C.D. Cal. Nov. 9, 2020) (dismissing materiality arguments); *Bos. Ret. Sys. v. Uber Techs., Inc.*, 2020 WL 4569846, *6 (N.D. Cal. Aug. 7, 2020) (same); *Pardi v. Tricida, Inc.*, 2022 WL 3018144 (N.D. Cal. July 29, 2022) (same).

### D. The Opposition Tries to Simplify Its Loss Causation Theory by Changing and Abandoning Allegations

Having failed to plead any corrective disclosure with particularity, Plaintiff instead rewrites his allegations. For example, Plaintiff now argues that he never alleged that "updates on financing assessments" were misstatements. Opp. at 45. Yet Plaintiff alleges that a statement that "[t]he Company continues to make progress on . . . financing for Origin 2," ¶ 113, was misleading because, among other things, the statements communicated that Origin 2 "was on track to open on time . . . and within the forecasted cost of $1.07 billion." ¶ 119; *see also* ¶¶ 117, 118.

Similarly, Plaintiff now denies that he alleged that Mr. Bissell's statement about "the pride that management felt in Origin's teams and achievements" was misleading. Opp. at 45. But the Amended Complaint plainly alleges that Mr. Bissell's statement that he was "proud of how our team continues to execute against our Origin 1 and Origin 2 milestones," ¶ 129, was "materially false and misleading" because it failed to disclose purported issues with Origin 2's progress. ¶ 133 (stating that "Defendants' statements set forth in ¶¶ 127—130" were allegedly false and misleading). Even Plaintiff's Opposition cites this statement as a purported misstatement in its attempt to argue falsity. *See* Opp. at 22. To the extent Plaintiff now points to a discrepancy about what he alleged to be misleading, that is solely a result of his failure to plead loss causation with particularity. Mot. at 32-33.[16]

---

[16] Similarly, Plaintiff attempts to sweep away his overbroad allegations by arguing that they are merely "factual context" and accuses Defendants of "wrongly cit[ing]" several paragraphs that Plaintiff suggests do not contain any alleged misstatements. Opp. 45 & n.30. Again, Plaintiff's own Opposition contradicts him. He argues that the Amended Complaint "pinpoint[s]" the purported misstatements and cites ten paragraphs that in turn refer to

DEFENDANTS' REPLY ISO MTD                    -26-
CASE NO. 2:23-cv-01816-WBS-JDP

**CONCLUSION[17]**

Defendants respectfully request that the Complaint be dismissed with prejudice.

Dated: July 1, 2024          FRESHFIELDS BRUCKHAUS DERINGER US LLP


                             */s/Boris Feldman*
                             BORIS FELDMAN
                             DORU GAVRIL
                             CARL HUDSON
                             REBECCA LOCKERT
                             855 Main Street
                             Redwood City, CA 94063
                             Telephone: (650) 618-9250
                             boris.feldman@freshfields.com
                             doru.gavril@freshfields.com
                             carl.hudson@freshfields.com
                             rebecca.lockert@freshfields.com

                             *Attorneys for Defendants Origin*
                             *Materials, Inc., Richard J. Riley,*
                             *and John Bissell*

---

*exactly* the paragraphs that he accuses Defendants of "wrongly cit[ing.]" *Id.; see* AC ¶¶ 121 (citing ¶¶ 113–18), 122 (citing ¶ 116), 124 (citing ¶ 123), 126 (citing ¶ 125), 133 (citing ¶¶ 127–30), 135 (citing ¶ 134), 138 (citing ¶¶ 136–37), 140 (citing ¶ 139), 144 (citing ¶¶ 141–43), ¶ 148 (citing ¶¶ 145–47). This again highlights the lack of particularity in Plaintiff's pleading. Mot. at 32-33.

[17] Plaintiff has abandoned his scheme liability claim by conceding that it is duplicative of his Rule 10b-5(b) analysis and failing to address any of Defendants' arguments. ¶ 47 n.31. Plaintiff's failure to actually address Defendants' arguments is in keeping with his side-stepping Defendants' Motion throughout.