# EXHIBIT 14

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

In re Origin Materials,
Inc. Securities Litigation
_____/

All Actions Consolidated           Sacramento, California
From:                              No. 2:23-cv-01816
Antonio F. Soto,                   Tue., Oct. 15, 2024
individually and on behalf         1:40 p.m.
of all others similarly
situated,
              Plaintiffs,
v.
Origin Materials, Inc.,
Richard J. Riley, and John
Bissell,
              Defendants.
_____/

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE WILLIAM B. SHUBB, SENIOR JUDGE
---oOo---

APPEARANCES:

  For the Plaintiffs:              Bernstein Liebhard, LLP
                                   10 East 40th Street
                                   New York, NY  10016
                                   By:  Michael Stephen Bigin
                                   Pro Hac Vice


  For the Defendants:              Freshfields US, LLP
                                   855 Main Street
                                   Redwood City, CA  94063
                                   By: Boris Feldman
                                   Doru Gavril
                                   Attorneys at Law

  Official Court Reporter:         Kimberly M. Bennett,
                                   CSR, RPR, RMR, CRR
                                   501 I Street
                                   Sacramento, CA 95814

  Proceedings recorded by mechanical stenography, transcript
  produced by computer-aided transcription

company, that he is finding that the product is not scaling. They're not able to commercial -- make this on a commercial scale, PX/PET, it's fallen.  From what I understand, there is different chemical problems with that.  You're not able to use it for bottles anymore because -- because of various -- various issues of the chemistry.

So the reason why -- I'll get to your point.  I can see -- the reason why we think this is happening over the five months is because they don't want to disclose the truth that they have no plan.  If they disclose in March that they have no plan to develop anything at Origin 2, because the plan was PX/PET, and maybe they were exploring adding some other things, the stock would have dropped to zero.

So what they did is a play for time.  You keep --

THE COURT:  Do you allege that they had no plan for Origin No. 2 or that they were trying to figure out a new plan?

MR. BIGIN:  I just -- just making sure our allegations -- they were trying to figure out a new plan in that, you know, we have allegation at the end of the class period, which we accept, that there is a -- what they call this black box that the engineering group is spending thousands and thousands of hours on trying to figure out what to make.  They don't know what to make.

So what they need to do is to keep the stock high so that they can announce good news and bad news.  It's a common thing

that companies do in order to --

THE COURT:  It's common.  But they're going to announce some good news and bad news.  What's that going to do?  If they're not selling new stock, what's the difference?

MR. BIGIN:  So what's it doing?  It's keeping that stock afloat.  So that there is a 66 percent loss versus a 90 percent loss.

I mean, this company, you know -- this is -- this idea of insider trading being a requirement or prerequisite just -- just isn't -- isn't fair and isn't smart.

You know, we have defendants here, they're not going to -- this isn't a company that's trying to cash out and make a quick buck.  This is a long game.  They're trying to -- you know, I agree, they are trying to do something good for the environment, but when things are falling apart they're also making bad decisions and hiding the facts from investors, which is causing those -- that stock price to stay high and for our investors to purchase that stock without having a true value of the company.

THE COURT:  Let me shift to something that's been bothering me from the beginning and I want you to get there.

It's the way you allege that CW No. 1 learned something, and you didn't say how he learned it, you didn't say where he heard it, you didn't say who said it.  But when you're talking about the December 2022 meetings, you do talk about what Riley

and Bissell said. But when you start to talk about the March 2023 conversations, it's CW No. 1 learned this, learned that.

And to me -- what I said to counsel here is that sounds like a lawyer talking, trying to get around what he actually heard and reach your own conclusions that he learned this, and we don't know how he learned it. You know, he may have just divined it from something else he heard.

MR. BIGIN: Yes. So, Your Honor, fair -- fair point. Maybe a poor choice of words there. I think what we were trying to --

THE COURT: It may be the smartest choice that you could make. That's so we don't know until you tell us what it is he actually heard. What Bissell actually said. What Riley actually said. When? Where? Who was present?

MR. BIGIN: So, Your Honor, we're telling you -- telling the Court that, you know, he's learning it at these meetings. We're telling you that he's learned by March of 2023. We're -- they're on Fridays. I mean, they're discussing the --

THE COURT: You're still hedging. You are just telling me what he learned.

You know, I learn a lot of things that aren't true. I make some mistakes, I make some inferences about what people say, and then I tell you, Well, that's what I learned. You know, I

24

learned that this certain political candidate never really intended to reduce my taxes.  And I want to know how I learned that.  And did he say that or did she say that?  That's -- that's -- that's a big difference.

MR. BIGIN:  So, Your Honor, for pleading purposes, though, you know, he's learning these facts at meetings with the co-CEOs of the company.

The co-CEOs of the company are setting the vision for Origin, setting the vision for Origin 2, what that plan is.  For them, this is --

THE COURT:  For pleading purposes in other cases you may be right, but for pleading under the PSLRA, I don't think that's the law.

MR. BIGIN:  Well -- so, you know, what we need to do is we need to be able -- to be able to plead facts that show that it's certainly plausible that they would know that there was -- that they -- that they were not creating the PX --

THE COURT:  I don't know that that plausible standard applies.  I'll hear from both of you on this, but I'm understanding that it's a much more heightened pleading standard.

MR. BIGIN:  So it's absolutely a heightened pleading standard.  It's absolutely that.  You know, we're subject to 8(a), 9(b), PSLRA.

Once you get past the PS -- the PSLRA piece is to put forth

particularized facts showing why that statement is false and misleading. And the particularized facts that show why this statement is false and misleading are coming from CW1, who's communicating what he's learned through his experience at these meetings with the CEOs.

I mean, this is a different case from many of the cases defendants cite and that you'll look at because very rare that plaintiff has a confidential source, a whistleblower, who comes forward and gives information where he's at the meeting with the CEOs, the decision-makers of the company, and then is communicating that -- excuse me -- communicating that in an allegation saying that they knew that they were not going forward with a type of plant, PX/PET, in March.

THE COURT: What somebody knew is always a state of mind. When we instruct the jury we say, we can never open up somebody's head and look inside what they're thinking.

He says they knew something. Okay. We never can put on evidence of what somebody knew, but we can put on evidence of what they said, and what they did, from which you can infer what they knew. You don't have that here. You just have him saying, I learned that they knew.

MR. BIGIN: So with the information that we have, that he learned it, how he learned it, by going through these meetings, getting from e-mails, being in the right place at the right time, knowing this information --

Thank you, Your Honor.

THE COURT:  Thank you.  I'm not sure I'll get to this right away.  If I get to it right away, it will come out in the next couple of days.  If not, it will take at least a couple of weeks for me to get you the decision on this.

MR. FELDMAN:  Thank you, Your Honor.

MR. BIGIN:  Thank you, Your Honor.

(Proceedings adjourned, 2:39 p.m.)

---oOo---

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


/s/ Kimberly M. Bennett
KIMBERLY M. BENNETT
CSR No. 8953, RPR, CRR, RMR

KIMBERLY BENNETT, OFFICIAL COURT REPORTER, USDC