# EXHIBIT 18



| 104TH CONGRESS<br>*1st Session* | HOUSE OF REPRESENTATIVES | REPORT<br>104- 369 |
|---|---|---|

## SECURITIES LITIGATION REFORM

NOVEMBER 28, 1995.- Ordered to be printed

Mr. BLILEY, from the committee of conference,
submitted the following

## CONFERENCE REPORT

[To accompany H.R. 1058]

The committee of conference on the disagreeing votes of the two Houses on the amendments of the Senate to the bill (H.R. 1058), to reform Federal securities litigation, and for other purposes, having met, after full and free conference, have agreed to recommend and do recommend to their respective Houses as follows:

That the House recede from its disagreement to the amendment of the Senate to the text of the bill and agree to the same with an amendment as follows:

In lieu of the matter proposed to be inserted by the Senate amendment, insert the following:

### SECTION 1. SHORT TITLE; TABLE OF CONTENTS.

(a) SHORT TITLE.- This Act may be cited as the "Private Securities Litigation Reform Act of 1995".

(b) TABLE OF CONTENTS.- The table of contents for this Act is as follows:

Sec. 1. Short title; table of contents.

#### TITLE I- REDUCTION OF ABUSIVE LITIGATION

Sec. 101. Private securities litigation reform.
Sec. 102. Safe harbor for forward-looking statements.
Sec. 103. Elimination of certain abusive practices.
Sec. 104. Authority of Commission to prosecute aiding and abetting.
Sec. 105. Loss causation.
Sec. 106. Study and report on protections for senior citizens and qualified retirement plans.
Sec. 107. Amendment to Racketeer Influenced and Corrupt Organizations Act.
Sec. 108. Applicability.

#### TITLE II- REDUCTION OF COERCIVE SETTLEMENTS

Sec. 201. Proportionate liability.

29- 006

2

*Sec. 203. Applicability.*
*Sec. 204. Rule of construction.*

*TITLE III- AUDITOR DISCLOSURE OF CORPORATE FRAUD*

*Sec. 301. Fraud detection and disclosure.*

# TITLE I- REDUCTION OF ABUSIVE LITIGATION

**SEC. 101. PRIVATE SECURITIES LITIGATION REFORM.**

(a) SECURITIES ACT OF 1933.- Title I of the Securities Act of 1933 (15 U.S.C. 77a et seq.) is amended by adding at the end the following new section:

**"SEC. 27. PRIVATE SECURITIES LITIGATION.**

"(a) PRIVATE CLASS ACTIONS.-

"(1) IN GENERAL.- The provisions of this subsection shall apply to each private action arising under this title that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure.

"(2) CERTIFICATION FILED WITH COMPLAINT.-

"(A) IN GENERAL.- Each plaintiff seeking to serve as a representative party on behalf of a class shall provide a sworn certification, which shall be personally signed by such plaintiff and filed with the complaint, that-

"(i) states that the plaintiff has reviewed the complaint and authorized its filing;

"(ii) states that the plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under this title;

"(iii) states that the plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary;

"(iv) sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint;

"(v) identifies any other action under this title, filed during the 3-year period preceding the date on which the certification is signed by the plaintiff, in which the plaintiff has sought to serve, or served, as a representative party on behalf of a class; and

"(vi) states that the plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond the plaintiff's pro rata share of any recovery, except as ordered or approved by the court in accordance with paragraph (4).

"(B) NONWAIVER OF ATTORNEY-CLIENT PRIVILEGE.- The certification filed pursuant to subparagraph (A) shall not be construed to be a waiver of the attorney-client privilege.

"(3) APPOINTMENT OF LEAD PLAINTIFF.-

"(A) EARLY NOTICE TO CLASS MEMBERS.-

42

## DAMAGES

*Written interrogatories*

In an action to recover money damages, the Conference Committee requires the court to submit written interrogatories to the jury on the issue of defendant's state of mind at the time of the violation. In expressly providing for certain interrogatories, the Committee does not intend to otherwise prohibit or discourage the submission of interrogatories concerning the mental state or relative fault of the plaintiff and of persons who could have been joined as defendants. For example, interrogatories may be appropriate in contribution proceedings among defendants or in computing liability when some of the defendants have entered into settlement with the plaintiff prior to verdict or judgment.

*Limitation on "windfall" damages*

The current method of calculating damages in 1934 Act securities fraud cases is complex and uncertain. As a result, there are often substantial variations in the damages calculated by the defendants and the plaintiffs. Typically, in an action involving a fraudulent misstatement or omission, the investor's damages are presumed to be the difference between the price the investor paid for the security and the price of the security on the day the corrective information gets disseminated to the market.

Between the time a misrepresentation is made and the time the market receives corrected information, however, the price of the security may rise or fall for reasons unrelated to the alleged fraud. According to an analysis provided to the Senate Securities Subcommittee, on average, damages in securities litigation comprise approximately 27.7%[24] of market loss. Calculating damages based on the date corrective information is disclosed may end up substantially overestimating plaintiff's damages.[25] The Conference Committee intends to rectify the uncertainty in calculating damages in new section 21D(e) of the 1934 Act by providing a "look back" period, thereby limiting damages to those losses caused by the fraud and not by other market conditions.

This provision requires that plaintiff's damages be calculated based on the "mean trading price" of the security. This calculation takes into account the value of the security on the date plaintiff originally bought or sold the security and the value of the security during the 90-day period after dissemination of any information correcting the misleading statement or omission. If the plaintiff sells those securities or repurchases the subject securities during the 90-day period, damages will be calculated based on the price of that transaction and the value of the security immediately after the dissemination of corrective information.

### SAFE HARBOR FOR FORWARD-LOOKING STATEMENTS

*The muzzling effect of abusive securities litigation*

Abusive litigation severely affects the willingness of corporate managers to disclose information to the marketplace. Former SEC Chairman Richard Breeden testified in a Senate Securities Subcommittee hearing on this subject: "Shareholders are also damaged

43

due to the chilling effect of the current system on the robustness and candor of disclosure. . . . Understanding a company's own assessment of its future potential would be among the most valuable information shareholders and potential investors could have about a firm."[26]

Fear that inaccurate projections will trigger the filing of securities class action lawsuit has muzzled corporate management. One study found that over two-thirds of venture capital firms were reluctant to discuss their performance with analysts or the public because of the threat of litigation.[27] Anecdotal evidence similarly indicates corporate counsel advise clients to say as little as possible, because "legions of lawyers scrub required filings to ensure that disclosures are as milquetoast as possible, so as to provide no grist for the litigation mill."[28]

Technology companies- because of the volatility of their stock prices- are particularly vulnerable to securities fraud lawsuits when projections do not materialize. If a company fails to satisfy its announced earnings projections- perhaps because of changes in the economy or the timing of an order or new product- the company is likely to face a lawsuit.

*A statutory safe harbor for forward-looking statements*

The Conference Committee has adopted a statutory "safe harbor" to enhance market efficiency by encouraging companies to disclose forward-looking information. This provision adds a new section 27A to the 1933 Act and a new section 21E of the 1934 Act which protects from liability in private lawsuits certain "forward-looking" statements made by persons specified in the legislation.[29]

The Conference Committee has crafted a safe harbor that differs from the safe harbor provisions in the House and Senate passed bills. The Conference Committee safe harbor, like the Senate safe harbor, is based on aspects of SEC Rule 175 and the judicial created "bespeaks caution" doctrine. It is a bifurcated safe harbor that permits greater flexibility to those who may avail themselves of safe harbor protection. There is also a special safe harbor for issuers who make oral forward-looking statements.

The first prong of the safe harbor protects a written or oral forward-looking statement that is: (i) identified as forward-looking, and (ii) accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those projected in the statement.

Under this first prong of the safe harbor, boilerplate warnings will not suffice as meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those projected in the statement. The cautionary statements must convey substantive information about factors that realistically could cause results to differ materially from those projected in the forward-looking statement, such as, for example, information about the issuer's business.

As part of the analysis of what constitutes a meaningful cautionary statement, courts should consider the factors identified in the statements. "Important" factors means the stated factors identified in the cautionary statement must be relevant to the projec-

44

tion and must be of a nature that the factor or factors could actually affect whether the forward-looking statement is realized.

The Conference Committee expects that the cautionary statements identify important factors that could cause results to differ materially- but not all factors. Failure to include the particular factor that ultimately causes the forward-looking statement not to come true will not mean that the statement is not protected by the safe harbor. The Conference Committee specifies that the cautionary statements identify "important" factors to provide guidance to issuers and not to provide an opportunity for plaintiff counsel to conduct discovery on what factors were known to the issuer at the time the forward-looking statement was made.

The use of the words "meaningful" and "important factors" are intended to provide a standard for the types of cautionary statements upon which a court may, where appropriate, decide a motion to dismiss, without examining the state of mind of the defendant. The first prong of the safe harbor requires courts to examine only the cautionary statement accompanying the forward-looking statement. Courts should not examine the state of mind of the person making the statement.

Courts may continue to find a forward-looking statement immaterial- and thus not actionable under the 1933 Act and the 1934 Act- on other grounds. To clarify this point, the Conference Committee includes language in the safe harbor provision that no liability attaches to forward-looking statements that are "immaterial."

The safe harbor seeks to provide certainty that forward-looking statements will not be actionable by private parties under certain circumstances. Forward-looking statements will have safe harbor protection if they are accompanied by a meaningful cautionary statement. A cautionary statement that misstates historical facts is not covered by the Safe harbor, it is not sufficient, however, in a civil action to allege merely that a cautionary statement misstates historical facts. The plaintiff must plead with particularity all facts giving rise to a strong inference of a material misstatement in the cautionary statement to survive a motion to dismiss.

The second prong of the safe harbor provides an alternative analysis. This safe harbor also applies to both written and oral forward-looking statements. Instead of examining the forward-looking and cautionary statements, this prong of the safe harbor focuses on the state of mind of the person making the forward-looking statement. A person or business entity will not be liable in a private lawsuit for a forward-looking statement unless a plaintiff proves that person or business entity made a false or misleading forward-looking statement with actual knowledge that it was false or misleading. The Conference Committee intends for this alternative prong of the safe harbor to apply if the plaintiff fails to prove the forward-looking statement (1) if made by a natural person, was made with the actual knowledge by that person that the statement was false or misleading; or (2) if made by a business entity, was made by or with the approval of an executive officer of the entity with actual knowledge by that officer that the statement was false or misleading.

45

The Conference Committee recognizes that, under certain circumstances, it may be unwieldy to make oral forward-looking statements relying on the first prong of the safe harbor. Companies who want to make a brief announcement of earnings or a new product would first have to identify the statement as forward-looking and then provide cautionary statements identifying important factors that could cause results to differ materially from those projected in the statement. As a result, the Conference Committee has provided for an optional, more flexible rule for oral forward-looking statements that will facilitate these types of oral communications by an issuer while still providing to the public information it would have received if the forward-looking statement was written. The Conference Committee intends to limit this oral safe harbor to issuers or the officers, directors, or employees of the issuer acting on the issuer's behalf.

This legislation permits covered issuers, or persons acting on the issuer's behalf, to make oral forward-looking statements within the safe harbor. The person making the forward-looking statement must identify the statement as a forward-looking statement and state that results may differ materially from those projected in the statement. The person must also identify a "readily available" written document that contains factors that could cause results to differ materially. The written information identified by the person making the forward-looking statement must qualify as a "cautionary statement" under the first prong of the safe harbor (i.e., it must be a meaningful cautionary statement or statements that identify important factors that could cause actual results to differ materially from those projected in the forward-looking statement.) For purposes of this provision, "readily available" information refers to SEC filed documents, annual reports and other widely disseminated materials, such as press releases.

### Who and what receives safe harbor protection

The safe harbor provision protects written and oral forward-looking statements made by issuers and certain persons retained or acting on behalf of the issuer. The Conference Committee intends the statutory safe harbor protection to make more information about a company's future plans available to investors and the public. The safe harbor covers underwriters, but only insofar as the underwriters provide forward looking information that is based on or "derived from" information provided by the issuer. Because underwriters have what is effectively an adversarial relationship with issuers in performing due diligence, the use of the term "derived from" affords underwriters some latitude so that they may disclose adverse information that the issuer did not necessarily "provide." The Conference Committee does not intend the safe harbor to cover forward-looking information made in connection with a broker's sales practices.

The Conference Committee adopts the SEC's present definition, as set forth in Rule 175, of forward-looking information, with certain additions and clarifying changes. The definition covers: (i) certain financial items, including projections of revenues, income and earnings, capital expenditures, dividends, and capital structure; (ii) management's statement of future business plans and ob-

46

jectives, including with respect to its products or services; and (iii) certain statements made in SEC required disclosures, including management's discussion and analysis and results of operations; and (iv) any statement disclosing the assumptions underlying the forward-looking statement.

The Conference Committee has determined that the statutory safe harbor should not apply to certain forward-looking statements. Thus, the statutory safe harbor does not protect forward-looking statements: (1) included in financial statements prepared in accordance with generally accepted accounting principles; (2) contained in an initial public offering registration statement; (3) made in connection with a tender offer; (4) made in connection with a partnership, limited liability company or direct participation program offering; or (5) made in beneficial ownership disclosure statements filed with the SEC under Section 13(d) of the 1934 Act.

At this time, the Conference Committee recognizes that certain types of transactions and issuers may not be suitable for inclusion in a statutory safe harbor absent some experience with the statute. Although this legislation restricts partnerships, limited liability companies and direct participation programs from safe harbor protection, the Conference Committee expects the SEC to consider expanding the safe harbor to cover these entities where appropriate. The legislation authorizes the SEC to adopt exemptive rules or grant exemptive orders to those entities for whom a safe harbor should be available. The SEC should consider granting exemptive orders for established and reputable entities who are excluded from the safe harbor.

Moreover, the Committee has determined to extend the statutory safe harbor only to forward-looking information of certain established issuers subject to the reporting requirements of section 13(a) or section 15(d) of the 1934 Act. Except as provided by SEC rule or regulation, the safe harbor does not extend to an issuer who: (a) during the three year period preceding the date on which the statement was first made, has been convicted of a felony or misdemeanor described in clauses (i) through (iv) of Section 15(b)(4) or is the subject of a decree or order involving a violation of the securities laws; (b) makes the statement in connection with a "blank check" securities offering, "rollup transaction," or "going private" transaction; or (c) issues penny stock.

The Committee intends for its statutory safe harbor provisions to serve as a starting point and fully expects the SEC to continue its rulemaking proceedings in this area. The SEC should, as appropriate, promulgate rules or regulations to expand the statutory safe harbor by providing additional exemptions from liability or extending its coverage to additional types of information.

This legislation also makes clear that nothing in the safe harbor provision imposes any duty to update forward-looking statements.

The Conference Committee does not intend for the safe harbor provisions to replace the judicial "bespeaks caution" doctrine or to foreclose further development of that doctrine by the courts.

47

*The safe harbor and stay of discovery*

The legislation provides that, on any motion to dismiss the compliant based on the application of the safe harbor, the court shall consider the statements cited in the complaint and statements identified by the defendant in its moving papers, including any cautionary statements accompanying the forward-looking statement that are not subject to material dispute. The applicability of the safe harbor provisions under subsection (c)(1)(B) shall be based on the "actual knowledge" of the defendant and does not depend on the use of cautionary language. The applicability of the safe harbor provisions under subsections (c)(1)(A)(I) and (c)(2) shall be based upon the sufficiency of the cautionary language under those provisions and does not depend on the state of mind of the defendant. In the case of a compliant based on an oral forward-looking statement in which information concerning factors that could cause actual results to differ materially is contained in a "readily available" written document, the court shall consider statements in the readily available written documents.

### INAPPLICABILITY OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) TO PRIVATE SECURITIES ACTIONS.

The SEC has supported removing securities fraud as a predicate offense in a civil action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). SEC Chairman Arthur Levitt testified: "Because the securities laws generally provide adequate remedies for those injured by securities fraud, it is both necessary and unfair to expose defendants in securities cases to the threat of treble damages and other extraordinary remedies provided by RICO." [30]

The Conference Committee amends section 1964(c) of title 18 of the U.S. Code to remove any conduct that would have been actionable as fraud in the purchase or sale of securities as racketeering activity under civil RICO. The Committee intends this amendment to eliminate securities fraud as a predicate offense in a civil RICO action. In addition, the Conference Committee intends that a plaintiff may not plead other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud.

### AUDITOR DISCLOSURE OF CORPORATE FRAUD

The Conference Report requires independent public accountants to adopt certain procedures in connection with their audits and to inform the SEC of illegal acts. These requirements would be carried out in accordance with generally accepted auditing standards for audits of SEC registrants- as modified from time to time by the Commission- on the detection of illegal acts, related party transactions and relationships, and evaluation of an issuer's ability to continue as a going concern.

The Conference Committee does not intend to affect the Commission's authority in areas not specifically addressed by this provision. The Conference Committee expects that the SEC will continue its longstanding practice of looking to the private sector to set

49

[24] The percentages of damages as market losses in the analysis ranged from 7.9% to 100% See Princeton Venture Research, Inc., "PVR Analysis, Securities Law Class Actions, Damages as a Percent of Market Losses," June 15, 1993.

[25] See Lev and de Villiers, "Stock Price Crashes and 10b-5 Damages: A Legal, Economic and Policy Analysis," Standford Law Review, 7, 9-11 (1994).

[26] See testimony of Hon. Richard C. Breeden, former Chairman, SEC, before the Securities Subcommittee of the Senate Committee on Banking, Housing, and Urban Affairs, April 6, 1995.

[27] See testimony of the National Venture Capital Association before the Securities Subcommittee on the Senate Committee on Banking, Housing, and Urban Affairs, March 2, 1995.

[28] See testimony of Hon. J. Carter Beese, former SEC Commissioner, at *id.*

[29] The concept of a safe harbor for forward-looking statements made under certain conditions is not new. In 1979, the SEC promulgated Rule 175 to provide a safe harbor for certain forward looking statements made with a "reasonable basis" and in "good faith." This safe harbor has not provided companies meaningful protection from litigation. In a February 1995 letter to the SEC, a major pension fund stated: "A major failing of the existing safe harbor is that while it may provide theoretical protection to issuers from liability when disclosing projections, it fails to prevent the threat of frivolous lawsuits that arises every time a legitimate projection is not realized." See February 14, 1995 letter from the California Public Employees' Retirement System to the SEC. Courts have also crafted a safe harbor for forward-looking statements or projections accompanied by sufficient cautionary language. The First, Second, Third, Sixth and Ninth Circuits have adopted a version of the "bespeaks caution" doctrine. See, e.g., In re *Worlds of Wonder Securities Litigation*, 35 F. 3d 1407 (9th Cir. 1994); *Rubinstein* v. *Collins*, 20 F.3d 169 (5th Cir. 1994): *Kline* v. *First Western Government Securities, Inc.*, 24 F. 3d 480 (3d Cir. 1994); *Sinay* v. *Lamson & Sessions Company*, 948 F.2d 1037 (6th Cir. 1991); *I. Meyer Pincus & Associates* v. *Oppenheimer & Co., Inc.*, 936 F.2d 759 (2d Cir. 1991); *Romani* v. *Shearson Lehman Hutton*, 929 F.2d 875 (1st Cir. 1991); *Luce* v. *Edelstein*, 802 F.2d 49 (2d Cir. 1986); In re *Donald J. Trump Casino*, 7 F.3d 357 (3d Cir. 1993).

[30] See testimony of Hon. Arthur Levitt, Chairman, SEC, before the Telecommunications and Finance Subcommittee of the House Commerce Committee, February 10, 1995.

From the Committee on Commerce, for consideration of the House bill, and the Senate amendment, and modifications committed to conference:

THOMAS BLILEY,
BILLY TAUZIN,
JACK FIELDS,
CHRIS COX,
RICHARD F. WHITE,
ANNA G. ESHOO,

As additional conferees from the Committee on the Judiciary, for consideration of the House bill, and the Senate amendment, and modifications committed to conference:

BILL MCCOLLUM,
*Managers on the Part of the House.*

ALFONSE D'AMATO,
PHIL GRAMM,
ROBERT F. BENNETT,
ROD GRAMS,
PETE V. DOMENICI,
CHRISTOPHER DODD,
JOHN F. KERRY,
*Managers on the Part of the Senate.*

○