1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10                          ----oo0oo----

11

12   In re ORIGIN MATERIALS, INC.,        No. 2:23-cv-1816-WBS-JDP
     SECURITIES LITIGATION
13                                         CLASS ACTION

14   This Document Relates To:            MEMORANDUM AND ORDER RE: LEAD
                                          PLAINTIFF'S UNOPPOSED MOTION
15   ALL ACTIONS CONSOLIDATED FROM:       FOR PRELIMINARY APPROVAL OF
                                          SETTLEMENT, PRELIMINARY
16   ANTONIO F. SOTO, individually and    APPROVAL OF SETTLEMENT CLASS,
     on behalf of all others similarly    AND APPROVAL TO PROVIDE
17   situated,                            NOTICE TO THE CLASS

18             Plaintiff,

19   v.

20   ORIGIN MATERIALS, INC., RICHARD
     J. RILEY, and JOHN BISSELL,
21
22             Defendants.

23

24                          ----oo0oo----

25             Plaintiffs brought this securities class action against

26   defendants Origin Materials, Inc., John Bissell, and Richard

27   Riley,[1] alleging violations of Sections 10(b) and 20(a) of the
     _____
28        [1]    On February 12, 2025, the court dismissed Richard Riley

                                  1

1  Securities Exchange Act of 1934 (the "Exchange Act") (see 15

2  U.S.C. §§ 78j(b), 78t(a)) and Rule 10b-5 promulgated by the

3  Securities and Exchange Commission (the "SEC") (17 C.F.R. §

4  240.10b-5) on behalf of the putative class of persons and

5  entities that purchased or otherwise acquired Origin securities

6  between February 23, 2023, and August 9, 2023.  (See Docket No.

7  112-3.)  Lead Plaintiff has filed an unopposed motion for

8  preliminary approval of class action settlement, preliminary

9  approval of settlement class, and approval to provide notice to

10  the class.  (See Docket No. 111-1.)

11  I.   Background and Proposed Settlement

12       This is one of four related cases assigned to the

13  undersigned judge that involve claims under the Securities

14  Exchange Act of 1934 against several of the same defendants based

15  on the same subject matter, namely the development and

16  construction of the Origin 2 plant.

17       Origin, which is headquartered in West Sacramento,

18  California, is a Delaware corporation that specializes in

19  manufacturing sustainable materials.  (Docket No. 1 at 2.)

20  Plaintiffs allege that beginning on February 23, 2023, Origin

21  began making or issuing misleading statements both in writing and

22  on earnings calls.  (Id. at 6-10.)  The materially false or

23  misleading statements centered around Origin's announcement or a

24  new capital projects plan that involved the construction of two

25  commercial-style plants: Origin 1 and Origin 2.  (Id.)  According

26  to plaintiffs, Origin continued to release positive updates and

27

28  as a defendant.  (Docket No. 97.)

1    information about the construction timeline for Origin 1 and

2    Origin 2 despite the reality being that both facilities were not

3    on schedule to become operational as expected.  (Id. at 10-13.)

4          Plaintiff Antonio F. Soto brought a class action

5    complaint this securities class action against defendants on

6    August 25, 2023.  (Docket No. 111-1 at 9.)  On October 24, 2023,

7    Todd Frega moved for appointment as Lead Plaintiff for the

8    putative class.  (See Docket No. 20.)   The court subsequently

9    appointed Todd Frega as Lead Plaintiff and approved his selection

10   of Bernstein Liebhard LLP as Lead Counsel for the proposed class.

11   (Docket Nos. 53, 111-1.)

12         The parties propose settlement terms whereby Origin has

13   agreed to pay a Settlement of $9,000,000.00 in order to resolve

14   all claims in the action.  (Docket No. 111-1 at 8.)  The parties

15   affirm that the proposed settlement is the result of arm's-length

16   negotiation by experiences counsel and that the terms proposed

17   represent a "favorable outcome for the proposed Settlement

18   Class."  (Id.)

19   II.  Discussion

20         Federal Rule of Civil Procedure 23(e) provides that

21   "the claims, issues, or defenses of a certified class may be

22   settled . . . only with the court's approval."  Fed. R. Civ. P.

23   23(e) (cleaned up).  This Order is the first step in that process

24   and analyzes only whether the proposed class action settlement

25   deserves preliminary approval.  See Murillo v. Pac. Gas & Elec.

26   Co., 266 F.R.D. 468, 473 (E.D. Cal. 2010) (Shubb, J.).

27         Preliminary approval authorizes the parties to give

28   notice to putative class members of the settlement agreement and

3

1    lays the groundwork for a future fairness hearing, at which the

2    court will hear objections to (1) the treatment of this

3    litigation as a class action and (2) the terms of the settlement.

4    See id.; see also Diaz v. Tr. Territory of Pac. Islands, 876 F.2d

5    1401, 1408 (9th Cir. 1989) (same).  The court will reach a final

6    determination as to whether the parties should be allowed to

7    settle the class action on their proposed terms after that

8    hearing.

9        Where the parties reach a settlement agreement prior to

10   class certification, the court must first assess whether a class

11   exists.  Staton v. Boeing Co., 327 F.3d 938, 952-53 (9th Cir.

12   2003).  "Such attention is of vital importance, for a court asked

13   to certify a settlement class will lack the opportunity, present

14   when a case is litigated, to adjust the class, informed by the

15   proceedings as they unfold."  Id. (cleaned up).  The parties

16   cannot "agree to certify a class that clearly leaves any one

17   requirement unfulfilled."  Murillo, 266 F.R.D. at 473.

18       Consequently, the court cannot blindly rely on the fact

19   that the parties have stipulated that a class exists for purposes

20   of settlement.  See Amchem Prods. Inc. v. Windsor, 521 U.S. 591,

21   621-22 (1997) ("Federal courts, in any case, lack authority to

22   substitute for Rule 23's certification criteria a standard never

23   adopted -- that if a settlement is 'fair,' then certification is

24   proper.").

25       "Second, the district court must carefully consider

26   'whether a proposed settlement is fundamentally fair, adequate,

27   and reasonable,' recognizing that 'it is the settlement taken as

28   a whole, rather than the individual component parts, that must be

4

1    examined for overall fairness . . . .'"  Staton, 327 F.3d at 952

2    (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir.

3    1998), abrogated on other grounds by Wal-Mart Stores, Inc. v.

4    Dukes, 564 U.S. 338 (2011)) (cleaned up).

5         A.   Preliminary Class Certification

6              The putative class consists of all persons and entities

7    that purchased Origin Materials' publicly traded securities on

8    the open market of a U.S. stock exchange during "the class

9    period" from March 7, 2023, to November 18, 2024, and who were

10   allegedly damaged by their purchase.  (See Stipulation of

11   Settlement at ¶¶ h, qq (see also Docket No. 111-3 at 7, 14).)  To

12   be certified, the putative class must satisfy the requirements of

13   Federal Rules of Civil Procedure 23(a) and 23(b).  Leyva v.

14   Medline Indus. Inc., 716 F.3d 510, 512 (9th Cir. 2013).

15        1.   Rule 23(a)

16             Rule 23(a) restricts class actions to cases where: "(1)

17   the class is so numerous that joinder of all members is

18   impracticable; (2) there are questions of law or fact common to

19   the class; (3) the claims or defenses of the representative

20   parties are typical of the claims or defenses of the class; and

21   (4) the representative parties will fairly and adequately protect

22   the interests of the class."  See Fed. R. Civ. P. 23(a).

23             a.   Numerosity

24             "Courts have routinely found the numerosity requirement

25   satisfied when the class comprises 40 or more members."  Collins

26   v. Cargill Meat Sols. Corp., 274 F.R.D. 294, 300 (E.D. Cal. 2011)

27   (Wanger, J.).  Here, the size of the proposed class is unknown

28   and could contain thousands of members because Origin securities

1    were actively traded on the Nasdaq and purchased by thousands of

2    investors during the class period.  A putative class with

3    potentially thousands of with members makes joinder clearly

4    impracticable and more than satisfies the numerosity requirement.

5                    b.    Commonality

6           Commonality requires that the class members' claims

7    "depend upon a common contention" that is "capable of classwide

8    resolution -- which means that determination of its truth or

9    falsity will resolve an issue that is central to the validity of

10   each one of the claims in one stroke." Wal-Mart Stores, 564 U.S.

11   at 350.  "All questions of fact and law need not be common to

12   satisfy the rule.  The existence of shared legal issues with

13   divergent factual predicates is sufficient, as is a common core

14   of salient facts coupled with disparate legal remedies within the

15   class." Hanlon, 150 F.3d at 1019-20.  "So long as there is 'even

16   a single common question,' a would-be class can satisfy the

17   commonality requirement of Rule 23(a)(2)." Wang v. Chinese Daily

18   News, Inc., 737 F.3d 538, 544 (9th Cir. 2013) (quoting Wal-Mart

19   Stores, 564 U.S. at 358-59).

20          Here, the claims implicate common questions of law and

21   fact as to whether defendants' "alleged misstatements regarding

22   the Origin 2 timeline were false or misleading, whether

23   Defendants acted with the requisite scienter, and whether

24   economic losses were caused by the alleged fraud," and these

25   lines of inquiry apply equally to all class members.  (Docket No.

26   111-1 at 21.)  All class members purchased an Origin Materials

27   publicly traded security during the class period and allegedly

28   suffered damages as a result of their purchase(s).  (Id.)  As a

6

1   result, the class members share several common factual questions

2   surrounding the circumstances of their Origin Materials

3   securities purchases during the class period.  (Id. at 21—22.)

4        Generally, "challenging a policy common to the class as

5   a whole creates a common question whose answer is apt to drive

6   the resolution of the litigation." Ontiveros v. Zamora, No.

7   2:08-cv-567 WBS DAD, 2014 WL 3057506, at *5 (E.D. Cal. July 7,

8   2014) (cleaned up).  Even if individual members of the class will

9   be entitled to different amounts of damages because, for

10  instance, defendant employed them for different amounts of time,

11  "the presence of individual damages cannot, by itself, defeat

12  class certification." Leyva, 716 F.3d at 514.  Accordingly,

13  these common questions of law and fact satisfy the commonality

14  requirement.

15             c.   Typicality

16        Typicality requires that plaintiff have claims

17  "reasonably co-extensive with those of absent class members," but

18  their claims do not have to be "substantially identical."

19  Hanlon, 150 F.3d at 1019-20.  The test for typicality "is whether

20  other members have the same or similar injury, whether the action

21  is based on conduct which is not unique to plaintiff, and whether

22  other class members have been injured by the same course of

23  conduct." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th

24  Cir. 1992).

25        Lead plaintiff's claims are typical of other members of

26  the putative class.  (Docket No. 111-1 at 22.)  Lead plaintiff

27  "purchased the publicly traded Origin securities during the Class

28  Period and claims to have suffered damaged from Defendants'

1   alleged misstatements." (Id.)  Likewise, all other class members

2   similarly purchased publicly traded securities from Origin

3   Materials between March 7, 2023, and November 18, 2024, and were

4   allegedly subject to damages resulting from the same

5   misstatements about the Origin 2 completion timeline.  (Id.)

6   Although the facts might differ for individual class members, the

7   basis for their alleged injuries and the parties purportedly

8   responsible for those injuries are the same.  The proposed class

9   therefore meets the typicality requirement.

10                  d.   Adequacy of Representation

11          To resolve the question of adequacy, the court must

12  consider two factors: (1) whether plaintiff and his counsel have

13  any conflicts of interest with other class members, and (2)

14  whether plaintiff and his counsel will vigorously prosecute the

15  action on behalf of the class.  In re Hyundai & Kia Fuel Econ.

16  Litig., 926 F.3d 539, 566-67 (9th Cir. 2019).

17                  i.   Conflicts of Interest

18          There do not appear to be any conflicts of interest for

19  purposes of preliminary approval.  (See Docket No. 111-1 at 23.)

20  Plaintiff's interests are generally aligned with those of the

21  putative class members, who suffered injuries similar to those

22  suffered by plaintiff.  See Amchem, 521 U.S. at 625-26.

23                  ii.  Vigorous Prosecution

24          The second portion of the adequacy inquiry examines the

25  vigor with which plaintiff and his counsel have pursued the class

26  claims.  "Although there are no fixed standards by which 'vigor'

27  can be assayed, considerations include competency of counsel and,

28  in the context of a settlement-only class, an assessment of the

                                  8

1    rationale for not pursuing further litigation." <u>Hanlon</u>, 150 F.3d
2    at 1021.

3          Here, plaintiff's counsel appear to be experienced
4    shareholder and securities fraud litigators with class action
5    experience which qualifies them to pursue the interests of the
6    class. (<u>See</u> Docket Nos. 111-4 at 183-223, 111-5 at 225-43.)
7    This background, coupled with the work performed thus far,
8    suggest that plaintiff's counsel is well-equipped to handle this
9    case. (<u>See</u> <u>id.</u>)  Further, plaintiff's counsel appear to have
10   conducted a thorough factual investigation and thorough legal
11   research and appears to have fully considered the strengths and
12   weaknesses of this case in deciding to accept the terms of the
13   proposed settlement agreement. (<u>See</u> Docket No. 111-1 at 13.)
14   The court finds no reason to doubt that plaintiff's counsel is
15   well qualified to conduct the proposed litigation and assess the
16   value of the settlement.  Accordingly, the court concludes that
17   Rule 23(a)'s adequacy requirement is satisfied for the purpose of
18   preliminary approval.

19          2.   Rule 23(a)

20          After fulfilling the threshold requirements of Rule
21   23(a), the proposed class must satisfy the requirements of one of
22   the three subdivisions of Rule 23(b).  <u>Leyva</u>, 716 F.3d at 512.
23   Plaintiff seeks class certification under Rule 23(b)(3), which
24   provides that a class action may be maintained only if (1) "the
25   court finds that questions of law or fact common to class members
26   predominate over questions affecting only individual members" and
27   (2) "that a class action is superior to other available methods
28   for fairly and efficiently adjudicating the controversy."  Fed.

1    R. Civ. P. 23(b)(3).

2                    a.    Predominance

3              "The predominance analysis under Rule 23(b)(3) focuses

4    on 'the relationship between the common and individual issues' in

5    the case and 'tests whether proposed classes are sufficiently

6    cohesive to warrant adjudication by representation.'"  Wang, 737

7    F.3d at 545 (quoting Hanlon, 150 F.3d at 1022).

8              Here, the claims brought by the proposed settlement

9    class all arise from defendant's alleged practices and policies

10   with respect to their employment.  The class claims thus

11   demonstrate a "common nucleus of facts and potential legal

12   remedies" that can properly be resolved "in a single

13   adjudication."  See Hanlon, 150 F.3d at 1022-23.  Although there

14   are differences in the facts pertaining to individual class

15   members and the amount of injury sustained, such as how long each

16   worked for defendant, there is no indication that those

17   variations are "sufficiently substantive to predominate over the

18   shared claims."  See Murillo, 266 F.R.D. at 476-77 (quoting

19   Hanlon, 150 F.3d at 1022-23).  Accordingly, the court finds

20   common questions of law and fact predominate over questions

21   affecting only individual class members.

22                    b.    Superiority

23             Rule 23(b)(3) sets forth four non-exhaustive factors

24   that courts should consider when examining whether "a class

25   action is superior to other available methods for fairly and

26   efficiently adjudicating the controversy."  Fed. R. Civ. P.

27   23(b)(3).  They are: "(A) the class members' interests in

28   individually controlling the prosecution or defense of separate

                                    10

1   actions; (B) the extent and nature of any litigation concerning

2   the controversy already begun by or against class members; (C)

3   the desirability or undesirability of concentrating the

4   litigation of the claims in the particular forum; and (D) the

5   likely difficulties in managing a class action."  Id.  The

6   parties settled this action prior to certification, making

7   factors (C) and (D) inapplicable.  See Murillo, 266 F.R.D. at

8   477.

9        Rule 23(b)(3) is concerned with the "vindication of the

10  rights of groups of people who individually would be without

11  effective strength to bring their opponents into court."  Amchem,

12  521 U.S. at 616-17.  When, as here, the average class members'

13  individual recovery is likely to be relatively modest, the class

14  members' interests generally favor certification.  Zinser v.

15  Accufix Res. Inst., Inc., 253 F.3d 1180, 1190-91 (9th Cir. 2001).

16  Accordingly, the class action device appears to be the superior

17  method for adjudicating this controversy.

18            3.   Rule 23(c)(2) Notice Requirements

19       If the court certifies a class under Rule 23(b)(3), it

20  "must direct to class members the best notice that is practicable

21  under the circumstances, including individual notice to all

22  members who can be identified through reasonable effort."  Fed.

23  R. Civ. P. 23(c)(2)(B).  Rule 23(c)(2) governs both the form and

24  content of a proposed notice.  See Ravens v. Iftikar, 174 F.R.D.

25  651, 657-58 (N.D. Cal. 1997) (citing Eisen v. Carlisle &

26  Jacquelin, 417 U.S. 156, 172-77 (1974)).  Although that notice

27  must be "reasonably certain to inform the absent members of the

28  plaintiff class," actual notice is not required.  Silber v.

11

1   <u>Mabon</u>, 18 F.3d 1449, 1454-55 (9th Cir. 1994).

2          Plaintiff's counsel has provided the court with a

3   proposed notice to class members.  (<u>See</u> Docket Nos. 111-2, 111-

4   3.)  It explains the proceedings, defines the scope of the class,

5   and explains what the settlement provides and how much each class

6   member can expect to receive in compensation.  (<u>See</u> Docket No.

7   <u>111-3</u> at 74-80.)  Lead Counsel has proposed a four-prong strategy

8   for identifying and giving notice to members of the Settlement

9   Class.  (Docket No. 111-1 at 25.)

10          First, Lead Counsel proposes "mailing or emailing (if

11  the Class Member's email is available) a copy of the Postcard

12  Notice to all potential Settlement Class Members who can

13  reasonably be identified and located."  (<u>Id.</u>)  Prospective Class

14  Members will be identified and located "using information

15  provided by Origin's transfer agent, as well as information

16  provided by third party banks, brokers, and other nominees about

17  their customers who may have eligible purchases."  (<u>Id.</u>)  Second,

18  notice will be provided via the publication of the Summary Notice

19  in <u>Investor's Business Daily</u>, a trade publication where notices

20  of class actions are regularly published.  (<u>Id.</u>)  Third, Lead

21  Counsel intends to "disseminate the Summary Notice on the

22  internet using <u>PR Newswire</u>."  (<u>Id.</u>)  Fourth, the Internet Notice

23  will finally be published both on the Settlement website and on

24  Lead Counsel's website.  (<u>Id.</u>)

25          These notices will further explain the opt-out

26  procedure, the procedure for objecting to the settlement, and the

27  date and location of the final approval hearing.  (<u>See</u> Docket No.

28  111-3 at 95.)  In particular, the internet-based notices will

1  contain information describing the nature of the action; defining

2  the class certified; explaining the various claims, issues, and

3  defenses.  (Docket No. 111-1 at 26.)  The internet notice will

4  further include information explaining the rights of Class

5  Members to enter an appearance at the final Settlement Hearing,

6  or request exclusion from the settlement, and will include

7  instructions for how interested Class Members can exercise their

8  rights.  (Id.)  And it will include an explanation of "the

9  binding effect a class judgment has on members under Rule

10 23(c)(3)" (id.); as well as information about the amount of the

11 settlement, anticipated attorneys' fees, and how the value of

12 individual Class Member settlement awards are calculated, that,

13 in sum, is sufficient to satisfy the separate disclosure

14 requirements mandated under the Private Securities Litigation

15 Reform Act ("PSLRA"), 15 U.S.C. § 78u-4.  (Id. at 25-26.)

16         The content of the proposed notice therefore satisfies

17 Rule 23(c)(2)(B).  See Churchill Vill., L.L.C. v. Gen. Elec., 361

18 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it

19 'generally describes the terms of the settlement in sufficient

20 detail to alert those with adverse viewpoints to investigate and

21 to come forward and be heard.'" (quoting Mendoza v. Tucson Sch.

22 Dist. No. 1, 623 F.2d 1338, 1352 (9th Cir. 1980), abrogated on

23 other grounds by Evans v. Jeff D., 475 U.S. 717, 725-26 n.10

24 (1986))).

25         The parties have selected Strategic Claims Services to

26 serve as the settlement administrator.  (Docket No. 111-3 at ¶

27 7.)  Pursuant to the notice plan, plaintiff's counsel provides

28 that using addresses where available or email addresses in

13

1   conjunction with a list of names provided by defendant, the

2   settlement administrator will send the notice via first class

3   U.S. mail or email to all settlement class members.  (See Docket

4   No. 111-3 at ¶¶ 7a, 7d.)

5          The court cautions counsel that a single mailed or

6   emailed notice is unlikely to suffice.  See Roes 1-2 v. SFBSC

7   Mgmt., LLC, 944 F.3d 1035, 1045-46 (9th Cir. 2019).  Similarly,

8   because there are potentially thousands of Class Members,

9   adequate notice will require robust and effective Class Member

10  identification efforts on the part of Lead Counsel and the

11  Settlement Administrator.  The court thus advises that class

12  counsel undertake additional measures "reasonably calculated,

13  under all the circumstances," to apprise all class members of the

14  proposed settlement.  See id. at 1046-47.

15         Given these considerations, the court will grant the

16  parties' notice plan preliminary approval, notwithstanding its

17  concern about the parties' notice plan as set forth above.

18     B.   Preliminary Settlement Approval

19         After determining that the proposed class satisfies the

20  requirements of Rule 23(a) and (b), the court must determine

21  whether the terms of the parties' settlement appear "fair,

22  adequate, and reasonable."  See Hanlon, 150 F.3d at 1025-26

23  (citing Fed. R. Civ. P. 23(e)(2)).  This process requires the

24  court to "balance a number of factors," including "the strength

25  of the plaintiff's case; the risk, expense, complexity, and

26  likely duration of further litigation; the risk of maintaining

27  class action status throughout the trial; the amount offered in

28  settlement; the extent of discovery completed and the stage of

1  the proceedings; the experience and views of counsel; the

2  presence of a governmental participant; and the reaction of the

3  class members to the proposed settlement." Id. at 1026 (cleaned

4  up).

5          At this preliminary approval stage, the court only

6  needs to determine whether or not the proposed settlement is

7  "within the range of possible approval." In re Tableware

8  Antitrust Litig., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)

9  (internal citation and quotations omitted); see In re Wells Fargo

10  & Co. Shareholder Derivative Litig., No. 16-cv-05541-JST, 2019 WL

11  13020734, at *4 (N.D. Cal. May 14, 2019). Courts often begin by

12  examining the process that led to the settlement's terms to

13  ensure that those terms are "the result of vigorous, arms-length

14  bargaining" and then turn to the substantive terms of the

15  agreement. See Murillo, 266 F.R.D. at 479-80.

16          1.  Negotiation of the Settlement Agreement

17          While discovery was ongoing, the parties retained the

18  services of Robert Meyer, Esq., an experienced mediator with

19  JAMS, to explore the possibility of reaching a settlement through

20  mediation. (See Docket No. 111-1 at 13.) That mediation process

21  began on September 22, 2025, with the parties exchanging

22  "confidential mediation statements supported by voluminous

23  exhibits including Origin documents, declarations, and expert

24  analysis." (Id.) Then, on September 29, 2025, the parties

25  gathered for in-person mediation with Mr. Meyer at JAMS. (Id.)

26  The mediation session was originally scheduled for the full day,

27  but those initial discussions resulted in the parties withdrawing

28  from the process and ending the session early. (Id.)

1        Following the failed mediation attempt, the parties

2  separately returned to litigating the matter while Mr. Meyer

3  worked to engage the parties directly.  (Id.)  These efforts by

4  Mr. Meyer proved fruitful and on October 10, 2025, the parties

5  "agreed to a settlement in principle to release all claims

6  against Defendants in return for a cash payment of nine million

7  dollars ($9,000,000) for the benefit of the Settlement Class."

8  (Id. at 13-14.)  The parties then negotiated the details of their

9  preliminary agreement and finalized the proposed settlement on

10  October 27, 2025, with the Stipulation of Settlement that they

11  then filed with the court.  (Id.)

12        Given the parties' representation that the settlement

13  reached was the product of arms-length bargaining following

14  thorough informal discovery, the court at this stage does not

15  question that the proposed settlement is the result of informed

16  and non-collusive negotiations between the parties.  See La Fleur

17  v. Med. Mgmt. Int'l, Inc., No. 13-cv-00398, 2014 WL 2967475, at

18  *4-5 (C.D. Cal. June 25, 2014).  That negotiations during

19  mediation broke down such that the parties both withdrew before

20  they had made it through the first scheduled day adds weight to

21  Lead Counsel's attestation of the settlement terms being the

22  result of sufficiently adversarial negotiations conducted at

23  arms-length.  (See Docket No. 111-1.)

24        2.  Amount Recovered and Distribution

25        In determining whether a settlement agreement is

26  substantively fair to the class, the court must balance the value

27  of expected recovery against the value of the settlement offer.

28  See Ontiveros, 2014 WL 3057506, at *14.  This inquiry may involve

1  consideration of the uncertainty class members would face if the
2  case were litigated to trial.

3       "In determining whether the amount offered in
4  settlement is fair, the Ninth Circuit has suggested that the
5  Court compare the settlement amount to the parties' 'estimates of
6  the maximum amount of damages recoverable in a successful
7  litigation.'" Litty v. Merrill Lynch & Co., No. CV 14-0425, 2015
8  WL 4698475, at *8-9 (C.D. Cal. Apr. 27, 2015) (quoting Glass v.
9  UBS Fin. Servs., Inc., No. C-06-4068, 2007 WL 221862, at *4 (N.D.
10 Cal. Jan. 26, 2007), aff'd, 331 F. App'x 452, 455-56 (9th Cir.
11 2009)).

12      Plaintiff faced numerous risks in the litigation,
13 including proving all elements of the claims, obtaining and
14 maintaining class certification, establishing liability, and the
15 cost of litigation on these issues. (See Docket No. 111-1 at 18-
16 19.) Thus, plaintiff's counsel represents that the settlement
17 and resulting distribution "provides a very favorable recovery"
18 for Class Members. (Id. at 18.)

19      In light of the risks associated with further
20 litigation and the relative strength of defendants' arguments and
21 defenses, the court finds that the projected value of the
22 settlement is within the range of possible approval such that
23 preliminary approval of the settlement is appropriate. The court
24 further finds the method of determining the amount of recovery
25 for each class member claims to be adequate, as each class
26 member's individual share of the settlement is proportional to
27 how long he or she worked for defendant.

28      Counsel are cautioned that because this settlement was

1    reached prior to class certification, it will be subject to

2    heightened scrutiny before final approval is granted.  See In re

3    Apple Inc. Device Performance Litig., 50 F.4th 769, 782-83 (9th

4    Cir. 2022).  The recommendations of plaintiff's counsel will not

5    be given a presumption of reasonableness, but rather will be

6    subject to close review.  See id.  The court will particularly

7    scrutinize "any subtle signs that class counsel have allowed

8    pursuit of their own self-interests to infect the negotiations."

9    See id.

10             3.   Attorneys' Fees

11             If a negotiated class action settlement includes an

12   award of attorneys' fees, that fee award "must be evaluated in

13   the overall context of the settlement."  Monterrubio v. Best Buy

14   Stores, L.P., 291 F.R.D. 443, 455-56 (E.D. Cal. 2013) (England,

15   J.).  "Courts have an independent obligation to ensure that the

16   award, like the settlement itself, is reasonable, even if the

17   parties have already agreed to an amount."  In re Bluetooth

18   Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011)

19   (cleaned up).

20             The settlement agreement provides that plaintiff's

21   counsel will seek a fee award not to exceed 25% of the settlement

22   fund.  (See Docket No. 111-1 at 18.)  The parties estimate this

23   award to consist of $2,250,000.00 in attorneys' fees and

24   $250,000.00 in litigation expenses.  (Id.) If the court does not

25   approve the fee award in whole or in part, that will not prevent

26   the settlement agreement from becoming effective or be grounds

27   for termination.

28             In deciding the attorneys' fees motion, the court will

1   have the opportunity to assess whether the requested fee award is

2   reasonable by multiplying a reasonable hourly rate by the number

3   of hours counsel reasonably expended.  See In re Bluetooth

4   Headset, 654 F.3d at 941-42.  As part of this lodestar

5   calculation, the court may consider factors such as the "level of

6   success" or "results obtained" by plaintiff's counsel.  See id.

7   If the court, in ruling on the fees motion, finds that the amount

8   of the settlement warrants a fee award at a rate lower than what

9   plaintiff's counsel requests, then it will reduce the award

10  accordingly.  The court will therefore not evaluate the fee award

11  at length here in considering whether the settlement is adequate.

12  III. Conclusion

13       IT IS THEREFORE ORDERED that plaintiff's motion for

14  preliminary certification of a settlement class and preliminary

15  approval of the class action settlement (Docket No. 111-1) be,

16  and the same hereby is, GRANTED.

17       IT IS FURTHER ORDERED THAT:

18       (1) The court certifies the following class for

19  purposes of settlement only: all persons and entities that

20  purchased Origin Materials' publicly traded securities on the

21  open market of a U.S. stock exchange during "the class period"

22  from March 7, 2023, to November 18, 2024, and who were allegedly

23  damaged by their purchase.  (See Stipulation of Settlement at ¶¶

24  h, qq (see also Docket No. 111-3 at 7, 14).)

25       (2) The court appoints Bernstein Liebhard LLP, as class

26  counsel.

27       (3) The court appoints Lead Plaintiff, Todd Frega, as

28  class representative.

1    (4) The court appoints Strategic Claims Services as

2    settlement administrator to perform such duties as set forth in

3    this order and the settlement agreement. (See Stipulation of

4    Settlement (Docket No. 111-3).)

5    (5) The court approves the class notice and the mailing

6    of the class notice to each settlement class member's last known

7    address, as specifically described in the settlement agreement,

8    with the addition of appropriate skip tracing and mail forwarding

9    for notices returned as undeliverable. (See Stipulation of

10   Settlement at ¶ 9 (Docket No. 111-3 at 95).)

11   (6) Within 15 days of the issuance of this Order,

12   defendant shall provide the settlement administrator with the

13   class data, as specified in the settlement agreement. (See

14   Stipulation of Settlement (Docket No. 111-3) at ¶ 9.)

15   (7) Within 14 days after funding of the gross

16   settlement amount, the settlement administrator shall mail the

17   class notice in the manner specified in the settlement agreement.

18   (See id.)

19   (8) The Claims Administrator must publish a copy of the

20   Summary Notice in Investor's Business Daily or www.investors.com,

21   and cause it to be transmitted once over PR Newswire on or before

22   **February 18, 2026.**

23   (9) Lead Plaintiff must file and serve their motion for

24   final approval of class settlement and Lead Counsel's motion for

25   attorneys' fees and litigation expenses, and an award to Lead

26   Plaintiff, and application for approval of the Plan of Allocation

27   on or before **April 20, 2026.**

28   (10) Any Class Member wishing to participate in the

settlement must submit a Proof of Claim form on or before **May 4, 2026.**

(11) Any Class Member wishing to be excluded from the settlement must file their exclusion request in writing on or before **May 4, 2026.**

(12) Any party to this case, including any settlement class member, may be heard in person or by counsel, to the extent allowed by the court, in support of, or in opposition to, the court's determination of the good faith, fairness, reasonableness, and adequacy of the proposed settlement, the requested attorneys' fees and costs, the requested class representative enhancement awards, and any order of final approval and judgment regarding such settlement, fees, costs, and payments; provided however, that no person shall be heard in opposition to such matters unless such person has complied with the conditions set forth in the class notice.  Any Class Member wishing to enter an appearance at the settlement hearing must file a written notice of appearance with the Clerk of Court and deliver copies of the notice to both Lead Counsel and Defendants' Counsel on or before **May 4, 2026.**

(13) Any Class Member wishing to file an objection to the proposed Settlement or to Lead Counsel's motion for attorneys' fees and litigation expenses must do so by filing a written objection on or before **May 4, 2026.**  Any settlement class member who does not timely submit such a written objection will not be permitted to raise such objection, except for good cause shown, and any settlement class Member who fails to object in the manner prescribed by this order will be deemed to have waived,

1    and will be foreclosed from raising, any such objection

2            (14) Plaintiff may file and serve reply papers, if any,

3    in support of the proposed settlement or other motions for fees

4    or reimbursement on or before **May 18, 2026.**

5            (15) The final approval hearing will be held on **June 8,**

6    **2026, at 1:30 p.m.,** to consider the fairness, adequacy, and

7    reasonableness of the proposed settlement preliminarily approved

8    by this order, and to consider the motion of class counsel for an

9    award of reasonable attorneys' fees and costs as well as any

10   class representative enhancement award.

11           (16) Pending further order of this court, all

12   proceedings in this matter except those contemplated herein and

13   in the settlement agreement are STAYED.

14   Dated:   January 6, 2026

     WILLIAM B. SHUBB
     UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28