1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                     EASTERN DISTRICT OF CALIFORNIA

10                            ----oo0oo----

11

12   In re ORIGIN MATERIALS, INC.,          No. 2:23-cv-1816-WBS-JDP
     SECURITIES LITIGATION
13                                           CLASS ACTION

14   This Document Relates To:              AMENDED MEMORANDUM AND ORDER
                                            RE: LEAD PLAINTIFF'S
15   ALL ACTIONS CONSOLIDATED FROM:         UNOPPOSED MOTION FOR
                                            PRELIMINARY APPROVAL OF
16   ANTONIO F. SOTO, individually and      SETTLEMENT, PRELIMINARY
     on behalf of all others similarly      APPROVAL OF SETTLEMENT CLASS,
17   situated,                              AND APPROVAL TO PROVIDE
                                            NOTICE TO THE CLASS
18              Plaintiff,

19   v.

20   ORIGIN MATERIALS, INC., RICHARD
     J. RILEY, and JOHN BISSELL,
21
22              Defendants.

23

24                            ----oo0oo----

25          Plaintiffs brought this securities class action against

26   defendants Origin Materials, Inc., John Bissell, and Richard

27   Riley,[1] alleging violations of Sections 10(b) and 20(a) of the

     _____

28          [1]   On February 12, 2025, the court dismissed Richard Riley

                                       1

1  Securities Exchange Act of 1934 (the "Exchange Act") (see 15

2  U.S.C. §§ 78j(b), 78t(a)) and Rule 10b-5 promulgated by the

3  Securities and Exchange Commission (the "SEC") (17 C.F.R. §

4  240.10b-5) on behalf of the putative class of persons and

5  entities that purchased or otherwise acquired Origin securities

6  between February 23, 2023, and August 9, 2023.  (See Docket No.

7  112-3.)  Lead Plaintiff has filed an unopposed motion for

8  preliminary approval of class action settlement, preliminary

9  approval of settlement class, and approval to provide notice to

10  the class.  (See Docket No. 111-1.)

11  I.   Background and Proposed Settlement

12       This is one of four related cases assigned to the

13  undersigned judge that involve claims under the Securities

14  Exchange Act of 1934 against several of the same defendants based

15  on the same subject matter, namely the development and

16  construction of the Origin 2 plant.

17       Origin, which is headquartered in West Sacramento,

18  California, is a Delaware corporation that specializes in

19  manufacturing sustainable materials.  (Docket No. 1 at 2.)

20  Plaintiffs allege that beginning on February 23, 2023, Origin

21  began making or issuing misleading statements both in writing and

22  on earnings calls.  (Id. at 6-10.)  The materially false or

23  misleading statements centered around Origin's announcement or a

24  new capital projects plan that involved the construction of two

25  commercial-style plants: Origin 1 and Origin 2.  (Id.)  According

26  to plaintiffs, Origin continued to release positive updates and

27

28  as a defendant.  (Docket No. 97.)

1   information about the construction timeline for Origin 1 and
2   Origin 2 despite the reality being that both facilities were not
3   on schedule to become operational as expected.  (Id. at 10-13.)

4        Plaintiff Antonio F. Soto brought a class action
5   complaint this securities class action against defendants on
6   August 25, 2023.  (Docket No. 111-1 at 9.)  On October 24, 2023,
7   Todd Frega moved for appointment as Lead Plaintiff for the
8   putative class.  (See Docket No. 20.)   The court subsequently
9   appointed Todd Frega as Lead Plaintiff and approved his selection
10  of Bernstein Liebhard LLP as Lead Counsel for the proposed class.
11  (Docket Nos. 53, 111-1.)

12       The parties propose settlement terms whereby Origin has
13  agreed to pay a Settlement of $9,000,000.00 in order to resolve
14  all claims in the action.  (Docket No. 111-1 at 8.)  The parties
15  affirm that the proposed settlement is the result of arm's-length
16  negotiation by experiences counsel and that the terms proposed
17  represent a "favorable outcome for the proposed Settlement
18  Class."  (Id.)

19  II.  Discussion

20       Federal Rule of Civil Procedure 23(e) provides that
21  "the claims, issues, or defenses of a certified class may be
22  settled . . . only with the court's approval."  Fed. R. Civ. P.
23  23(e) (cleaned up).  This Order is the first step in that process
24  and analyzes only whether the proposed class action settlement
25  deserves preliminary approval.  See Murillo v. Pac. Gas & Elec.
26  Co., 266 F.R.D. 468, 473 (E.D. Cal. 2010) (Shubb, J.).

27       Preliminary approval authorizes the parties to give
28  notice to putative class members of the settlement agreement and

3

lays the groundwork for a future fairness hearing, at which the court will hear objections to (1) the treatment of this litigation as a class action and (2) the terms of the settlement. See id.; see also Diaz v. Tr. Territory of Pac. Islands, 876 F.2d 1401, 1408 (9th Cir. 1989) (same).  The court will reach a final determination as to whether the parties should be allowed to settle the class action on their proposed terms after that hearing.

Where the parties reach a settlement agreement prior to class certification, the court must first assess whether a class exists.  Staton v. Boeing Co., 327 F.3d 938, 952-53 (9th Cir. 2003).  "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold."  Id. (cleaned up).  The parties cannot "agree to certify a class that clearly leaves any one requirement unfulfilled."  Murillo, 266 F.R.D. at 473.

Consequently, the court cannot blindly rely on the fact that the parties have stipulated that a class exists for purposes of settlement.  See Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 621-22 (1997) ("Federal courts, in any case, lack authority to substitute for Rule 23's certification criteria a standard never adopted -- that if a settlement is 'fair,' then certification is proper.").

"Second, the district court must carefully consider 'whether a proposed settlement is fundamentally fair, adequate, and reasonable,' recognizing that 'it is the settlement taken as a whole, rather than the individual component parts, that must be

1    examined for overall fairness . . . .'"  Staton, 327 F.3d at 952

2    (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir.

3    1998), abrogated on other grounds by Wal-Mart Stores, Inc. v.

4    Dukes, 564 U.S. 338 (2011)) (cleaned up).

5         A.   Preliminary Class Certification

6              The putative class consists of all persons and entities

7    that purchased Origin Materials' publicly traded securities on

8    the open market of a U.S. stock exchange during "the class

9    period" from March 7, 2023, to August 9, 2023, and who were

10   allegedly damaged by their purchase.  (See Stipulation of

11   Settlement at ¶¶ h, qq (see also Docket No. 111-3 at 7, 14).)  To

12   be certified, the putative class must satisfy the requirements of

13   Federal Rules of Civil Procedure 23(a) and 23(b).  Leyva v.

14   Medline Indus. Inc., 716 F.3d 510, 512 (9th Cir. 2013).

15             1.   Rule 23(a)

16             Rule 23(a) restricts class actions to cases where: "(1)

17   the class is so numerous that joinder of all members is

18   impracticable; (2) there are questions of law or fact common to

19   the class; (3) the claims or defenses of the representative

20   parties are typical of the claims or defenses of the class; and

21   (4) the representative parties will fairly and adequately protect

22   the interests of the class."  See Fed. R. Civ. P. 23(a).

23             a.   Numerosity

24             "Courts have routinely found the numerosity requirement

25   satisfied when the class comprises 40 or more members."  Collins

26   v. Cargill Meat Sols. Corp., 274 F.R.D. 294, 300 (E.D. Cal. 2011)

27   (Wanger, J.).  Here, the size of the proposed class is unknown

28   and could contain thousands of members because Origin securities

1  were actively traded on the Nasdaq and purchased by thousands of

2  investors during the class period.  A putative class with

3  potentially thousands of with members makes joinder clearly

4  impracticable and more than satisfies the numerosity requirement.

5                    b.    Commonality

6        Commonality requires that the class members' claims

7  "depend upon a common contention" that is "capable of classwide

8  resolution -- which means that determination of its truth or

9  falsity will resolve an issue that is central to the validity of

10  each one of the claims in one stroke."  Wal-Mart Stores, 564 U.S.

11  at 350.  "All questions of fact and law need not be common to

12  satisfy the rule.  The existence of shared legal issues with

13  divergent factual predicates is sufficient, as is a common core

14  of salient facts coupled with disparate legal remedies within the

15  class."  Hanlon, 150 F.3d at 1019-20.  "So long as there is 'even

16  a single common question,' a would-be class can satisfy the

17  commonality requirement of Rule 23(a)(2)."  Wang v. Chinese Daily

18  News, Inc., 737 F.3d 538, 544 (9th Cir. 2013) (quoting Wal-Mart

19  Stores, 564 U.S. at 358-59).

20        Here, the claims implicate common questions of law and

21  fact as to whether defendants' "alleged misstatements regarding

22  the Origin 2 timeline were false or misleading, whether

23  Defendants acted with the requisite scienter, and whether

24  economic losses were caused by the alleged fraud," and these

25  lines of inquiry apply equally to all class members.  (Docket No.

26  111-1 at 21.)  All class members purchased an Origin Materials

27  publicly traded security during the class period and allegedly

28  suffered damages as a result of their purchase(s).  (Id.)  As a

1    result, the class members share several common factual questions

2    surrounding the circumstances of their Origin Materials

3    securities purchases during the class period.  (Id. at 21—22.)

4          Generally, "challenging a policy common to the class as

5    a whole creates a common question whose answer is apt to drive

6    the resolution of the litigation." Ontiveros v. Zamora, No.

7    2:08-cv-567 WBS DAD, 2014 WL 3057506, at *5 (E.D. Cal. July 7,

8    2014) (cleaned up).  Even if individual members of the class will

9    be entitled to different amounts of damages because, for

10   instance, defendant employed them for different amounts of time,

11   "the presence of individual damages cannot, by itself, defeat

12   class certification." Leyva, 716 F.3d at 514.  Accordingly,

13   these common questions of law and fact satisfy the commonality

14   requirement.

15              c.   Typicality

16         Typicality requires that plaintiff have claims

17   "reasonably co-extensive with those of absent class members," but

18   their claims do not have to be "substantially identical."

19   Hanlon, 150 F.3d at 1019-20.  The test for typicality "is whether

20   other members have the same or similar injury, whether the action

21   is based on conduct which is not unique to plaintiff, and whether

22   other class members have been injured by the same course of

23   conduct." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th

24   Cir. 1992).

25         Lead plaintiff's claims are typical of other members of

26   the putative class.  (Docket No. 111-1 at 22.)  Lead plaintiff

27   "purchased the publicly traded Origin securities during the Class

28   Period and claims to have suffered damaged from Defendants'

1   alleged misstatements." (Id.) Likewise, all other class members

2   similarly purchased publicly traded securities from Origin

3   Materials between March 7, 2023, and August 9, 2023, and were

4   allegedly subject to damages resulting from the same

5   misstatements about the Origin 2 completion timeline. (Id.)

6   Although the facts might differ for individual class members, the

7   basis for their alleged injuries and the parties purportedly

8   responsible for those injuries are the same. The proposed class

9   therefore meets the typicality requirement.

10                      d.   Adequacy of Representation

11          To resolve the question of adequacy, the court must

12   consider two factors: (1) whether plaintiff and his counsel have

13   any conflicts of interest with other class members, and (2)

14   whether plaintiff and his counsel will vigorously prosecute the

15   action on behalf of the class. In re Hyundai & Kia Fuel Econ.

16   Litig., 926 F.3d 539, 566-67 (9th Cir. 2019).

17                      i.   Conflicts of Interest

18          There do not appear to be any conflicts of interest for

19   purposes of preliminary approval. (See Docket No. 111-1 at 23.)

20   Plaintiff's interests are generally aligned with those of the

21   putative class members, who suffered injuries similar to those

22   suffered by plaintiff. See Amchem, 521 U.S. at 625–26.

23                      ii.  Vigorous Prosecution

24          The second portion of the adequacy inquiry examines the

25   vigor with which plaintiff and his counsel have pursued the class

26   claims. "Although there are no fixed standards by which 'vigor'

27   can be assayed, considerations include competency of counsel and,

28   in the context of a settlement-only class, an assessment of the

1  rationale for not pursuing further litigation." Hanlon, 150 F.3d
2  at 1021.

3        Here, plaintiff's counsel appear to be experienced
4  shareholder and securities fraud litigators with class action
5  experience which qualifies them to pursue the interests of the
6  class. (See Docket Nos. 111-4 at 183-223, 111-5 at 225-43.)
7  This background, coupled with the work performed thus far,
8  suggest that plaintiff's counsel is well-equipped to handle this
9  case. (See id.) Further, plaintiff's counsel appear to have
10 conducted a thorough factual investigation and thorough legal
11 research and appears to have fully considered the strengths and
12 weaknesses of this case in deciding to accept the terms of the
13 proposed settlement agreement. (See Docket No. 111-1 at 13.)
14 The court finds no reason to doubt that plaintiff's counsel is
15 well qualified to conduct the proposed litigation and assess the
16 value of the settlement. Accordingly, the court concludes that
17 Rule 23(a)'s adequacy requirement is satisfied for the purpose of
18 preliminary approval.

19        2.   Rule 23(a)

20        After fulfilling the threshold requirements of Rule
21 23(a), the proposed class must satisfy the requirements of one of
22 the three subdivisions of Rule 23(b). Leyva, 716 F.3d at 512.
23 Plaintiff seeks class certification under Rule 23(b)(3), which
24 provides that a class action may be maintained only if (1) "the
25 court finds that questions of law or fact common to class members
26 predominate over questions affecting only individual members" and
27 (2) "that a class action is superior to other available methods
28 for fairly and efficiently adjudicating the controversy." Fed.

1  R. Civ. P. 23(b)(3).

2  a.  Predominance

3  "The predominance analysis under Rule 23(b)(3) focuses
4  on 'the relationship between the common and individual issues' in
5  the case and 'tests whether proposed classes are sufficiently
6  cohesive to warrant adjudication by representation.'"  Wang, 737
7  F.3d at 545 (quoting Hanlon, 150 F.3d at 1022).

8  Here, the claims brought by the proposed settlement
9  class all arise from defendant's alleged practices and policies
10  with respect to their employment.  The class claims thus
11  demonstrate a "common nucleus of facts and potential legal
12  remedies" that can properly be resolved "in a single
13  adjudication."  See Hanlon, 150 F.3d at 1022-23.  Although there
14  are differences in the facts pertaining to individual class
15  members and the amount of injury sustained, such as how long each
16  worked for defendant, there is no indication that those
17  variations are "sufficiently substantive to predominate over the
18  shared claims."  See Murillo, 266 F.R.D. at 476-77 (quoting
19  Hanlon, 150 F.3d at 1022-23).  Accordingly, the court finds
20  common questions of law and fact predominate over questions
21  affecting only individual class members.

22  b.  Superiority

23  Rule 23(b)(3) sets forth four non-exhaustive factors
24  that courts should consider when examining whether "a class
25  action is superior to other available methods for fairly and
26  efficiently adjudicating the controversy."  Fed. R. Civ. P.
27  23(b)(3).  They are: "(A) the class members' interests in
28  individually controlling the prosecution or defense of separate

1  actions; (B) the extent and nature of any litigation concerning
2  the controversy already begun by or against class members; (C)
3  the desirability or undesirability of concentrating the
4  litigation of the claims in the particular forum; and (D) the
5  likely difficulties in managing a class action."  Id.  The
6  parties settled this action prior to certification, making
7  factors (C) and (D) inapplicable.  See Murillo, 266 F.R.D. at
8  477.

9        Rule 23(b)(3) is concerned with the "vindication of the
10  rights of groups of people who individually would be without
11  effective strength to bring their opponents into court."  Amchem,
12  521 U.S. at 616-17.  When, as here, the average class members'
13  individual recovery is likely to be relatively modest, the class
14  members' interests generally favor certification.  Zinser v.
15  Accufix Res. Inst., Inc., 253 F.3d 1180, 1190-91 (9th Cir. 2001).
16  Accordingly, the class action device appears to be the superior
17  method for adjudicating this controversy.

18            3.  Rule 23(c)(2) Notice Requirements

19        If the court certifies a class under Rule 23(b)(3), it
20  "must direct to class members the best notice that is practicable
21  under the circumstances, including individual notice to all
22  members who can be identified through reasonable effort."  Fed.
23  R. Civ. P. 23(c)(2)(B).  Rule 23(c)(2) governs both the form and
24  content of a proposed notice.  See Ravens v. Iftikar, 174 F.R.D.
25  651, 657-58 (N.D. Cal. 1997) (citing Eisen v. Carlisle &
26  Jacquelin, 417 U.S. 156, 172-77 (1974)).  Although that notice
27  must be "reasonably certain to inform the absent members of the
28  plaintiff class," actual notice is not required.  Silber v.

1   <u>Mabon</u>, 18 F.3d 1449, 1454-55 (9th Cir. 1994).

2          Plaintiff's counsel has provided the court with a

3   proposed notice to class members. (<u>See</u> Docket Nos. 111-2, 111-

4   3.)  It explains the proceedings, defines the scope of the class,

5   and explains what the settlement provides and how much each class

6   member can expect to receive in compensation. (<u>See</u> <u>Docket No.</u>

7   <u>111-3</u> at 74-80.)  Lead Counsel has proposed a four-prong strategy

8   for identifying and giving notice to members of the Settlement

9   Class. (Docket No. 111-1 at 25.)

10          First, Lead Counsel proposes "mailing or emailing (if

11  the Class Member's email is available) a copy of the Postcard

12  Notice to all potential Settlement Class Members who can

13  reasonably be identified and located." (<u>Id.</u>)  Prospective Class

14  Members will be identified and located "using information

15  provided by Origin's transfer agent, as well as information

16  provided by third party banks, brokers, and other nominees about

17  their customers who may have eligible purchases." (<u>Id.</u>)  Second,

18  notice will be provided via the publication of the Summary Notice

19  in <u>Investor's Business Daily</u>, a trade publication where notices

20  of class actions are regularly published. (<u>Id.</u>)  Third, Lead

21  Counsel intends to "disseminate the Summary Notice on the

22  internet using <u>PR Newswire</u>." (<u>Id.</u>)  Fourth, the Internet Notice

23  will finally be published both on the Settlement website and on

24  Lead Counsel's website. (<u>Id.</u>)

25          These notices will further explain the opt-out

26  procedure, the procedure for objecting to the settlement, and the

27  date and location of the final approval hearing. (<u>See</u> Docket No.

28  111-3 at 95.)  In particular, the internet-based notices will

1   contain information describing the nature of the action; defining

2   the class certified; explaining the various claims, issues, and

3   defenses.  (Docket No. 111-1 at 26.)   The internet notice will

4   further include information explaining the rights of Class

5   Members to enter an appearance at the final Settlement Hearing,

6   or request exclusion from the settlement, and will include

7   instructions for how interested Class Members can exercise their

8   rights.  (Id.)  And it will include an explanation of "the

9   binding effect a class judgment has on members under Rule

10  23(c)(3)" (id.); as well as information about the amount of the

11  settlement, anticipated attorneys' fees, and how the value of

12  individual Class Member settlement awards are calculated, that,

13  in sum, is sufficient to satisfy the separate disclosure

14  requirements mandated under the Private Securities Litigation

15  Reform Act ("PSLRA"), 15 U.S.C. § 78u-4.  (Id. at 25-26.)

16       The content of the proposed notice therefore satisfies

17  Rule 23(c)(2)(B).  See Churchill Vill., L.L.C. v. Gen. Elec., 361

18  F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it

19  'generally describes the terms of the settlement in sufficient

20  detail to alert those with adverse viewpoints to investigate and

21  to come forward and be heard.'" (quoting Mendoza v. Tucson Sch.

22  Dist. No. 1, 623 F.2d 1338, 1352 (9th Cir. 1980), abrogated on

23  other grounds by Evans v. Jeff D., 475 U.S. 717, 725-26 n.10

24  (1986))).

25       The parties have selected Strategic Claims Services to

26  serve as the settlement administrator.  (Docket No. 111-3 at ¶

27  7.)  Pursuant to the notice plan, plaintiff's counsel provides

28  that using addresses where available or email addresses in

13

conjunction with a list of names provided by defendant, the settlement administrator will send the notice via first class U.S. mail or email to all settlement class members.  (See Docket No. 111-3 at ¶¶ 7a, 7d.)

The court cautions counsel that a single mailed or emailed notice is unlikely to suffice.  See Roes 1-2 v. SFBSC Mgmt., LLC, 944 F.3d 1035, 1045-46 (9th Cir. 2019).  Similarly, because there are potentially thousands of Class Members, adequate notice will require robust and effective Class Member identification efforts on the part of Lead Counsel and the Settlement Administrator.  The court thus advises that class counsel undertake additional measures "reasonably calculated, under all the circumstances," to apprise all class members of the proposed settlement.  See id. at 1046-47.

Given these considerations, the court will grant the parties' notice plan preliminary approval, notwithstanding its concern about the parties' notice plan as set forth above.

B.    Preliminary Settlement Approval

After determining that the proposed class satisfies the requirements of Rule 23(a) and (b), the court must determine whether the terms of the parties' settlement appear "fair, adequate, and reasonable."  See Hanlon, 150 F.3d at 1025-26 (citing Fed. R. Civ. P. 23(e)(2)).  This process requires the court to "balance a number of factors," including "the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of

1  the proceedings; the experience and views of counsel; the

2  presence of a governmental participant; and the reaction of the

3  class members to the proposed settlement." Id. at 1026 (cleaned

4  up).

5        At this preliminary approval stage, the court only

6  needs to determine whether or not the proposed settlement is

7  "within the range of possible approval." In re Tableware

8  Antitrust Litig., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)

9  (internal citation and quotations omitted); see In re Wells Fargo

10  & Co. Shareholder Derivative Litig., No. 16-cv-05541-JST, 2019 WL

11  13020734, at *4 (N.D. Cal. May 14, 2019).  Courts often begin by

12  examining the process that led to the settlement's terms to

13  ensure that those terms are "the result of vigorous, arms-length

14  bargaining" and then turn to the substantive terms of the

15  agreement.  See Murillo, 266 F.R.D. at 479-80.

16        1.  Negotiation of the Settlement Agreement

17        While discovery was ongoing, the parties retained the

18  services of Robert Meyer, Esq., an experienced mediator with

19  JAMS, to explore the possibility of reaching a settlement through

20  mediation.  (See Docket No. 111-1 at 13.)  That mediation process

21  began on September 22, 2025, with the parties exchanging

22  "confidential mediation statements supported by voluminous

23  exhibits including Origin documents, declarations, and expert

24  analysis."  (Id.)  Then, on September 29, 2025, the parties

25  gathered for in-person mediation with Mr. Meyer at JAMS.  (Id.)

26  The mediation session was originally scheduled for the full day,

27  but those initial discussions resulted in the parties withdrawing

28  from the process and ending the session early.  (Id.)

1        Following the failed mediation attempt, the parties

2   separately returned to litigating the matter while Mr. Meyer

3   worked to engage the parties directly.  (Id.)  These efforts by

4   Mr. Meyer proved fruitful and on October 10, 2025, the parties

5   "agreed to a settlement in principle to release all claims

6   against Defendants in return for a cash payment of nine million

7   dollars ($9,000,000) for the benefit of the Settlement Class."

8   (Id. at 13-14.)  The parties then negotiated the details of their

9   preliminary agreement and finalized the proposed settlement on

10  October 27, 2025, with the Stipulation of Settlement that they

11  then filed with the court.  (Id.)

12       Given the parties' representation that the settlement

13  reached was the product of arms-length bargaining following

14  thorough informal discovery, the court at this stage does not

15  question that the proposed settlement is the result of informed

16  and non-collusive negotiations between the parties.  See La Fleur

17  v. Med. Mgmt. Int'l, Inc., No. 13-cv-00398, 2014 WL 2967475, at

18  *4-5 (C.D. Cal. June 25, 2014).  That negotiations during

19  mediation broke down such that the parties both withdrew before

20  they had made it through the first scheduled day adds weight to

21  Lead Counsel's attestation of the settlement terms being the

22  result of sufficiently adversarial negotiations conducted at

23  arms-length.  (See Docket No. 111-1.)

24            2.   Amount Recovered and Distribution

25       In determining whether a settlement agreement is

26  substantively fair to the class, the court must balance the value

27  of expected recovery against the value of the settlement offer.

28  See Ontiveros, 2014 WL 3057506, at *14.  This inquiry may involve

16

1   consideration of the uncertainty class members would face if the

2   case were litigated to trial.

3          "In determining whether the amount offered in

4   settlement is fair, the Ninth Circuit has suggested that the

5   Court compare the settlement amount to the parties' 'estimates of

6   the maximum amount of damages recoverable in a successful

7   litigation.'" Litty v. Merrill Lynch & Co., No. CV 14-0425, 2015

8   WL 4698475, at *8-9 (C.D. Cal. Apr. 27, 2015) (quoting Glass v.

9   UBS Fin. Servs., Inc., No. C-06-4068, 2007 WL 221862, at *4 (N.D.

10  Cal. Jan. 26, 2007), aff'd, 331 F. App'x 452, 455-56 (9th Cir.

11  2009)).

12         Plaintiff faced numerous risks in the litigation,

13  including proving all elements of the claims, obtaining and

14  maintaining class certification, establishing liability, and the

15  cost of litigation on these issues. (See Docket No. 111-1 at 18-

16  19.)  Thus, plaintiff's counsel represents that the settlement

17  and resulting distribution "provides a very favorable recovery"

18  for Class Members. (Id. at 18.)

19         In light of the risks associated with further

20  litigation and the relative strength of defendants' arguments and

21  defenses, the court finds that the projected value of the

22  settlement is within the range of possible approval such that

23  preliminary approval of the settlement is appropriate.  The court

24  further finds the method of determining the amount of recovery

25  for each class member claims to be adequate, as each class

26  member's individual share of the settlement is proportional to

27  how long he or she worked for defendant.

28         Counsel are cautioned that because this settlement was

1  reached prior to class certification, it will be subject to
2  heightened scrutiny before final approval is granted.  See In re
3  Apple Inc. Device Performance Litig., 50 F.4th 769, 782-83 (9th
4  Cir. 2022).  The recommendations of plaintiff's counsel will not
5  be given a presumption of reasonableness, but rather will be
6  subject to close review.  See id.  The court will particularly
7  scrutinize "any subtle signs that class counsel have allowed
8  pursuit of their own self-interests to infect the negotiations."
9  See id.

10      3.  Attorneys' Fees

11      If a negotiated class action settlement includes an
12  award of attorneys' fees, that fee award "must be evaluated in
13  the overall context of the settlement."  Monterrubio v. Best Buy
14  Stores, L.P., 291 F.R.D. 443, 455-56 (E.D. Cal. 2013) (England,
15  J.).  "Courts have an independent obligation to ensure that the
16  award, like the settlement itself, is reasonable, even if the
17  parties have already agreed to an amount."  In re Bluetooth
18  Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011)
19  (cleaned up).

20      The settlement agreement provides that plaintiff's
21  counsel will seek a fee award not to exceed 25% of the settlement
22  fund.  (See Docket No. 111-1 at 18.)  The parties estimate this
23  award to consist of $2,250,000.00 in attorneys' fees and
24  $250,000.00 in litigation expenses.  (Id.) If the court does not
25  approve the fee award in whole or in part, that will not prevent
26  the settlement agreement from becoming effective or be grounds
27  for termination.

28      In deciding the attorneys' fees motion, the court will

have the opportunity to assess whether the requested fee award is
reasonable by multiplying a reasonable hourly rate by the number
of hours counsel reasonably expended.  See In re Bluetooth
Headset, 654 F.3d at 941-42.  As part of this lodestar
calculation, the court may consider factors such as the "level of
success" or "results obtained" by plaintiff's counsel.  See id.
If the court, in ruling on the fees motion, finds that the amount
of the settlement warrants a fee award at a rate lower than what
plaintiff's counsel requests, then it will reduce the award
accordingly.  The court will therefore not evaluate the fee award
at length here in considering whether the settlement is adequate.

III. Conclusion

        IT IS THEREFORE ORDERED that plaintiff's motion for
preliminary certification of a settlement class and preliminary
approval of the class action settlement (Docket No. 111-1) be,
and the same hereby is, GRANTED.

        IT IS FURTHER ORDERED THAT:

        (1) The court certifies the following class for
purposes of settlement only: all persons and entities that
purchased Origin Materials' publicly traded securities on the
open market of a U.S. stock exchange during "the class period"
from March 7, 2023, to August 9, 2023, and who were allegedly
damaged by their purchase.  (See Stipulation of Settlement at ¶¶
h, qq (see also Docket No. 111-3 at 7, 14).)

        (2) The court appoints Bernstein Liebhard LLP, as class
counsel.

        (3) The court appoints Lead Plaintiff, Todd Frega, as
class representative.

1    (4) The court appoints Strategic Claims Services as

2    settlement administrator to perform such duties as set forth in

3    this order and the settlement agreement. (See Stipulation of

4    Settlement (Docket No. 111-3).)

5    (5) The court approves the class notice and the mailing

6    of the class notice to each settlement class member's last known

7    address, as specifically described in the settlement agreement,

8    with the addition of appropriate skip tracing and mail forwarding

9    for notices returned as undeliverable. (See Stipulation of

10   Settlement at ¶ 9 (Docket No. 111-3 at 95).)

11   (6) Within 15 days of the issuance of this Order,

12   defendant shall provide the settlement administrator with the

13   class data, as specified in the settlement agreement. (See

14   Stipulation of Settlement (Docket No. 111-3) at ¶ 9.)

15   (7) Within 14 days after funding of the gross

16   settlement amount, the settlement administrator shall mail the

17   class notice in the manner specified in the settlement agreement.

18   (See id.)

19   (8) The Claims Administrator must publish a copy of the

20   Summary Notice in Investor's Business Daily or www.investors.com,

21   and cause it to be transmitted once over PR Newswire on or before

22   **February 18, 2026.**

23   (9) Lead Plaintiff must file and serve their motion for

24   final approval of class settlement and Lead Counsel's motion for

25   attorneys' fees and litigation expenses, and an award to Lead

26   Plaintiff, and application for approval of the Plan of Allocation

27   on or before **April 20, 2026.**

28   (10) Any Class Member wishing to participate in the

20

1    settlement must submit a Proof of Claim form on or before **May 4,**
2    **2026.**

3    (11) Any Class Member wishing to be excluded from the
4    settlement must file their exclusion request in writing on or
5    before **May 4, 2026.**

6    (12) Any party to this case, including any settlement
7    class member, may be heard in person or by counsel, to the extent
8    allowed by the court, in support of, or in opposition to, the
9    court's determination of the good faith, fairness,
10   reasonableness, and adequacy of the proposed settlement, the
11   requested attorneys' fees and costs, the requested class
12   representative enhancement awards, and any order of final
13   approval and judgment regarding such settlement, fees, costs, and
14   payments; provided however, that no person shall be heard in
15   opposition to such matters unless such person has complied with
16   the conditions set forth in the class notice.  Any Class Member
17   wishing to enter an appearance at the settlement hearing must
18   file a written notice of appearance with the Clerk of Court and
19   deliver copies of the notice to both Lead Counsel and Defendants'
20   Counsel on or before **May 4, 2026.**

21   (13) Any Class Member wishing to file an objection to
22   the proposed Settlement or to Lead Counsel's motion for
23   attorneys' fees and litigation expenses must do so by filing a
24   written objection on or before **May 4, 2026.**  Any settlement class
25   member who does not timely submit such a written objection will
26   not be permitted to raise such objection, except for good cause
27   shown, and any settlement class Member who fails to object in the
28   manner prescribed by this order will be deemed to have waived,

1 and will be foreclosed from raising, any such objection

2        (14) Plaintiff may file and serve reply papers, if any,

3 in support of the proposed settlement or other motions for fees

4 or reimbursement on or before **May 18, 2026.**

5        (15) The final approval hearing will be held on **June 8,**

6 **2026, at 1:30 p.m.,** to consider the fairness, adequacy, and

7 reasonableness of the proposed settlement preliminarily approved

8 by this order, and to consider the motion of class counsel for an

9 award of reasonable attorneys' fees and costs as well as any

10 class representative enhancement award.

11        (16) Pending further order of this court, all

12 proceedings in this matter except those contemplated herein and

13 in the settlement agreement are STAYED.

14 Dated:  January 7, 2026

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

22